UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIFFANY FEMMER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | Case No. 4:20 CV 676 JMB |
| ) | |
| SEPHORA USA, INC. ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the plaintiffs' motion to remand the case to the Circuit Court of St. Louis County from which it was removed. Alternatively, the plaintiffs move the Court to order discovery regarding the amount in controversy. Defendant filed a response in opposition to the motions and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiffs Tiffany Femmer and Kathryn Schott allege that defendant Sephora USA, Inc., (Sephora) charges excess use taxes on products purchased through "remote sales channels[1]" and shipped to addresses in Missouri from out-of-state facilities. In this putative class action filed on March 19, 2020, they bring claims for violation of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010 *et* seq., unjust enrichment, negligence, and money had and received. They seek compensatory damages, restitution, declaratory and injunctive relief, punitive damages, pre- and post-judgment interest, and attorneys' fees and costs. On May 21, 2020, defendant Sephora removed the matter to this Court, invoking jurisdiction under the Class Action

---

[1] That is, by telephone, from a catalog, or through a website, rather than from a brick-and-mortar store.

Fairness Act (CAFA), 28 U.S.C. § 1332(d), based on allegations that the parties were minimally diverse, the amount in controversy exceeds $5 million, and the alleged class includes at least 100 members. Plaintiffs assert that the allegations in defendant's notice of removal do not satisfy the amount-in-controversy requirements. They seek remand to state court or, in the alternative, jurisdictional discovery.

## I.      Background

Under Missouri's Compensating Use Tax Law,[2] Mo. Rev. Stat. §§ 144.600 *et seq.*, out-of-state vendors are required to collect taxes on sales of "tangible personal property" shipped into Missouri. The amount to be collected consists of a state tax, presently set at 4.255%, plus any applicable local taxes.[3]  Complaint at ¶ 29 [Doc. # 5]. According to the Missouri Department of Revenue's Sales and Use Tax Rate Tables for the first quarter of 2020, use tax rates ranged from 4.2250% to 10.2250% across 2411 taxing jurisdictions. Plaintiffs' Exhibit 1 [Doc. # 15-1]; see also Excel version of tax table at https://dor.mo.gov/business/sales/rates/2020/.

On January 30, 2020, plaintiffs Femmer and Schott separately purchased products from Sephora's website for delivery to addresses in Berger and Fenton, Missouri, respectively. Complaint at ¶¶ 28-29, 31-32. The items were shipped to plaintiffs from Mississippi.[4]  Plaintiffs allege that the applicable use tax rate for delivery to both addresses was 4.225%. They further

---

[2] Missouri's Sales Tax Law provides for the collection of sales taxes for intrastate purchases.  §§ 144.010 *et seq.*  Purchases made "in commerce" — that is, interstate purchases — are exempt from the collection of sales taxes, see § 144.030.1, but are subject to the compensating use tax at issue here, see § 144.610.1.

[3] Missouri authorizes cities and counties to impose local sales taxes, see City Sales Tax Act, §§ 94.500 *et seq.*; County Sales Tax Act, §§ 67.500 *et seq.*, and local use taxes in an amount not to exceed the local sales tax, § 144.757.

[4] Defendant does not maintain any warehouses in Missouri. Robert Gallagher Declaration ¶ 6 [Doc. # 19-1]. Thus, all items shipped to Missouri addresses come from another state and are subject to the applicable use tax.

allege that the tax rates Sephora actually charged were 11.692%, for the purchase by Femmer, and 12.677% for the purchase by Schott.[5]  Id. at ¶¶ 30, 33.  Plaintiffs seek to certify a class consisting of:

> All persons and entities who, during the five-year period before the filing of this [action], purchased a product from Sephora through a remote sales channel, including its internet website, that was delivered from an out-of-state facility to a Missouri delivery address and were charged tax monies at a higher tax rate rather than the lower use tax rate.

Id. at ¶ 34.

