UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TIFFANY FEMMER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:20 CV 676 JMB |
| | ) | |
| SEPHORA USA, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Currently pending before the Court is defendant Sephora's motion, pursuant to Rule 12(b)(6), Fed.R.Civ.P.  The motion seeks relief in several forms.  With respect to plaintiff Schott, defendant asks the Court to stay the matter pursuant to the Federal Arbitration Act or, in the alternative to dismiss Schott's claims.  With respect to plaintiff Femmer, defendant asks the Court to dismiss all claims.  Plaintiffs have filed responses in opposition and the issues are fully briefed. The parties have consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636.

## Background

Plaintiffs Tiffany Femmer and Kathryn Schott allege that defendant Sephora USA, Inc., (Sephora) charges excess use taxes on products purchased through "remote sales channels"[1] and shipped to addresses in Missouri from out-of-state facilities.  On January 30, 2020, each plaintiff purchased a product from defendant's website for shipment to addresses in Missouri.  Plaintiffs allege that the use tax applicable to their purchases was 4.225%, but defendant charged plaintiff Femmer 11.692% and plaintiff Schott 12.667%.  In this putative class action, they bring claims for

---

[1] That is, by telephone, from a catalog, or through a website, rather than from a brick-and-mortar store.

violation of the Missouri Merchandising Practices Act (MMPA), Mo. Rev. Stat. §§ 407.010 *et seq.*, unjust enrichment, negligence, and money had and received.  Defendant removed the matter to this Court, pursuant to the Class Action Fairness Act (CAFA), 28 U.S.C. § 1332(d).  Defendant argues, first, that plaintiff Schott's claims are governed by arbitration agreements included in the user account she created when she made her purchase and, second, that plaintiffs fail to state claims for relief.

## Motion to Compel Arbitration

### I.      Background

On January 30, 2020, plaintiff Schott created a user account on defendant's website and joined the "Beauty Insider" loyalty program.  Pavan Tipparti Declaration at ¶¶ 8-11 [Doc. # 26-2].  To create an account, plaintiff Schott was required to enter her personal information and click a button labelled "Join Now."  Id. ¶¶ 17-19.  The following statement appears immediately below the "Join Now" button:  "By clicking 'Join Now' you acknowledge that . . . you agree to Sephora's . . . Terms of Use [and] Beauty Insider Terms . . ." (collectively, "Terms").  Id. ¶ 19.  The statement included hyperlinks to the complete Terms.  Other links to the Terms appeared on the Sephora website and Beauty Insider webpage.  Id. ¶¶ 20-21, 25-26; Exs. F, G, H (screenshots from website) [Docs. # 26-8, # 26-9, #26-10].

The Terms of Use and Beauty Insider Terms both contain an agreement to arbitrate disputes ("Arbitration Provision" or "Provision").  See Ex. I at ¶ 23; Ex. K at ¶ 24 [Docs. # 26-11, # 26-12].  As relevant, the Provision states:

**23.      Agreement to Arbitrate Disputes**

**PLEASE   READ   THIS   SECTION   CAREFULLY — IT   MAY SIGNIFICANTLY AFFECT YOUR LEGAL RIGHTS, INCLUDING YOUR RIGHT TO FILE A LAWSUIT IN COURT AND HAVE A JURY HEAR**

2

**YOUR CLAIMS.  It contains procedures for MANDATORY BINDING ARBITRATION AND A CLASS ACTION WAIVER.**

* * *

**ARBITRATION PROCEDURES:**  The Federal Arbitration Act governs the interpretation and enforcement of  this dispute resolution provision.  Arbitration shall be initiated through JAMS.  Any dispute, controversy, or claim arising out of or relating to these Terms shall be referred to and finally determined by arbitration in accordance with the JAMS Streamlined Arbitration Rules and Procedures. . . .

* * *

**AUTHORITY OF THE ARBITRATOR:**  The arbitrator will decide the rights and liabilities, if any, of you and Sephora, and the dispute will not be consolidated with any other matters or joined with any other cases or parties.  The arbitrator shall have authority to grant motions dispositive of all or part of any claim.  The arbitrator shall have the authority to award monetary damages and to grant any non-monetary remedy or relief available to an individual under applicable law, the Arbitration Rules, and the Terms. . . .  The award of the arbitrator is final and binding upon you and Sephora.