Sephora proffered an initial calculation of the amount in controversy in its notice of removal, which it then amended in opposition to plaintiffs' motion to remand.  In its notice of removal, defendant cited plaintiffs' allegations that they were charged 11.692% and 12.667% in taxes when they should each have been charged 4.225%.  Relying on the smaller of the two numbers, defendant asserted that plaintiffs allege that it "over-collected tax by 7.467 percentage points (11.692 – 4.225 = 7.467)." Notice of Removal at ¶ 18 [Doc. # 1].  Defendant alleged that, during the five-year class period, it made in excess of $67 million in sales, exclusive of taxes, to customers who ordered products from its website for shipment to Missouri addresses.  Id. at ¶ 19.  Applying the 7.467% it overcharged one of the two named plaintiffs, defendant calculated that, for removal purposes, it allegedly over-collected $5.002 million in taxes during the class period. Id. at ¶ 20.  This amount does not take into account sales made to Missouri residents from remote sales channels other than its website.  Defendant then assumed an award of attorneys' fees equal to 25% of the damages, or $1.25 million.   Id. at ¶¶ 21-23.  Finally, defendant asserted that the purported class could recover punitive damages up to five times the damage award, or $31.25 million.  Id. at ¶ 25.  Plaintiffs argue that defendant made erroneous assumptions in its calculation

---

[5] According to the tax table submitted by plaintiffs, no jurisdiction in Missouri charged a sales or use tax of 11.692% or 12.667% at the time these sales were made.

of the class's potential compensatory damages which, in turn, invalidates its calculation of potential attorneys' fees and punitive damages. In addition, plaintiffs argue that defendant makes baseless assumptions regarding the magnitude of potential awards of attorneys' fees and punitive damages.

**II.     Discussion**

CAFA grants subject matter jurisdiction to federal courts in class actions where (1) any plaintiff has diversity of citizenship from any defendant; (2) the total amount in controversy exceeds $5 million; and (3) the alleged plaintiff class contains at least 100 members. 28 U.S.C. § 1332(d). Where, as here, a class action complaint does not allege that more than $5 million is in controversy, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(a)). If the class action plaintiffs challenge the notice of removal allegation, "removal is proper on the basis of an amount in controversy asserted by the defendant if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Pirozzi v. Massage Envy Franchising, LLC, 938 F.3d 981, 983 (8th Cir. 2019) (quoting Dart, 574 U.S. at 88); see also 28 U.S.C. § 1446(c)(2). "The party seeking to remove a case to federal court [under CAFA] bears the burden of establishing federal jurisdiction." Waters v. Ferrara Candy Co., 873 F.3d 633, 636 (8th Cir. 2017) (alteration in original; citation omitted). The removing defendant's burden is "to establish not whether the damages [sought] are greater than the requisite amount, but whether a fact finder might legally conclude that they are." Pirozzi, 938 F.3d at 984 (alteration and emphasis in original, internal quotation and citation omitted). The defendant can establish federal jurisdiction with "specific factual allegations . . . combined with reasonable deductions, reasonable

4

inferences, or other reasonable extrapolations." Ferrara Candy, 873 F.3d at 636 (quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 753–54 (11th Cir. 2010), and citing Raskas v. Johnson & Johnson, 719 F.3d 884, 886–87 (8th Cir. 2013)).  "However, the amount in controversy is not established by a preponderance of the evidence if a court must resort 'to conjecture, speculation, or star gazing.'"  Id. (quoting Pretka, 608 F.3d at 754).  After the party seeking to remove has shown CAFA's jurisdictional minimum by a preponderance of the evidence, "remand is only appropriate if the plaintiff can establish to a legal certainty that the claim is for less than the requisite amount."  Dammann v. Progressive Direct Ins. Co., 856 F.3d 580, 584 (8th Cir. 2017) (citation omitted).

Plaintiffs argue that defendant's allegation that it uniformly overcharged use taxes by 7.467 percent is not supported by their complaint or any evidence.  Defendant counters that plaintiffs fail to allege that any class member was ever overcharged by less than 7.467 percent.  In the complaint, plaintiffs allege that the use tax rate for purchases is calculated by adding "any applicable local use tax rate" to the state tax rate.  Complaint at ¶ 25.  They further allege that defendant charges excess tax on products shipped to Missouri customers.  Id. at ¶ 26.  The class members are identified as customers who were charged taxes at a higher rate than the correct applicable use tax.  Id. at ¶¶ 27, 34 (describing class members as those who were charged at a higher tax rate).  It is this "scheme" of applying a higher tax rate that is "uniformly perpetuated upon all Class members," id. at ¶ 43, not a uniform rate of overcharge.  Indeed, as defendant acknowledges, the two named plaintiffs were overcharged at different rates.  The allegations in the complaint do not support defendant's assertion that it overcharged by 7.467 percent and defendant did not support the assertion with any evidence.  Thus, the Court agrees with plaintiffs that defendant's reliance on a

uniform overcharge of 7.467 percent is not supported by the allegations in the complaint or any evidence presently before the Court.