**NO CLASS ACTIONS:**  You may only resolve disputes with us on an individual basis. . . .

**WAIVER OF JURY TRIAL:**  THE PARTIES HEREBY WAIVE THEIR CONSTITUTIONAL AND STATUTORY RIGHTS TO GO TO COURT AND HAVE A TRIAL IN FRONT OF A JUDGE OR A JURY. . . .

The Arbitration Provisions permits users to opt out of arbitration by sending Sephora an email within 30 days of signing up for an account.  Sephora did not receive an opt-out email from plaintiff Schott.  Valerie Spears Declaration ¶¶ 4-6 [Doc. # 26-1].

## II.    Discussion

Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 reflects both "a liberal federal policy favoring arbitration

3

agreements, notwithstanding any state substantive or procedural policies to the contrary," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983), and "the fundamental principle that arbitration is a matter of contract," Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 67 (2010).  Courts "must rigorously enforce arbitration agreements according to their terms." Am. Exp. Co. v. Italian Colors Restaurant, 570 U.S. 228, 233 (2013) (internal quotation and citation omitted).  As a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.  Moses H. Cone, 460 U.S. at 24–25.

"[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC, 641 F.3d 263, 266 (8th Cir. 2011) (citation omitted).  Plaintiff Schott does not dispute that her claims fall within the scope of the Arbitration Provision.  Rather, she argues that Sephora waived its right to compel her to arbitrate her claims or, in the alternative, that the Provision is unenforceable.

### A. Waiver

A party waives its right to arbitration when it "(1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions."  Hooper v. Advance Am., Cash Advance Centers of Missouri, Inc., 589 F.3d 917, 920 (8th Cir. 2009) (citation omitted).  "[I]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration."  Lewallen v. Green Tree Servicing, L.L.C., 487 F.3d 1085, 1090 (8th Cir. 2007) (citation omitted).  Defendant does not dispute that it knew of its right to arbitration, but contends it did not act inconsistently with that right and, further, that plaintiff Schott was not prejudiced.

A party acts inconsistently with its right to arbitrate if it "substantially invokes the litigation machinery before asserting its arbitration right, . . . when, for example, it files a lawsuit on arbitrable claims, engages in extensive discovery, or fails to move to compel arbitration and stay litigation in a timely manner." Messina v. North Cent. Distrib., Inc., 821 F.3d 1047, 1050 (8th Cir. 2016) (citations omitted). To safeguard its right to arbitration, a party must "do all it could reasonably have been expected to do to make the earliest feasible determination of whether to proceed judicially or by arbitration." Id. (citations omitted).

Plaintiff Schott asserts that, "[i]n the Eighth Circuit, a defendant acts inconsistently with its right to arbitrate when it files a motion to compel arbitration simultaneously with its motion to dismiss." Pl. Memo in Opposition at 7 [Doc. # 30]. In support of this assertion, plaintiff cites Lewallen, 487 F.3d at 1089. In February 2004, the plaintiff in Lewallen filed for Chapter 13 bankruptcy to prevent defendant Green Tree Servicing from foreclosing on her home. Green Tree filed a proof of claim, to which Lewallen objected. At a hearing on her objection in March 2005, Green Tree asserted that Lewallen's claims had to be raised in an adversary proceeding, but failed to raise its right to arbitrate. The bankruptcy court overruled Lewallen's objection and, in May 2005, she filed an adversary proceeding and served discovery requests. On June 7, 2005, Green Tree sought an extension of time to file its answer and, on July 1, Green Tree served its own discovery requests. On July 15, Green Tree sought an extension of time to respond to Lewallen's discovery. Id. at 1088-89. A few days later, the parties participated in a joint motion to continue the trial setting. It was not until July 28, 2005, that Green Tree invoked its right to arbitration. Id. at 1091-92. Based on this history, the Eighth Circuit concluded that Green Tree had waived its right to arbitration, finding that Green Tree could have requested arbitration eleven months sooner than it did. Id. In addition, Green Tree acted inconsistently with its right to arbitrate by serving

5

discovery requests.  Id. at 1093 (noting that Lewallen had begun preparing responses to discovery requests when motion to dismiss/arbitrate was filed).  Regarding Green Tree's motion to dismiss Lewallen's claims or, in the alternative, compel arbitration, the Eighth Circuit noted that Green Tree encouraged the court to dismiss the case on statute of limitations grounds or on a judicial estoppel theory, before addressing the issue of arbitration.  Id. at 1092.  These actions, in combination, were inconsistent with Green Tree's right to arbitrate.