Defendant updates its calculation in opposition to plaintiffs' remand motion, however, and provides the declaration of Robert Gallagher, who is presently defendant's Tax Director of Indirect Taxes and was previously a Senior Tax Manager. Declaration at ¶ 3 [Doc. # 19-1]. Based on an attached spreadsheet showing monthly sales, exclusive of taxes, shipped to Missouri addresses, Mr. Gallagher states that defendant's total sales for the period from April 2015 through March 2020 was $73,277,332. Id. ¶ at 7. Using this total sales figure, defendant calculates three different estimates of the amount it overcharged class members during this period. Defendant's Table [Doc. # 19-2]. Each estimate starts from the assumption that it charged at least 12.180% in use taxes on every sale — the average of the two rates the named plaintiffs were charged. Plaintiffs do not challenge this assumption and the Court finds that it is a "reasonable extrapolation." See Ferrara Candy, 873 F.3d at 636.

| Calculation # | Estimated Use Tax | Compensatory damages (12.180% - est. use tax) * sales | Attorneys' Fees (25%) | Punitive damages (5:1 or 1:1 ratio of damages + fees)[6] | Total |
|---|---|---|---|---|---|
| 1 | 5.632% (average of all use taxes) | $4,798,200 | $1,199,550 | $29,988,750 or $5,997,750 | $35,986,500 or $11,995,500 |
| 2 | 8.005% (weighted average) | $3,059,329 | $764,832 | $19,120,805 or $3,824,161 | $22,944,966 or $7,648,322 |
| 3 | 9.013% (applying a St. Louis City tax rate throughout state) | $2,320,693 | $580,173 | $14,504,330 or $2,900,866 | $17,405,196 or $5,801,732 |

---

[6] Missouri law limits punitive damages to "[f]ive times the net amount of the judgment." § 510.265.1(2), Mo. Rev. Stat. The "net amount of judgment" includes attorneys' fees. Hervey v. Missouri Dep't of Corr., 379 S.W.3d 156, 163 (Mo. 2012).

In Calculation 1, defendant assumes that the use tax it should have charged for each sale was 5.632% (the average of all the use taxes in the Missouri tax table submitted by plaintiffs). Applying this figure, defendant calculates the compensatory damages to be $4,798,200.[7] In Estimate 2, defendant assumes a weighted average use tax of 8.005%, based on plaintiffs' assertion that 37% of Missouri's jurisdictions have a use tax rate of 4.225% and the remaining 63% have rates up to 10.2250%, see Plaintiffs' Memorandum at 10 [Doc. # 15], resulting in compensatory damages equal to $3,059,329.[8] Estimate 3 assumes that the relatively high tax rate for parts of St. Louis City — 9.013% — applies throughout the state and results in compensatory damages equal to $2,320,693.[9] Plaintiffs inexplicably fail to address defendant's new assumptions in their reply and merely repeat their initial argument that defendant incorrectly assumes that it overtaxed every potential class member by at least 7.467 percent. [Doc. # 20]. The Court finds that defendant's assumptions regarding the amount by which it allegedly overcharged class members are reasonable based on allegations in the complaint.

Plaintiffs assert as a general matter that defendant cannot satisfy the amount in controversy requirement unless it submits "actual sales data . . . and the actual addresses to which [it] shipped its goods." Plaintiff's Memorandum [Doc. # 15 at 11]. This argument was recently addressed in Waters v. Home Depot USA, Inc., 446 F. Supp. 3d 484 (E.D. Mo. 2020). There, the plaintiff brought a class action under the MMPA challenging Home Depot's alleged practice of charging sales taxes, rather than the lower use taxes, on purchases shipped to Missouri residents from other states. Home Depot removed the action under CAFA and plaintiff moved to remand. There, as

---

[7] (12.180% - 5.632%) x $73,277,332 = $4,798,200.