Here, plaintiffs filed suit in state court on March 19, 2020.  Defendant was served on April 22, 2020, and removed the matter to this Court on May 21, 2020.  On May 22, 2020, defendant filed an unopposed motion for extension of time until July 10, 2020, to file its response to the complaint, citing the disruption caused by the COVID pandemic.  On June 22, 2020, plaintiffs filed motions to remand and for jurisdictional discovery, asserting that defendant's allegations in its notice of removal failed to establish that damages satisfied the amount-in-controversy requirement.  The parties then jointly moved for an extension of the briefing schedule on plaintiffs' motions and for extension of defendant's deadline to respond to the complaint, which the Court granted.  On September 21, 2020, the Court denied plaintiffs' remand and discovery motions.  Defendant again moved for an extension to file its response to the complaint.  On October 19, 2020, defendant filed the present motion to compel arbitration and/or dismiss plaintiff Schott's claims and to dismiss plaintiff Femmer's claims.

Defendant's conduct in this case is a far cry from that at issue in Lewallen.  First, there was only a five-month delay[2] between defendant's removal and its motion to compel arbitration, and

_____

[2] Plaintiff asserts that defendant knew on January 30, 2020 — when she created her account —  that it had the right to arbitrate her claims but unreasonably waited 10 months to seek arbitration.  Pl. Memo at 5.  This argument defies reason — there was no dispute to submit to arbitration before plaintiff filed suit two months later.

6

three months of that delay are attributable to briefing and ruling on plaintiffs' motion to remand. Defendant's requests for additional time to respond to the complaint were entirely reasonable in light of the COVID-19 pandemic and resultant shut-down.  To the extent that plaintiff implies that removal itself resulted in waiver, that argument has been rejected.  Randazzo v. Anchen Pharm., Inc., No. 4:12-CV-999 CAS, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 18, 2012) ("The mere act of removing a case to federal court does not constitute a waiver of the right to arbitrate.") (citing Cicle v. Chase Bank USA, 583 F.3d 549, 551, 557 (8th Cir. 2009), and Rigsby v. XL Health Corp., 2011 WL 2563179, *2 (W.D. Mo. June 28, 2011) ("Removal is a procedural action that is not inconsistent with a party's right to arbitrate the merits.")).  And, unlike the defendant in Lewallen, defendant here clearly asks the Court to enforce the arbitration agreement and to reach the merits of plaintiff Schott's claims only in the alternative.

The Court has reviewed the other cases cited by plaintiff and concludes that they all present substantially different scenarios.  See Messina v. North Cent. Distrib., Inc., 821 F.3d 1047, 1050 (8th Cir. 2016) (finding party "substantially invoke[d] the litigation machinery," by removing the case to federal court, filing an answer, participating in a pretrial hearing, filing a scheduling report which recommended a trial date and discovery deadlines, and filing a motion to transfer venue); Hooper v. Advance America, Cash Advance Centers of Missouri, Inc., 589 F.3d 917 (8th Cir. 2009) (defendant filed motion to compel arbitration after court ruled on a motion to dismiss); Kelly v. Golden, 352 F.3d 344, 349–50 (8th Cir. 2003) (plaintiff — a lawyer — waived right to arbitration by litigating the merits of his claims for a year before seeking to compel arbitration clause in agreement he drafted); Ritzel Commc'ns, Inc. v. Mid-Am. Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993) (party waived right to arbitration by first filing a motion to dismiss or

7

sever a crossclaim for trial).  Plaintiff has failed to show that defendant acted inconsistently with its right to arbitrate the claims in this dispute.

Plaintiff fares no better with her assertion of prejudice.  Prejudice results when the "parties use discovery not available in arbitration, when they litigate substantial issues on the merits, or when compelling arbitration would require a duplication of efforts."  Lewallen, 487 F.3d at 1093 (citation omitted).  Plaintiff argues that defendant's combined motion to compel arbitration and to dismiss requires a duplication of effort because she has been forced to respond to two significant motions.  Missing from this argument is any acknowledgment that her lawyer was required to respond to the dismissal motion on behalf of plaintiff Femmer.  Thus, plaintiff Schott cannot establish that she is prejudiced by the need to respond to the motion to compel arbitration or dismiss simultaneously.

The Court rejects plaintiff Schott's argument that defendant waived its right to have her claims decided by an arbitrator.