[8] (12.180% - 8.005%) x $73,277,332 = $3,059,329.

[9] (12.180% - 9.013%) x $73,277,332 = $2,320,693.

7

here, the plaintiff argued that the removing defendant "failed to submit any evidence of the actual sales data and the actual addresses to which [it] shipped its goods." Id. at 492.  The Court rejected the plaintiff's argument, stating that his "demand for evidentiary certainty goes beyond what is required under CAFA.  When the preponderance of evidence standard applies, 'the defendant's showing on the amount in controversy may rely on reasonable assumptions,' and there is no demand at the early stages of removal to conclusively establish damages." Id. (quoting Arias v. Residence Inn by Marriott, 936 F.3d 920, 922 (9th Cir. 2019)); see also Raskas, 719 F.3d at 888 (noting that a defendant is not required to "confess liability for the entire jurisdictional amount" in order to overcome the amount-in-controversy threshold).  Dart required plaintiff to submit "competing proof" so that the court could fairly weigh, by a preponderance of the evidence, "whether the amount-in-controversy requirement has been satisfied." Waters, 446 F. Supp. 3d at 492 (quoting Dart, 574 U.S. at 88).  "Implicit in Dart's instruction is the idea that plaintiff's challenge have a supportive evidentiary basis for which to challenge Home Depot's allegations; simply second-guessing a removing defendant's allegations is insufficient." Id.  As in Waters, plaintiffs here have failed to submit competing proof.[10]

Here, even if the Court adopts defendant's lowest estimate of compensatory damages — $2,320,693 — the jurisdictional minimum is satisfied by the addition of attorneys' fees and possible punitive damages.  The MMPA permits a court to "award to the prevailing party attorney's fees, based on the amount of time reasonably expended."  Mo. Rev. Stat. § 407.025.1.  In determining an amount of attorneys' fees that may be awarded, the court may consider attorneys' fees awarded in similar cases. Faltermeier v. FCA US LLC, No. 4:15-CV-00491-DGK, 2016 WL 10879705, at *4 (W.D. Mo. May 26, 2016), aff'd, 899 F.3d 617 (8th Cir. 2018) (finding CAFA

---

[10] Unlike the plaintiff in Waters, the plaintiffs here do not submit a competing estimate of the compensatory damages.  See id. (noting "plaintiff's conservative estimate of $3,925,964 in compensatory damages").

8

amount in controversy satisfied based in part on attorneys' fees in the amount of 25% of compensatory damages). Plaintiffs argue that defendant's reliance on a 25-percent award of attorneys is, again, unsupported by evidence. Also again, however, they fail to submit any competing proof. See Embry v. T. Marzetti Co., No. 4:19-CV-02785-SEP, 2020 WL 5291933, at *3 (E.D. Mo. Sept. 4, 2020) (where defendant alleged that a 40% award of attorneys' fees was supported by precedent, plaintiff "must do more than dismiss the potential award as speculative" to defeat CAFA jurisdiction). Because plaintiffs have "neither produced their own evidence nor shown that a [25]% attorneys' fees award is so outlandish as to amount to a legal impossibility, [their] argument fails." Id. And, as the table above illustrates, even a 1-to-1 ratio of punitive damages places the amount in controversy above the $5 million threshold.

Defendant has provided "specific factual allegations" regarding the amount of sales made through its website for shipment to Missouri addresses. Those allegations, "combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations," Ferrara Candy, 873 F.3d at 636, are such that a factfinder might legally conclude that the damages in this case are greater than $5 million. Pirozzi, 938 F.3d at 984. In response, plaintiffs have not established to a legal certainty that the claims are for less than the jurisdictional amount, Dammann, 856 F.3d at 584, and their motion to remand will be denied. In light of the Court's findings regarding the amount in controversy, additional discovery is not required and plaintiffs' alternative motion to stay ruling on the remand motion and order jurisdictional discovery will also be denied.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to remand [Doc. # 14] is **denied**.

**IT IS FURTHER ORDERED** that plaintiff's alternative motion to engage in limited discovery [Doc. # 16] is **denied**.

　　　　　　　　　　　　　　　　　　　　/s/ *John M. Bodenhausen*
　　　　　　　　　　　　　　　　　　　　JOHN M. BODENHAUSEN
　　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated this 21st day of September, 2020.