### B.      The Parties Reserved All Issues of Arbitrability to the Arbitrator

Plaintiff argues that, even if defendant did not waive arbitration, the Arbitration Provision cannot be enforced because defendant's Terms of Use are grossly one-sided, constitute a contract of adhesion, were written in fine-print and could not be easily read or understood, and there was a large disparity in the parties' bargaining power.  Defendant argues that the arbitration agreement delegates, via its selection of JAMS Streamlined Rules, all arbitrability disputes to the arbitrator.  Plaintiff counters that, under Eighth Circuit precedent, arbitrability is to be determined by the court.

The Supreme Court recently reinforced that, under the FAA, arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms.  Henry Schein, Inc.

8

v. Archer & White Sales, Inc., 139 S. Ct. 524, 529 (2019) (citation omitted).  Furthermore, "parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability, such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."  Id. (internal quotation marks and citations omitted). "We have explained that an 'agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other.'"  Id.  (citation omitted).  "When the parties' contract delegates the arbitrability question to an arbitrator . . . a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." Id.

> Here, the Arbitration Provision incorporated JAMS Rule 8(b), which states:
>
> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

Ex. N [Doc. # 26-17].  Courts in this district have determined that, under Henry Schein, JAMS Rule 8(b) requires the court to refer all jurisdictional and arbitrability disputes to the arbitrator. See, e.g., Goulart v. Edgewell Pers. Care Co., No. 4:19-CV-2568 RLW, 2020 WL 4934367, at *4 (E.D. Mo. Aug. 24, 2020); Been v. Edgewell Pers. Care Co., No. 4:19-CV-02602 SRC, 2020 WL 1531015, at *3 (E.D. Mo. Mar. 31, 2020).

Even if the Court were to decide that it, and not the arbitrator, is the correct entity to make a decision as to the enforceability of the Arbitration Provision, the Court would find it enforceable under the FAA and Missouri law, and would not find the provision as a whole unconscionable.

9

See Volpe v. Advance Am., No. 4:15 CV 1119 JMB, 2015 WL 5124202, at *3 (E.D. Mo. Sept. 1, 2015) ("Alternatively, even if there were no delegation provision in this case, the Court would still find that the Arbitration Provision is enforceable under the FAA and Missouri Law.").

In assessing unconscionability at contract formation, a court looks to the purposes of the unconscionability doctrine, which is "to guard against one-sided contracts, oppression and unfair surprise," which may "occur during the bargaining process" or when a later dispute reveals "the objectively unreasonable terms." Jones v. Titlemax of Missouri, Inc., No. 4:15-CV-01361-JAR, 2016 WL 4158886, at *6 (E.D. Mo. Aug. 5, 2016) (quoting Brewer v. Missouri Title Loans, 364 S.W.3d 486, 492-93 (Mo. 2012)).  Plaintiff's contention that the Arbitration Provision was presented on a "take it or leave it" basis is simply not true because there was an opt-out process. Id. (arbitration provision's "opt-out" procedure "suggests Plaintiff retained agency in determining whether to be bound by the provision.").  The claim that there was no mutuality of obligation is also unavailing because mutuality of obligation is not necessary in arbitration agreements.  Eaton v. CMH Homes, Inc., 461 S.W.3d 426, 433 (Mo. 2015) ("[T]he lack of mutuality as to the arbitration agreement does not itself invalidate that arbitration agreement.").  Plaintiff's complaint that the Terms of Use were in fine print is also not correct.  The key terms were identified in bold, capital letter fonts, with multiple "short and sweet" summaries.  Ex. I; see Jones, 2016 WL 4158886, at *6 (arbitration provision's "use of bold and underlined print and its repeated statements regarding the waiver of rights indicate that it was not beyond the grasp of a person of reasonable capability.")  Finally, "a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modern consumer contracts generally." Robinson v. Title Lenders, Inc., 364 S.W.3d 505, 515 (Mo. 2012) (citing AT&T Mobility LLC v.

10

Concepcion, 563 U.S. 333, 348  (2011) (noting that "the times in which consumer contracts were anything other than adhesive are long past")).

In summary, the Court concludes that defendant did not waive its right to arbitrate plaintiff Schott's claims.  Furthermore, any issues regarding the validity or applicability of the arbitration agreement to this dispute must be referred to the arbitrator and, finally, the arbitration provision in this matter is not unconscionable.  Accordingly, defendant's motion to stay plaintiff Schott's claims pursuant to the Arbitration Provision will be granted.

### Motion to Dismiss Plaintiff Femmer's Claims

### I.  Class Allegations

Plaintiff Femmer seeks certification of a class of all persons or entities who purchased a product from defendant through a remote sales channel for delivery to a Missouri address that were charged tax monies at a higher tax rate than the lower use tax rate.  Petition at ¶ 34.  She identifies the following common class issues: whether defendant's calculation and collection of incorrect tax rates constitutes an unlawful, unfair, and unethical practice; whether defendant profited from collecting incorrect taxes; whether defendant was negligent in calculating taxes; whether defendant's customers were damaged by its unlawful tax practice; whether defendant is required to return "tax" monies to class members; whether defendant acted with malice; whether class members conferred an unfair benefit on defendant; whether defendant should be enjoined from continuing its tax practices; and whether defendant should pay attorneys' fees.  Id. at ¶ 43.

### II.  Legal Standard

The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint.  To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim for relief "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (quoting Twombly, 550 U.S. at 555 & n.3).  This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Id. at 555-56; Fed. R. Civ. P. 8(a)(2).  The principle that a court must accept as true all of the allegations contained in a complaint does not apply to legal conclusions. Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III.   Discussion

Defendant seeks dismissal of plaintiff Femmer's claims, arguing that claims for refunds of overpaid taxes can only be pursued through a statutory refund procedure established by the State of Missouri.   In the alternative, defendant argues that plaintiff Femmer fails to make allegations required to support her MMPA claim, that her claims for unjust enrichment and money had and received are barred by the parties' express contract, and that her negligence claim fails because defendant did not owe her a duty and she suffered only economic losses.

## A.    Exclusive Remedy

Defendant asserts that the State is the true equitable owner of the excess taxes it allegedly collected[3] and argues that plaintiff's sole remedy is to seek repayment through Missouri's exclusive process for adjudicating tax overpayments, as set forth at § 144.190, Mo.Rev.Stat. Subsection 4 of the statute addresses sales and use taxes and states:

> [A] purchaser that originally paid sales or use tax to a vendor or seller may submit a refund claim directly to the director of revenue for such sales or use taxes paid to such vendor or seller and remitted to the director, provided . . . such claim for refund is accompanied by either:
>
>> (1)  A notarized assignment of rights statement by the vendor or seller to the purchaser allowing the purchaser to seek the refund on behalf of the vendor or seller . . . .
>>
>> (2)  In the event the vendor or seller fails or refuses to provide an assignment of rights statement . . ., or the purchaser is not able to locate the vendor or seller or the vendor or seller is no longer in business, the purchaser may provide the director a notarized statement . . . .

Plaintiff argues that § 144.190.4 does not apply to her claims because she is not seeking a tax refund and, further, that the statute does not apply to claims against a nongovernmental corporate entity.   Numerous Missouri cases have held that § 144.190 provides the exclusive remedy for recovering overpaid taxes.  These cases arose in the context of lawsuits brought by taxpayers against the Missouri Director of Revenue, however.  Noting that, "[a]s a general rule the sovereign need not refund taxes voluntarily paid even if illegally collected," the Missouri Supreme Court described § 144.190 as "a limited waiver of sovereign immunity to allow the recovery of taxes, penalties, or interest paid that have been illegally or erroneously computed or collected."

---

[3] Defendant asserts that it is just a disinterested middleman between plaintiff and the State, citing statutory provisions that require vendors to remit all collected taxes to the State.  Def. Memorandum at 7 (citing §§ 144.635, 144.655.1, and 144.655.6).  The question of whether defendant remitted the alleged excess funds to the State is a factual matter not properly considered on a motion to dismiss.

Sprint Commc'ns Co., L.P. v. Dir. of Revenue, 64 S.W.3d 832, 834 (Mo. 2002). "Statutory provisions waiving sovereign immunity are strictly construed, and when the state consents to be sued, it may prescribe the manner, extent, procedure to be followed, and any other terms and conditions as it sees fit." Id. (internal quotation and citation omitted); see also H.S. Const. Co. v. Lohman, 950 S.W.2d 331, 333 (Mo. Ct. App. 1997) ("The prescribed statutory remedies for recovery of the taxes paid are exclusive."); Kleban v. Morris, 247 S.W.2d 832, 839–40 (Mo. 1952) (statutory remedy for seeking return of tax monies "is exclusive"). Here, however, plaintiff is not suing the Director of Revenue and concerns regarding the extent of any waiver of sovereign immunity do not apply.

The Missouri Supreme Court has not addressed whether subsection 4 of § 144.190 bars claims against a vendor.[4] Defendant relies on a decision of the Missouri Court of Appeals, addressing subsection 7 of § 144.190, which provides "[s]pecial rules applicable to error corrections requested by customers mobile telecommunications service." The plaintiff in Friend v. Cellco P'ship, 525 S.W.3d 149 (Mo. Ct. App. 2017), alleged that his wireless service provider erroneously imposed a sales tax on his telecommunication services and brought a claim under the MMPA. The Missouri Court of Appeals held that plaintiff's claim was barred because he failed to comply with § 144.190.7. Under this subsection, the customer must first notify the service provider of the erroneous tax:

> [I]f a customer of mobile telecommunications services believes that the amount of tax, the assignment of place of primary use or the taxing jurisdiction included on a

---

[4] As defendant notes, where the Supreme Court of Missouri has not addressed an issue, this Court may not disregard an applicable decision of the Missouri Court of Appeals unless it is "convinced by other persuasive data that the highest court of the state would decide otherwise." Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011 (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237 (1940)). The Court concludes that Friend is not applicable to plaintiff's claims against a vendor of non–telecommunications services.

14

billing is erroneous, the customer <u>shall</u> notify the home service provider, in writing, within three years from the date of the billing statement.

§ 144.190.7(2) (emphasis added).

The court determined that, based on the context and legislative intent, the statutory word "shall" was mandatory.  <u>Friend</u>, 525 S.W.3d at 153–54.  The court stated:

> Telecommunications providers serve as intermediaries between the state or its political subdivisions and the customers, and the telecommunications provider is charged with the responsibility of determining and assessing what state and local taxes are applicable to each customer. Section 144.190 provides the exclusive mechanisms by which citizens may contest what they believe to have been improperly calculated and collected tax assessments.  <u>See</u> H.S. Const. Co. [v. Lohman, 950 S.W.2d 331, 333 (Mo. Ct. App. 1997)]. Nestled within this statute, section 144.190.7 provides the "special rules" by which taxpayers may dispute what they believe to be an improperly calculated or assessed tax by a home service provider. The language of the statute is clear . . . that this mechanism is for any customer who *believes he has been assessed an improper tax* and not only if the tax has been paid and the customer is seeking a refund. <u>See</u> section 144.190.7(2) (if a customer of mobile telecommunications services *believes* [...] the taxing jurisdiction included on a billing is erroneous, the customer *shall notify* the home service provider, in writing [....] ) If the home service provider determines that the taxpayer's contestation of a tax was correct or incorrect, the culmination of these "special rules" is a written explanation to the taxpayer regarding that determination. <u>See</u> section 144.190.7(3). Presumably, if the taxpayer still contests the result, he may then turn to the other remedies provided in section 144.190. If the home service provider determines the taxing jurisdiction was incorrectly collected, it "shall correct the error and, at its election, either refund or credit the amount of tax erroneously collected to the customer for a period of up to three years from the last day of the home service provider's sixty-day review period." A similar three-year limitation period is established by section 144.190.2, which provides that any claim for a refund due to an erroneously or illegally collected tax by the director of revenue may only be allowed if the claim is submitted in writing and within three years from the date of the overpayment. *See* sections 144.190.2 and 144.190.3.

<u>Friend</u>, 525 S.W.3d at 154 (emphasis and bracketed ellipses in original).

Defendant argues that <u>Friend</u> stands for the proposition that § 144.190.4 provides the exclusive procedure for seeking refunds of sales and use taxes.  The Court disagrees.  The <u>Friend</u> court was plainly addressing the "special rules" for tax claims against telecommunications providers.  It is true, as defendant argues, that the court explicitly stated that "Section 144.190

provides the exclusive mechanisms by which citizens may contest what they believe to have been improperly calculated and collected tax assessments." The case the <u>Friend</u> court cited to support this statement, <u>H.S. Const. Co. v. Lohman</u>, 950 S.W.2d 331, 333 (Mo. Ct. App. 1997), involved class action claims against the director of revenue. Noting that § 144.190 provided "a limited waiver of sovereign immunity," the court held that the statute did not contemplate a class action lawsuit as a means of recovery. As discussed above, however, plaintiff's claims here do not implicate issues of sovereign immunity. In addition, the starting point for the <u>Friend</u> court's determination that § 144.190.7 is mandatory was the legislature's use of the word "shall." Subsection 4, by contrast, uses the permissive "may" ("a purchaser . . . may submit a refund claim directly to the director of revenue" after obtaining an assignment from the vendor or providing a notarized statement).

Finally, the Court agrees with plaintiff that this case is not properly classified as a tax refund case. Rather, she alleges that defendant engages in a practice of applying a charge for miscalculated taxes. The remedy she seeks is not a tax refund but damages for a practice that she alleges may be unlawful, unfair, unethical, and possibly profitable to defendant. <u>See</u> <u>Schott v. Target Corp.</u>, No.1722-CC10672 (St. Louis City Cir. Ct. June 8, 2018) (denying defendants' motion to dismiss plaintiff's class action claims for violation of MMPA, negligence, unjust enrichment, money had and received based on allegations that defendant overcharged sales tax); <u>Ylvisaker v. Clarkson Eyecare, LLC</u>, No. 17SL-CC02089 (St. Louis County Cir. Ct., Apr. 9, 2018) (denying motion to dismiss class-action claims pursuant to <u>Friend</u>); <u>Whelehon v. Costco Wholesale Corp.</u>, No 17SL-CC02324 (St. Louis County Cir. Ct., Apr. 9, 2018) (same); <u>Holzum v. General Nutrition Corp.</u>, No. 17SL-CC02325 (St. Louis County Cir. Ct., Apr. 9, 2018) (same);

16

Schott v. Dick's Sporting Goods, Inc., No. 17SL-CC02376 (St. Louis County Cir. Ct., Apr. 9, 2018) (same).

Accordingly, defendant's motion to dismiss based on § 144.190.4 will be denied.

## B.    The Sufficiency of Plaintiff's MMPA Claim

The MMPA penalizes "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale . . . of any merchandise in trade or commerce . . ." Mo.Rev.Stat. § 407.020.1.  The MMPA authorizes civil actions by "[a]ny person who purchases . . . merchandise primarily for personal, family or household use and thereby suffers an ascertainable loss of money . . . as a result of the . . . employment by another person of a . . . practice declared unlawful by section 407.020."  § 407.025.

Defendant first argues that plaintiff's MMPA claim should be dismissed because she alleges a misrepresentation of law, not fact, which cannot be considered a misrepresentation under the MMPA.  Def. Memo at 14 (citing Missouri ex rel. Nixon v. Progressive Bus. Publications, Inc., 504 F. Supp. 2d 699, 707 (W.D. Mo. 2007)).  In making this argument, defendant reduces plaintiff's claim to an allegation that defendant required class members to pay tax amounts that it represented as correct as a matter of the applicable tax law when they were wrong as a matter of tax law.  The Court disagrees with this narrow characterization of plaintiff's claim and rejects this argument.

Defendant argues that plaintiff's MMPA claim must be dismissed because she does not allege that her purchase was made primarily for personal, family or household purposes, nor does she appropriately limit her class definition.  In the case cited by defendant, Anderson v. High-Tech Inst., No. 11-0506-CV-W-SOW, 2013 WL 12203311, at *2 (W.D. Mo. Jan. 25, 2013), plaintiffs

alleged that defendant High Tech Institute — a for–profit vocational institute — misrepresented the benefits of enrolling in its programs.  The district court dismissed plaintiffs' MMPA claim because their complaint was "rife with allegations suggesting that their purposes for enrolling in High Tech were business–related."  Id. at *2.  Here, plaintiff alleges that she bought eyeliner, which would appear to be a product bought for personal use.  Furthermore, as plaintiff notes, defendant states in its Terms that its products are for personal use only.  Nonetheless, because plaintiff wishes to certify a class, the Court thinks it is appropriate for her to amend her MMPA claim and class allegations to make the required allegation more explicitly.  Defendant's motion to dismiss plaintiff's MMPA claim will be granted, without prejudice to plaintiff's ability to amend.

### C.       Claims for Unjust Enrichment and Money Had and Received

To establish unjust enrichment under Missouri law, a plaintiff must show the following: (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated the benefit; and (3) defendant accepted and retained the benefit under inequitable and/or unjust circumstances.  Blair v. City of Hannibal, 179 F. Supp. 3d 901, 911–12 (E.D. Mo. 2016) (citing Howard v. Turnbull, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)).  To establish a claim for money had and received, a plaintiff must show: (1) defendant received or obtained possession of plaintiff's money; (2) defendant appreciated a benefit; and (3) defendant's acceptance and retention of the money was unjust.  Id. (citing Sch. Dist. of Kansas City, Mo. v. Mo. Bd. of Fund Comm'rs, 384 S.W.3d 238, 272 (Mo. Ct. App. 2012)).  Claims for unjust enrichment and money had and received "are both founded upon equitable principles whereby the law implies a contract to prevent unjust enrichment."  Lowe v. Hill, 430 S.W.3d 346, 349 (Mo. Ct. App. 2014) (citations omitted).  "It is a well-settled principle of law that implied contract claims arise only where there is no express

contract." Id.; see also Chem Gro of Houghton, Inc. v. Lewis Cty. Rural Elec. Co-op. Ass'n, No. 2:11CV93 JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012) ("Missouri law does not permit a plaintiff to recover under both an express contract and unjust enrichment.").

Defendant argues that plaintiff's claims must be dismissed because they are precluded by the parties' express contract for the purchase and delivery of eyeliner.  The Court finds that plaintiff's claim that defendant collected monies in excess of the lawful amount falls outside the scope of the parties' contract.  Defendant's related argument that plaintiff received the benefit of the bargain she made and thus cannot establish that it unjustly retained a benefit fails for the same reason.  Defendant also argues that plaintiff's claims fail under the "voluntary payment" doctrine, pursuant to which "a voluntary payment, made under a mistake of law but not fact, cannot be recovered in an unjust enrichment claim."  Howard v. Turnbull, 316 S.W.3d 431, 437 (Mo. Ct. App. 2010).  The Court has already rejected defendant's characterization of plaintiff's claim as alleging a mistake of law.  Finally, defendant argues it was obligated to remit any taxes it collected to the State and thus plaintiff cannot properly claim that it received and retained the excess funds.  This argument cannot prevail at the dismissal stage because there is no evidence regarding what defendant did with the excess monies it collected.

### D.  Negligence

Defendant argues that plaintiff's negligence claim must be dismissed because she cannot establish that it owes her a duty.  Whether a legal duty exists is a question of law.  Stein v. Novus Equities Co., 284 S.W.3d 597, 605 (Mo. Ct. App. 2009).  A legal duty may arise under at least three sources: (1) the legislature; (2) the law; or (3) a contract.  Id.  Plaintiff argues that Missouri's statutes regarding the collection of use taxes creates a public duty.  See § 144.635 (requiring vendors to collect use taxes); § 144.665.6 (requiring vendors to remit use taxes to director of

revenue).  Defendant contends that the language of these statutes is insufficiently clear to impose a public duty upon vendors, but cites no case law to aid the Court in assessing this argument.

Defendant further argues that, even if the statutes do create a "public duty," plaintiff's negligence claim is barred by the economic loss doctrine.  In Missouri, the economic loss doctrine bars a plaintiff from seeking to recover in tort for economic losses that are contractual in nature.  Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 192 (Mo. Ct. App. 2010).  Some Missouri courts have recognized specific exceptions to the economic loss doctrine, including where a defendant breaches a public duty.  See Trademark Med., LLC v. Birchwood Labs., Inc., 22 F. Supp. 3d 998, 1002–03 (E.D. Mo. 2014) (listing cases).  Defendant argues that the public duty exception concerns only information disclosure.  Def. Reply at 21–22 (citing B.L. Jet Sales, Inc. v. Alton Packaging Corp., 724 S.W.2d 669, 672 (Mo. Ct. App. 1987) (finding purchaser of aircraft stated claim for negligent misrepresentation where regulations created public duty such that economic loss doctrine did not apply).  The Court has not identified any cases stating that the public duty exception is so limited.

Defendant may indeed be correct that it owes no duty to plaintiff and that the economic loss doctrine bars her claims, but its arguments on these points are not sufficiently developed.  Accordingly, defendant's motion to dismiss the negligence claim will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to stay and to dismiss [Doc. # 25] is **granted in part and denied in part**.

**IT IS FURTHER ORDERED**  that defendant's motion to stay with respect to plaintiff Schott pursuant to the parties' agreement to arbitrate is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion to dismiss plaintiff Femmer's claims pursuant to Rule 12(b)(6) is **granted in part and denied in part**.

**IT IS FURTHER ORDERED** that plaintiff Femmer's claim under the MMPA is dismissed without prejudice to amendment as discussed above.

**IT IS FURTHER ORDERED** that plaintiff Femmer shall have until **March 5, 2021**, to file an amended complaint.

*/s/ john m. bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 25th day of February, 2021.