**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY FEMMER on behalf of herself and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:20-cv-00676-JMB |
| v. | ) | |
| | ) | |
| SEPHORA USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT OF PRELIMINARY
<u>APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.   BACKGROUND ............................................................................................................. 2

   A.   FACTUAL BACKGROUND............................................................................................ 2

   B.   PROCEDURAL HISTORY AND THE PARTIES' SETTLEMENT NEGOTIATIONS.......................... 4

   C.   THE REFUND CLAIM ................................................................................................. 6

II.   THE PROPOSED SETTLEMENT.............................................................................. 7

   A.   THE PROPOSED SETTLEMENT CLASS DEFINITION ....................................................... 7

   B.   MONETARY RELIEF AND THE SETTLEMENT FUND....................................................... 8

   C.   NON-MONETARY RELIEF .......................................................................................... 9

   D.   NOTICE AND SETTLEMENT ADMINISTRATION .............................................................. 9

   E.   EXCLUSION AND OBJECTION PROCEDURE.................................................................. 11

   F.   RELEASE OF LIABILITY ........................................................................................... 11

III.   DISCUSSION .............................................................................................................. 12

   A.   LEGAL STANDARD AT THE PRELIMINARY APPROVAL STAGE....................................... 12

   B.   THE SETTLEMENT'S TERMS ARE FAIR, REASONABLE, AND ADEQUATE, TAKING INTO
      ACCOUNT THE FACTORS LISTED IN FEDERAL RULE 23(E)(2). ...................................... 14

      1.   *Plaintiff and Class Counsel have capably represented the Settlement Class Members
         and will continue to do so.*............................................................................ 14

      2.   *The Settlement was negotiated at arm's-length.* .......................................... 16

      3.   *The Settlement provides meaningful monetary compensation and adequate relief to the
         Settlement Class Members.*............................................................................ 17

      4.   *The Settlement treats the Settlement Class Members equitably relative to each other.* 23

   C.   THE COURT SHOULD GRANT CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT. .... 23

      1.   *The Settlement Class satisfies the prerequisites to certification under Rule 23(a).* ..... 24

      2.   *The Settlement Class Is Certifiable Under Rule 23(b)(3).* ............................. 28

3.    *The proposed Notice Plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies Due Process.* .................................................. *31*

IV.   CONCLUSION ............................................................................................................. 32

# **TABLE OF AUTHORITIES**

## **Cases**

*Ahmad v. City of St. Louis, Missouri,* No. 4:17-CV-2455, 2019 WL 2009589 ............................ 26

*Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540 (8th Cir. 1996) ......................................... 26

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997)............................................. passim

*Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763, 765–66 (8th Cir. 1971) ................................................................................................................................................... 24

*Basham v. Am. Nat'l Cnty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 890 (W.D. Ark. 2013).............. 21

*Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005)............................................. 28, 29

*Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ....................................................................... 23

*Cope v. Let's Eat Out, Inc.,* 319 F.R.D. 544, 555 (W.D. Mo. 2017) ...................................... 26, 29

*Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014)...................... 24, 26

*DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995) .............................................. 26

*Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010) ................................................. 11

*Faltermeier*, 899 F.3d at 622 (8th Cir. 2018) ............................................................................... 21

*Famuliner v. Walmart Inc.,* No. 19-CV-00060, 2019 WL 2566443 ............................................. 13

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982) ........................................................... 30

*George v. Uponor Corp.*, Civ. No. 12–249 (ADM/JJK), 2015 WL 5255280 ............................. 27

*Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ................................................................... 20

*Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017) ..................................................................... 13

*In re BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694, 705 (E.D. Mo. 2002) . 17, 18, 19, 20

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741 ................... 16

*In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018) ... 13

*In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002).................................................. 20

*In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) ............................................................................................................ 20

*Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017) ................................................... 13, 17

*Knowles v. Standard Fire Ins. Co.*, No. 4:11-cv04044, 2013 WL 3968490 .......................... 21, 22

*Morgan v. United Parcel Serv. of N. Am, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996) ............... 14

*Newberg* § 11.25 ................................................................................................ 12

*Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) ........................................... 24, 27

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999) ................................................ 31

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) .................................................. 30, 31

*Rawa v. Monsanto Company,* 934 F.3d 862, 869 (8th Cir. 2019) ................................................ 17

Rule 23(a) ......................................................................................................... 24

*Schoenbaum v. E.I. Dupont De Nemours & Co.,* No. 4:05-CV-01108, 2009 WL 4782082 . 12, 14, 29

*Schumacher v. SC Data Center, Inc.*, No. 2:16-cv-04078, 2016 WL 7007539 .......................... 11

*Swinton v. SquareTrade, Inc.*, No. 18-CV-144, 2019 WL 617791 ............................................. 13

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ............................................................. 13

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) ..................................................... 24

*Waters v. Ferrara Candy Co.*, 2017 WL 2618271 ................................................................ 21

## **Other Authorities**

Conte & Newberg, 4 *Newberg on Class Actions* (4th ed. 2002) ............................... 12, 13, 16, 25

The *Manual for Complex Litigation* ...................................................................... 11, 12

## **Rules**

Fed. R. Civ. P. 23 ......................................................................................... passim

## INTRODUCTION

After years of contentious litigation, followed by almost nine (9) months of negotiations and another ten (10) months spent working together to secure a tax refund from the Missouri Department of Revenue ("MDOR") based on a refund of taxes Sephora USA, Inc. ("Defendant" or "Sephora") collected on certain sales made via its website for shipment to Missouri delivery addresses, the Parties are pleased to report that they have reached a classwide settlement that favorably resolves this case.  The Parties have entered into a Settlement Agreement,[1] under which Defendant has agreed to pay $2,082,646.03 into a Settlement Fund to be distributed to Settlement Class Members who elect to participate in the Settlement.  There is no claims process. Each Settlement Class Member will be entitled to receive a *pro rata* share of the Settlement Fund after deductions for Court-awarded Attorneys' Fees and Litigation Expenses, an Incentive Award to the Settlement Class Representative and the expenses associated with administering the Settlement.

By any measure, the Settlement and the relief it provides are a terrific outcome for the Settlement Class Members given the significant risks involved in continued litigation.  Plaintiff brought this case against a Defendant with substantial resources, strong legal defenses, and a willingness to litigate through trial and appeals.  While Plaintiff maintains that even absent a settlement, she would be able to secure class certification and prevail on the merits at trial, success is not assured, and Sephora has vigorously defended this case at every stage. Notwithstanding many challenges, Plaintiff and Class Counsel have secured a $2,082,646.03 Settlement Fund and obtained a commitment from Sephora to amend its tax compliance

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to have the meanings given to them in the Parties' Settlement Agreement, a copy of which is attached hereto as Exhibit 1.

methodology to conform to Plaintiff's theory that Missouri use tax applies to the types of transactions at issue in this litigation.  If approved, the Settlement will bring meaningful relief to Missouri consumers as well as certainty and closure to what has been—and likely would continue to be—highly contentious, costly, and lengthy litigation.

With this Motion, Plaintiff seeks certification of the proposed Settlement Class for purposes of settlement under Federal Rules 23(e) and (b)(3), and preliminary approval of the Settlement Agreement, the proposed form and method of class notice, and the method of settlement administration.  As explained in detail below, the terms of the Parties' Settlement are fair, reasonable, and adequate, and consistent with other consumer class settlements that have been approved in this District and other courts throughout the country.  Certification of the Settlement Class is in the best interests of the putative class members and proper under Federal Rule 23.

Accordingly, Plaintiff respectfully requests that the Court enter an order (1) granting preliminary approval of the Settlement; (2) conditionally certifying the Settlement Class for settlement purposes only; (3) appointing Plaintiff as Settlement Class Representative; (4) approving the proposed Notice Plan; (5) appointing Daniel J. Orlowsky of Orlowsky Law LLC and Adam M. Goffstein of Goffstein Law, LLC as Class Counsel; and (6) setting a date for the Final Approval Hearing.

## I.     BACKGROUND

### A.     Factual Background

Defendant Sephora operates personal care and beauty stores and maintains an e-commerce website, www.sephora.com.  Dkt. 37 at ¶¶ 6, 27.  Sephora offers beauty products including cosmetics, skincare, body, fragrance, nail color, beauty tools, and haircare.  *Id.*

Missouri law requires retailers and sellers of consumer goods to charge sales or use tax on the sales of their products to Missouri purchasers.  Dkt. 35 at ¶¶ 1, 23.  Missouri state law mandates that retailers and sellers of consumer goods with tax nexus charge a use tax on sales of their products through remote means, including an internet website, telephone, catalog or other remote communications systems (collectively, "remote sales channel(s)") to Missouri purchasers that are shipped from an out-of-state facility.  *Id.* at ¶¶ 2, 12, 20-24.  The state use tax rate for these sales is 4.225%.  *Id.* at ¶¶ 3, 24, 28.  There may also be additional local use taxes that are imposed on sales made through remote sales channels based on the delivery address of the Missouri purchasers.  *Id* at ¶ 2.  The state use tax rate of 4.225% plus any applicable local use tax impositions is the cumulative use tax rate for any given location.  *Id.* at ¶¶ 2, 12, 24.

In this suit, Plaintiff claims that, despite clear Missouri law to the contrary, Sephora charged excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address.  *Id.* at ¶ 25.  Plaintiff brought this class action on behalf of herself and all persons and entities who, during the five-year period before the filing of the *Complaint*, purchased a product from Sephora for personal, family or household use through remote sales channels, including its internet website, that was delivered from an out-of-state facility to a Missouri delivery address and who were charged tax monies at a higher tax rate than the correct applicable use tax rate.  *Id.* at ¶ 26.

On January 30, 2020, Plaintiff purchased Sephora Collection Retractable Waterproof Eyeliner from Sephora's website, www.sephora.com, for personal, family or household use for delivery to 102 Trail Drive, Berger, Missouri 63014.  *Id.* at ¶ 27.  Plaintiff's purchase was shipped from 8500 Nail Road, Olive Branch, Mississippi 38654.  *Id.*  According to the Missouri

Department of Revenue, the applicable use tax rate for sales of products through remote sales channels that are shipped by Defendant from an out-of-state facility for delivery to 102 Trail Drive, Berger, Missouri 63014 on January 30, 2020 is 4.225%.  *Id.* ¶ 28.  When Plaintiff purchased the Sephora Collection Retractable Waterproof Eyeliner on January 30, 2020, Sephora required Plaintiff Femmer to pay an 11.692% tax rate, resulting in the overcollection of monies. *Id.* at ¶ 29.

Plaintiff subsequently brought this suit on her own behalf and on behalf of a putative statewide class, asserting claims under four counts for: (1) violations of the Missouri Merchandising Practices Act ("MMPA") Mo. Ann. Stat. 407.010 *et seq*., (2) unjust enrichment, (3) negligence, and (4) money had and received.  *Id* at ¶¶ 46-73.

### B.    Procedural History and The Parties' Settlement Negotiations

Plaintiff Femmer and Kathryn Schott initiated this lawsuit on March 19, 2020.  Dk.t 1. On May 21, 2020, Defendant removed the case to this Court.  Dkt. 1.  Plaintiff and Kathryn Schott filed a motion to remand the case to state court on June 22, 2020.  Dkt. 14.  After extensive briefing over the course of the next few months, this Court denied Plaintiff and Kathryn Schott's motion to remand.  Dkt. 22.

The Parties subsequently engaged in lengthy motion practice related to the pleadings and Kathryn Schott's agreement to arbitrate her claims on an individual basis.  On October 19, 2020, Defendant filed a motion to: (a) stay the case pursuant to Kathryn Schott's agreement to arbitrate, or in the alternative to dismiss pursuant to Rule 12(b)(6); and (b) to dismiss the case with respect to Plaintiff Femmer pursuant to Rule 12(b)(6).  Dkt. 25.

Following briefing, the Court issued an order on February 25, 2021 granting Defendant's motion to stay with respect to Kathryn Schott pursuant to the parties' agreement to arbitrate. Dkt. 34.  The Court further ordered that Defendant's motion to dismiss Plaintiff Femmer's

claims pursuant to Rule 12(b)(6) was granted in part and denied in part.  *Id.*  In the Court's Memorandum, Opinion & Order, the Court held that Plaintiff had plausibly alleged claims for unjust enrichment, negligence, and money had and received.  The Court dismissed Plaintiff Femmer's claim under the MMPA without prejudice with leave to amend until March 5, 2021. *Id.*  On March 4, 2021, Plaintiff filed her First Amended Complaint.  Dkt. 35.  And on March 18, 2021, Sephora filed its Answer to Plaintiff's Complaint.  Dkt. 37.

During the month of April 2021, the Parties began to actively discuss settlement.  Ex. 1 at 2.  Over the course of the next six (6) weeks the Parties held numerous telephone conferences, and, in support of these settlement discussions, Sephora shared with Plaintiff's counsel—on a confidential basis and for settlement purposes only—certain data about potential class members and the transactions at issue.  *Id.*  In mid-May 2021, the Parties reached agreement on a general, non-binding framework for settling their disputes, and they agreed to negotiate and jointly draft the Settlement Agreement.  *Id.*  As part of that framework, Sephora agreed to file a Refund Claim with the MDOR, seeking the return of the amount of excess monies Plaintiff contends Sephora collected as tax on certain sales made via its website for shipment to Missouri delivery addresses, and use any refund received for the class, subject to the terms of the Settlement Agreement.  *Id.* at 2-3.

Following the agreement on a general, non-binding framework for settlement, on May 17, 2021, the Parties filed a joint motion requesting a stay from the Court suspending all deadlines in the action relating to adversarial litigation until further order of the Court.  *Id.* at ¶ 2.1.  The purpose of the stay was to permit the Parties to attempt to consummate the settlement set forth in the Settlement Agreement.  *Id.*  The Parties further requested that the Court order them to file a joint report every ninety-one (91) days during the stay, to keep the Court informed

as to the status of the progress of the settlement.  *Id.* at ¶ 2.3.  On June 28, 2021, the Court granted the Parties motion to stay.

Over the seven (7) months that followed, the Parties negotiated the contours of the Settlement Agreement, including how they would work together during the Refund Claim process, the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement.  Once the negotiations concluded, Plaintiff and the Parties' counsel executed the final Settlement Agreement in early December 2021 which is now being submitted to the Court for approval.

**C.**    **The Refund Claim**

Following the entry of the stay, the Parties worked together over the last sixteen (16) months on a Refund Claim that Sephora, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Sephora charged on certain sales made via its website for shipment to Missouri delivery addresses, subject to the terms of the Settlement Agreement.  Ex. 1 at ¶ 3.1.  As part of the Settlement Agreement, Sephora agreed to contribute any refunded monies to the Settlement Class and executed a non-exclusive power of attorney limited to sales/use taxes for the Refund Claim that allowed the MDOR to discuss the refund claim with Plaintiff's counsel.  *Id.* at ¶ 3.1.1.

Sephora gathered, researched and reviewed all transactional data made during the Class Period with input from Plaintiff's counsel in order to prepare the necessary amended Missouri use tax returns to reflect the proper state and local use tax that Plaintiff contends should have been collected on remote sales of tangible personal property shipped by, or on behalf of, Sephora from  a "ship-from" location outside the state of Missouri  to a purchaser's delivery address within the state of Missouri.  Sephora engaged the accounting firm of KPMG to assist with that process.   A Missouri Form 472S, Refund Claim Form, the amended returns and other

documentation required to support the refund claims were prepared and filed with the MDOR pursuant to §§ 144.190.1, 144.190.2 and 144.190.3.   In lieu of Defendants completing the "Reason for Overpayment" section of the Form 472S, Refund Claim Form, Plaintiffs' counsel drafted and submitted a separate cover letter articulating Plaintiff's argument for why the transactions are subject to use tax rather than sales tax.  *Id.* at ¶ 3.1.2.  The Refund Claim and all supporting documentation was filed with the MDOR on March 3, 2022.

After the Refund Claim was filed with the MDOR, counsel for the Parties traveled to Jefferson City, MO and held a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class.  *Id.* at ¶ 3.1.4.  Over the course of the last six (6) months, counsel for the Parties have been in constant communication with each other and the MDOR via email and held numerous meetings via telephone conferences and video in order to perfect the Refund Claim.  *Id.* at ¶ 3.1.4.

On July 12, 2022, the MDOR informed Sephora that the Refund Claim was being processed.  On July 27, 2022, Sephora received an initial refund payment for $2,029,682.51.  And on August 25, 2022, Sephora received the remaining $52,963.52.  The total amount of the Refund Claim is $2,082,646.03, which Sephora put into an escrow account that created the proceeds for the Settlement Fund.  *Id.* at ¶¶ 3.2, 5.2.

## II.     THE PROPOSED SETTLEMENT

### A.     The Proposed Settlement Class Definition

The proposed Settlement would establish a Settlement Class defined as follows:

[A]l Persons who made at least one Qualifying Purchase, regardless of whether such person is or might be a party to an arbitration agreement or class action waiver with Sephora…

Ex. 1 at ¶¶ 1.40.  A Qualifying Purchase is defined as follows:

[A] retail transaction for the purchase of tangible personal property from Sephora for which all of the following are true: (a) the transaction was made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora was responsible for calculating tax due on the purchase; (b) the transaction was completed between March 01, 2015 through June 30, 2021; (c) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; (d) the purchaser's delivery address was within the state of Missouri; and (e) Sephora charged the purchaser an amount of tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction. Notwithstanding the foregoing sentence, any transaction on which the purchaser received a refund on the entire transaction will be excluded from "Qualifying Purchases," and where a consumer received a partial refund on a transaction, only the portions of the transaction on which the purchaser did not receive a refund may be a Qualifying Purchase, provided that those portions, standing alone, meet the definition of "Qualifying Purchase" set forth in this Paragraph.

*Id.* at ¶ 1.26.

## B.    Monetary Relief and the Settlement Fund

As part of the Settlement, Sephora has agreed to establish a Settlement Fund by depositing the Refund Amount of $2,082,646.03 into an escrow account.  *Id.* at ¶ 5.2   The entire amount of the Class Settlement Amount will be distributed pro rata to Settlement Class Members from the Settlement Fund after deductions for Notice and Administration Expenses and any Court-awarded Attorneys' Fees and Litigation Expenses and a Service Award payment to Plaintiff will also be distributed from the Settlement Fund.  *Id.* at ¶ 5.1.

Because the Settlement Fund is to be distributed to Settlement Class Members pro rata, the total payment to each Settlement Class Member will ultimately depend on the number of Qualifying Purchases that were made during the class period.  *Id.* at ¶ 1.26.  Based on the direct notice program developed with the assistance of the Settlement Administrator, Rust Consulting, Plaintiff anticipates a payment per Settlement Class Member for the amount of excess monies

collected on the Qualifying Purchases that is well within the range of class settlements approved in this District.

### C.     Non-Monetary Relief

In addition to the Settlement's monetary relief, the Settlement also provides meaningful prospective relief to every Settlement Class Member and Missouri consumers in general. Sephora represents that it has amended its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to retail transactions for the purchase of tangible personal property for which all of the following are true: (a) the transaction is made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora is responsible for calculating tax due on the purchase; (b) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; and (c) the purchaser's delivery address is within the state of Missouri. *Id.* at ¶ 12.27.

### D.     Notice and Settlement Administration

The Parties have engaged Rust Consulting, an industry-leading class action settlement administrator, to carry out the Notice Plan and Settlement Services subject to Class Counsel's supervision.  Decl. of Tiffaney Janowicz (hereinafter "Janowicz Decl.").  With assistance of Rust Consulting, the Parties have developed a robust Notice Plan that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase.  *Id.* at ¶¶ 6-7, Exs. C, D, E.  Sephora will prepare a Class List identifying Settlement Class Members and provide it to the administrator that will provide the basis for the Notice Plan.  Ex. 1 at ¶ 6.2.

The Notice Plan, outlined in Exhibit 1 and the Janowicz Decl. along with Exhibits C, D, and E attached thereto, consists of direct notice via email, with postcard notice being mailed to class members without email addresses.  *Id.* at ¶ 6.7; Janowicz Decl. at ¶¶ 6-17.  Sephora will provide Rust Consulting with a mail and email address for all class members.  *Id.* at ¶ 9.  Rust

Consulting will send a short form notice describing the Settlement via email ("Email Class Notice") to Settlement Class Members.  *Id.* at ¶ 10, Ex. D.  The Email Class Notice will include a link to the Settlement Website where Class Members will find the Settlement details, including the Settlement Agreement and Long Form Notice.  *Id*.

Email delivery attempts will be tracked, and Rust Consulting will mail the summary notice via First Class U.S. Mail in the form of a postcard ("Postcard Notice"), to any class members without email addresses or whose email notices bounce back.  *Id.* at ¶¶ 11-12, Ex. C. Rust Consulting will also mail class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requests it.  *Id.* at ¶ 14, Ex. E.  The Long Form Notice includes detailed information about the Settlement, including answers to frequently asked questions.  *Id.*  The Notice Program is expected to reach at least 70% of the class.  *Id.* at ¶ 21.

As discussed, the Settlement Agreement also provides for the establishment of a Settlement Website.  All Notices will direct the Settlement Class Members to visit the Settlement Website, which will host copies of all relevant documents, including the Settlement Agreement and its exhibits, the Long Form Notice explaining the terms of the Settlement Agreement in plain language, and other important court filings.  Ex. 1 at ¶ 6.1; Janowicz Decl., Ex. E.

There is no claims process.  Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  Janowicz Decl., Exs. C, D, E.  Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.*

The costs of providing notice, communicating with Settlement Class Members, establishing the Settlement Website, and disbursing individual payments will be paid out of the Settlement Fund.  Ex. 1 at ¶ 5.7.

### E.     Exclusion and Objection Procedure

In accordance with Federal Rule 23(c)(2) and Due Process, Settlement Class Members will have the opportunity to exclude themselves from the Settlement or object to its approval. *Id.* ¶¶ 7.1-7.9. The procedures and deadlines for filing opt-out requests and objections are explained on the Settlement Website and in the Detailed Notice which will advise Settlement Class Members of their rights: (a) to exclude themselves from this Settlement Agreement and forego its benefits but preserve any rights they may have to pursue claims against Sephora; and (b) to object to this Settlement Agreement personally or through counsel. *Id.* ¶¶ 6.1, 7.1; Janowicz Decl., Exs. C, D, E. The settlement website will include a fillable online "Opt-Out Form" that Settlement Class Members may use to exclude themselves from the Settlement Agreement. Ex. 1 at ¶ 7.1-7.2. Further, any Settlement Class Member other than Plaintiff may object to this Settlement Agreement by mailing a letter via first class mail to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline. *Id.* at ¶ 7.3.

The Settlement Website also informs Settlement Class Members that there will be a final approval hearing, which will be their opportunity to appear and have their objections heard. *Id.* at ¶ 6.1. Finally, the Settlement Website and Detailed Notice also explains that all Settlement Class Members will be bound by the release contained in the Settlement Agreement unless they properly exercise their right to exclude themselves. *Id.* at ¶ 7.1.

### F.     Release of Liability

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and its affiliated entities and other Releasees a full release of all claims arising out of, related to, or connected with the alleged facts, circumstances, and occurrences underlying the claims in this matter, as detailed in Section 10 of the Settlement Agreement. *Id.* at ¶¶ 10.1-10.3.

## III.    DISCUSSION

There is a strong judicial and public policy favoring the resolution of litigation through settlement, and this policy is "particularly muscular in class action suits."  *Schumacher v. SC Data Center, Inc.*, No. 2:16-cv-04078, 2016 WL 7007539, at *2 (W.D. Mo. Nov. 29, 2016) (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 593 (3d Cir. 2010)).  The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Parties quite frequently enter into settlement agreements before a decision has been reached whether to certify a class. . .. Settlement classes—cases certified as class actions solely for settlement—can provide significant benefits to class members and enable the defendants to achieve final resolution . . ..  An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation (Fourth)* § 21.612 (2004).

Class action settlements are subject to court approval.  Fed. R. Civ. P. 23(e).  Courts review proposed class action settlements using a well-established two-step process.  Conte & Newberg, 4 *Newberg on Class Actions* § 11.25, at 38–39 (4th ed. 2002); *Manual for Complex Litigation* § 21.632; *see, e.g.*, *Schoenbaum v. E.I. Dupont De Nemours & Co.,* No. 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval."  *Newberg* § 11.25, at 38-39; *Schoenbaum*, 2009 WL 4782082, at *3.  If the Court finds the settlement proposal "within the range of possible approval," the settlement will be preliminarily approved, notice will issue, and the case will ultimately proceed to the second step in the review process: the final approval hearing.  *Newberg* § 11.25, at 38-39.

### A.    Legal Standard at the Preliminary Approval Stage

Unlike the final approval hearing, the preliminary approval stage is only an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and

presentations from the settling parties. *Manual for Complex Litigation* § 21.632. At the preliminary approval stage, the "fair, reasonable, and adequate" standard is a lower bar, with emphasis only on whether the settlement is within the range of possible approval due to an absence of any glaring substantive or procedural deficiencies. *Schoenbaum*, 2009 WL 4782082, at *3. The goal of the preliminary approval hearing is to decide whether there is a sufficient reason to notify the class members of the proposed settlement in order to give them an opportunity to voice their support or opposition to the settlement. *Newberg* § 11.25, at 38-39.

To determine whether preliminary approval is appropriate, a district court considers whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B);[2] *see, e.g., Famuliner v. Walmart Inc.,* No. 19-CV-00060, 2019 WL 2566443, at *2 (W.D. Mo. June 21, 2019); *Swinton v. SquareTrade, Inc.*, No. 18-CV-144, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019) ("If these two elements are satisfied, the Court will consider whether the parties' proposed method of giving notice satisfies the requirements set out in Rule 23(c)(2)(B).").

The factors listed in Rule 23(e)(2) are:

(A) the class representatives and class counsel have adequately represented the class;

---

[2] This relatively new standard derives from the December 2018 amendments to Federal Rule 23(e). Prior to those amendments, courts in the Eighth Circuit evaluated preliminary approval motions using a multifactor test established under long-standing precedent such as *Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988). These factors were often referred to as the "*Van Horn* factors." *See, e.g., In re Target Corp. Customer Data Security Breach Litig.*, 892 F.3d 968, 978 (8th Cir. 2018); *Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017); *Keil v. Lopez*, 862 F.3d 685, 693 (8th Cir. 2017). While the amendments to Rule 23(e) control here, the factors listed in Rule 23(e)(2) mirror the cases upon which they were based. Indeed, the advisory committee notes to the 2018 amendments explicitly state that the recent amendments to Rule 23(e) are simply meant to codify the preliminary approval process that has been a matter of practice, if not rule. Fed. R. Civ. P. 23 advisory committee notes ("The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  As explained below, all of the Rule 23(e)(2) factors support a finding that the Parties' Settlement is "fair, reasonable, and adequate," and well within the range of possible approval.

    **B.**    **The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into Account The Factors Listed In Federal Rule 23(e)(2).**

        **1.**    **Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so.**

The first factor listed under Rule 23(e)(2) is satisfied here because Class Counsel is "qualified, experienced, and will competently and vigorously prosecute the suit." *See Schoenbaum*, 2009 WL 4782082, at *7 (citing *Morgan v. United Parcel Serv. of N. Am, Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996)).  As set forth in the declaration from Class Counsel, filed herewith, proposed Class Counsel have extensive experience handling class actions and complex litigation, and have represented consumers in state and federal courts throughout the country for many years.  Declaration of Daniel J. Orlowsky in Support of Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement at ¶¶ 3-9 (hereinafter "Orlowsky Decl.").

Further, Plaintiff's counsel have litigated numerous class actions similar in size and complexity to this case.  *Id.* at ¶¶ 3, 6.

The procedural history of this case also demonstrates the effectiveness of Class Counsel's representation.  Class Counsel overcame Sephora's efforts to have this case dismissed under Rule 12(b)(6) early on, resulting in an order denying Defendant's motion to dismiss, sustaining Plaintiff's claims as well as the allegations on behalf of the putative class members, and rejecting several of Sephora's primary defenses.  Dkt. 34.  Moreover, Class Counsel diligently pursued the Refund Claim over the last six (6) months, including numerous telephonic meet-and-confer conferences regarding production of Sephora's consumer transaction data for the Refund Claim, engaging a consultant to assist with the Refund Claim and consumer data challenges, numerous meetings with representatives of the MDOR, including an in-person meeting in Jefferson City, MO, and constant communication with Defense counsel, the Court, and the MDOR via telephone and video conferences and email in order to perfect the Refund Claim.

The lengthy duration of the litigation; the extensive and time-consuming Refund Claim process; the numerous adversarial negotiations; the multiple months of contested settlement negotiations; and the excellent result for the Settlement Class in spite of the significant procedural and merits-based hurdles faced by Plaintiff all demonstrate that Class Counsel have competently and vigorously prosecuted the Settlement Class Members' claims, and will continue to do so following preliminary approval.

Alongside Class Counsel, Plaintiff has and will continue to adequately represent the Settlement Class Members.  Plaintiff's interests are entirely representative of and aligned with the interests of the proposed Settlement Class—all have virtually identical claims arising out of Sephora's alleged collection of excess monies as "tax" on sales of its products through remote

15

sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address.  Further, Plaintiff's continual pursuit of this matter to-date demonstrates that she has been, and will remain, a zealous advocate for the Settlement Class Members.  Were it not for Plaintiff's willingness to pursue this action on a classwide basis, her assistance with Class Counsel's investigation of the underlying facts, and her continued participation in this case through settlement, the substantial benefits to the Settlement Class Members afforded under the Settlement Agreement would not exist.  As a result, this factor weighs in favor of granting preliminary approval of the Settlement.

### 2.  The Settlement was negotiated at arm's-length.

The Settlement in this matter is the product of arms-length negotiations.  There is an initial presumption that a proposed settlement is fair, reasonable, and adequate when it was the result of arms-length negotiations.  *Newberg* § 11.41-11.42 (observing that courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at **1, 5 (E.D. Mo. June 30, 2005) (finding that negotiations were at "arm's-length" where they were conducted between informed and experienced counsel and supervised by a retired federal judge acting as a mediator).

Here, the Parties only reached a settlement after protracted litigation and lengthy negotiations which took over eight (8) months in order to establish the contours of the Settlement Agreement, including how they would work together during the Refund Claim process, the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement.  Even after the Parties finalized the Settlement Agreement, the Parties worked together for another six (6) months in order to secure

the Refund Claim from the MDOR that established the Settlement Fund.  The contentiousness of these negotiations, as well as the Parties' efforts to keep this Court informed of every step of the Refund Claim process, including the negotiations themselves, demonstrate that the Settlement was negotiated at arm's-length, free of collusion.

Given the tenacity with which this case has been litigated, the efforts to secure the Refund Claim on behalf of the Settlement Class, coupled with the excellent result obtained on behalf of the Settlement Class Members in terms of both the monetary and nonmonetary relief being made available, it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

### 3. The Settlement provides meaningful monetary compensation and adequate relief to the Settlement Class Members.

#### i. The Settlement delivers immediate relief and avoids the considerable costs, risks, and delays of trial and appeal.

If approved, the Settlement will make monetary and non-monetary relief *immediately* available for the Settlement Class Members, as opposed to years in the future, if ever.  As stated above, every Settlement Class Member shall be entitled to receive a *pro rata* share of the Settlement's $2,082,646.03 Settlement Fund after deductions for Court-approved fees, costs, and expenses as set forth in the Settlement Agreement. This is an outstanding result.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory.  *Rawa v. Monsanto Company,* 934 F.3d 862, 869 (8th Cir. 2019) ("a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quoting *Keil*, 862 F.3d at 699); *see also In re BankAmerica Corp. Securities Litigation,* 210 F.R.D. 694, 705 (E.D. Mo. 2002) ("In the settlement of this case, as in

any case, the defendants agreed to pay more than they would have preferred and the plaintiffs agreed to receive less than they would have preferred.").

While Plaintiff believes that she would ultimately prevail on the merits in this litigation, she acknowledges that Sephora has expressly denied many of her material allegations and has put up a vigorous defense. In the absence of settlement, it is certain that the expense, duration, and complexity of continued litigation would be considerable. Not only would the Parties have to undergo additional motion practice before any trial on the merits, additional evidence and witnesses from across the country would have to be assembled for depositions and as witnesses during any trial. And although Plaintiff's claims have progressed beyond the pleadings stage, the Parties have not yet briefed class certification. Achieving certification in this case is extremely challenging due to the sheer volume of consumer transaction data, the potential number of state sales tax rates at issue, and the wide geographic distribution of the putative class. Moreover, given the complexity of the issues and the aggregate amount in controversy, the losing party would likely appeal any decision on the merits (at summary judgment or trial), as well as any decision on class certification. Against this backdrop, the Settlement stands as an extraordinary result.

Approval of the Settlement will allow Plaintiff and the Settlement Class Members to receive meaningful payments now, instead of years from now—or perhaps never. As such, the immediate and considerable relief provided to the Settlement Class Members under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn out litigation, trial, and appellate process.

ii. **The Settlement provides for an efficient and effective method of distributing relief to the Settlement Class Members.**

Under the Settlement Agreement, the notice and administration process is to be carried out by a capable third-party settlement administrator, Rust Consulting, subject to the Parties' supervision.  As described in detail in Section II.D. above, the Parties, with the assistance of Rust Consulting, have developed a robust Notice Plan that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase.  Janowicz Decl. at at ¶¶ 6-7; *Id.*, Exs. C, D, E.  This was carefully designed to be the best practicable way of informing the Settlement Class Members of the Settlement.

The Notice Plan, outlined in Exhibit 1 and the Janowicz Decl. along with Exhibits C, D, and E attached thereto, consists of direct notice via email, with postcard notice being mailed to class members without email addresses.  *Id.* at ¶ 6.7; Janowicz Decl. at ¶¶ 6-17.  Sephora will provide Rust Consulting with a mail and email address for all class members.  *Id.* at ¶ 9.  Rust Consulting will send a short form notice describing the Settlement via email ("Email Class Notice") to Settlement Class Members.  *Id.* at ¶ 10, Ex. D.  The Email Class Notice will include a link to the Settlement Website where Class Members will find the Settlement details, including the Settlement Agreement and Long Form Notice.  *Id*.

Email delivery attempts will be tracked, and Rust Consulting will mail the summary notice via First Class U.S. Mail in the form of a postcard ("Postcard Notice"), to any class members without email addresses or whose email notices bounce back.  *Id.* at ¶¶ 11-12, Ex. C.  Rust Consulting will also mail class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requests it.  *Id.* at ¶ 14, Ex. E.  The Long Form Notice includes detailed information about the Settlement, including answers to frequently asked questions.  *Id.*  The Notice Program is expected to reach at least 70% of the class.  *Id.* at ¶ 21.

As discussed above, the Settlement Agreement also provides for the establishment of a Settlement Website.  All Notices will direct the Settlement Class Members to visit the Settlement Website, which will host copies of all relevant documents, including the Settlement Agreement and its exhibits, the Long Form Notice explaining the terms of the Settlement Agreement in plain language, and other important court filings.  Ex. 1 at ¶ 6.1; Janowicz Decl., Ex. E.

There is no claims process.  Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  Janowicz Decl., Exs. C, D, E.  Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.*

This process is a fair, efficient, and effective method for distributing relief to the Settlement Class Members given the relatively small damages at issue on a per-person basis. While the amount of damages in the aggregate is substantial, the relatively small value of the Settlement Class Members' individual claims in this case—as in many consumer class cases— makes it unlikely that individuals would invest the time and expense necessary to seek relief on their own or through individual lawsuits.  This factor therefore supports granting preliminary approval.

### iii.  The anticipated award of attorneys' fees under the Settlement is fair and reasonable.

In the Parties' Settlement Agreement, there is no "clear sailing" clause by which the Parties have agreed to a certain fee award.  Instead, Plaintiff has agreed under the Settlement Agreement to limit any request for a Fee Award to no more than 40%[3] of the $2,082,646.03

---

[3] Although district courts have discretion to use either the percentage of the fund method or the lodestar method in determining the appropriate amount of attorneys' fees to award, *Keil*, 862 F.3d at 701, the percentage of the fund method is "well-established" and preferred in common fund cases like this one.  *In*

Class Settlement Amount. Ex. 1 at ¶ 5.4.1. The Settlement Agreement defines the "Fee Award" as the "amount of attorneys' fees, costs, and expenses awarded by the Court to Class Counsel." *Id.* at ¶ 1.11. Class Counsel intends to request an award of attorneys' fees of 36% of the $2,082,646.03 Class Settlement Amount. This percentage falls well within the range of attorneys' fees awarded in similar settlements. Courts in the Eighth Circuit and in Missouri "have frequently awarded attorneys' fees ranging up to 36% in class actions." *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *see also In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement as reasonable); *In re Xcel Energy, Inc. Sec. Derivative and ERISA Litig.*, 364 F. Supp. 2d 980, 998 (D. Minn. 2005) (collecting cases and observing that district courts routinely approve fee awards between 25% and 36%.). And courts in the Eighth Circuit and Missouri have held that attorneys' fees of up to 40% may be included in calculations of the amount in controversy in a putative class action. *Waters v. Ferrara Candy Co.*, 2017 WL 2618271, at *6 (E.D. Mo. Jun. 16, 017). *See Faltermeier*, 899 F.3d at 622 (8th Cir. 2018) (approving use of fee estimate that was 38.8% of compensatory damages; MMPA case); *Basham v. Am. Nat'l Cnty. Mut. Ins. Co.*, 979 F. Supp. 2d 883, 890 (W.D. Ark. 2013), *appeal denied*, No. 13-8038 (8th Cir. Dec. 2, 2013) (approving 40% fee estimate); *Knowles v. Standard Fire Ins. Co.*, No. 4:11-cv04044, 2013 WL 3968490, at *6 (W.D. Ark. Aug. 2, 2013), *appeal denied*, No. 13-8027 (8th Cir. Sept. 11, 2013). Further, any requested award may be contested by Defendant. *See* Ex. 1 at ¶ 5.4.1.

Under Section 8 of the Settlement Agreement, Class Counsel may file a motion no later than twenty-one (21) days after the Notice Date that the Court and, if it grants final approval of

*re Xcel Energy*, 364 F. Supp. 2d at 991. As courts including the Eighth Circuit have routinely recognized, using a percentage of the fund approach most closely aligns the interests of the lawyers with the class, since it promotes efficiency and avoids any incentive to needlessly increase counsel's lodestar. *See Johnston v. Comerica Mortgage Co.,* 83 F. 3d 241, 244 (8th Cir. 1996) (noting that the percent of benefit approach has been recommended in common fund situations).

the Settlement Agreement, include in the Final Approval Order an order for a Fee Award to Class Counsel, to be paid out of the Settlement Fund.  *Id.* at ¶ 8.1.  Plaintiff will explain in greater detail at the time of final approval why a requested fee award is reasonable given the work Class Counsel has performed and the risk they took on in bringing this case.  *See also* Orlowsky Decl. at ¶¶ ___.  Class Counsel agreed to bring this case on a contingent basis against a multinational retailer with substantial resources, with the real possibility of an unsuccessful outcome and no fee of any kind.  *See id*.  When Plaintiff filed her Complaint more than two and a half years ago, there was no guarantee that a settlement would be reached or that litigation would be successful.  *Id.*

While Class Counsel plans to request a fee award based on a percentage of the Class Settlement Amount being made available to the Settlement Class, it is important to note that any percentage should also reflect the additional value of the prospective relief that Sephora will be implementing pursuant to the Settlement.  Ex. 1 at ¶ 12.27.  Indeed, Sephora amended its tax compliance methodology so that it applies Missouri use tax to retail transactions made by Missouri consumers via remote sales channels that are shipped from outside the state to a Missouri delivery address.  *Id.*  As a result, Sephora is no longer charging excess "tax" on these types of transactions which provides a significant benefit to all Missouri consumers going forward.  And, because the majority of Sephora shoppers are repeat customers, the prospective relief will continue to benefit Class Members in the future, increasing the value of the Settlement to the Settlement Class.

In sum, both Class Counsel and the Class Representative devoted substantial time and effort to prosecuting the Settlement Class Members' claims in the face of staunch defenses and the risk of failing to obtain any compensation at all.  Class Counsel's efforts have yielded an extraordinary benefit for consumers statewide.  Therefore, the agreed-upon cap on Class

Counsel's Fee Award is fair and more than reasonable in light of the value of the relief being made available to Settlement Class Members and going forward relief to Missouri consumers in general.  Accordingly, this factor also supports granting preliminary approval.

### iv.  iv Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement.

With respect to the final subfactor of Rule 23(e)(2)(C), there are no other agreements to be identified under Rule 23(e)(3).

### 4.  The Settlement treats the Settlement Class Members equitably relative to each other.

This case only involves one Settlement Class, and the Settlement treats each Settlement Class Member identically.  The terms of the Settlement apply uniformly across the Settlement Class.  Each Settlement Class Member has the opportunity to receive an equal *pro rata* payment from the Class Settlement Amount.  Each Settlement Class Member will also be subject to the same deadlines for cashing their settlement checks, objections, and exclusion requests.  A neutral third-party, the Settlement Administrator, will be processing all claims. No group or individual is unfairly advantaged or disadvantaged.  Accordingly, this factor also weighs in favor of granting preliminary approval.

### C.    The Court Should Grant Class Certification For Purposes Of Settlement.[4]

The second step of the preliminary approval process under Rule 23(e)(1) directs courts to assess whether to "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(ii).  This requires that the proposed settlement class satisfy the four prerequisites of Fed. R. Civ. P. 23(a) and at least one of the provisions of Fed. R. Civ. P. 23(b).  *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013).

---

[4] Sephora does not concede that it would be appropriate to grant class certification over its objection in this matter, but Sephora does not oppose certification of the proposed Settlement Class for settlement purposes consistent with the Parties' Settlement Agreement.

Under Rule 23(a), the proposed class must satisfy the requirements of numerosity, commonality, typicality, and fair and adequate representation.  Fed. R. Civ. P. 23(a); s*ee Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997).  And where, as here, a plaintiff seeks certification under Rule 23(b)(3), they must demonstrate that common questions of law or fact predominate over individual issues and that maintaining the suit as a class action is superior to other methods of adjudication.  Fed. R. Civ. P. 23(b)(3); *Amchem*, 521 U.S. at 615-16.  Further, Rule 23(b) requires that a settlement's notice be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

As explained below, the Parties' Settlement readily meets each of these requirements, and the Settlement Class should be certified for the purpose of settlement.

**1.   The Settlement Class satisfies the prerequisites to certification under Rule 23(a).**

**i.   The Settlement Class is sufficiently numerous, and joinder is impracticable.**

The numerosity requirement is met where "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). Although there is no bright-line test for numerosity, the Eighth Circuit has approved classes far smaller than the Settlement Class here. *See, e.g., Ark. Educ. Ass'n v. Bd. of Educ. of Portland, Ark. Sch. Dist.,* 446 F.2d 763, 765–66 (8th Cir. 1971) (approving a class of twenty members); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 561 (8th Cir. 1982) (finding it impracticable to join 74 class members).

Here, the Settlement Class readily satisfies numerosity.  Given that the Settlement Class Members potentially number an estimated 345,000 members, and are scattered throughout the state, joinder would be impracticable and the numerosity requirement is readily met.  Ex. B. at 1.

### ii. The Settlement Class Members' claims share common questions of law and fact.

Commonality, the second requirement under Rule 23(a), is met where there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A plaintiff must show that the claims "'depend upon a common contention' that 'is capable of class wide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Cromeans v. Morgan Keegan & Co.*, 303 F.R.D. 543, 552 (W.D. Mo. 2014) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Although there are many common questions of law and fact here, only one such common question is required to satisfy commonality. *Newberg* § 3:20 (5th ed.); *see also Dukes*, 564 U.S. at 359 ("even a single common question will do") (internal citations omitted).

Here, multiple common questions of law and fact exist to satisfy this requirement. All members of the proposed Settlement Class share claims arising out of a single course of conduct: Sephora's alleged practice of charging excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address. Dkt. 35 at ¶ 25. Plaintiff's and the Settlement Class Members' claims revolve around the same central factual and legal issues, including: (1) whether Defendant charged excess monies at a higher tax rate than the correct applicable use tax rate on purchases of its products through remote sales channels, including its internet website, on that were delivered from an out-of-state facility to a Missouri delivery address; (2) whether Defendant violated the MMPA by charging a higher tax rate than the correct applicable use tax rate in connection with the types of transactions as described in the Complaint; (3) whether Defendant has been unjustly enriched by charging a higher tax rate than the correct applicable use tax rate in connection with the types of transactions; (4) whether Defendant was

negligent by charging a higher tax rate than the correct applicable use tax rate on purchases of its products through remote sales channels, including its internet website, on that were delivered from an out-of-state facility to a Missouri delivery address in connection with the types of transactions; (5) whether Defendant received money from the Plaintiff and the Class by charging a higher tax rate than the correct applicable use tax rate on purchases of its products through remote sales channels, including its internet website, on that were delivered from an out-of-state facility to a Missouri delivery address; and (6) whether the Settlement Class Members have sustained damages as a result of being charged a higher tax rate than the correct applicable use tax rate on purchases of Sephora products through remote sales channels, including its internet website, on that were delivered from an out-of-state facility to a Missouri delivery address. These common questions satisfy the commonality requirement.

### iii. Plaintiff's claims are typical of those of the Settlement Class Members.

The typicality prong of Rule 23(a) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the class. "The burden of demonstrating typicality is fairly easily met, so long as other class members have claims similar to the named plaintiff." *Ahmad v. City of St. Louis, Missouri,* No. 4:17-CV-2455, 2019 WL 2009589, at *5 (E.D. Mo. May 7, 2019) (citing *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1174 (8th Cir. 1995). "The claims of the entire class need not be identical, but the class representatives must generally possess the same interest and suffer the same injury as the unnamed class members." *Cope v. Let's Eat Out, Inc.,* 319 F.R.D. 544, 555 (W.D. Mo. 2017) (citing *DeBoer,* 64 F.3d at 1174). In evaluating typicality, courts consider whether the named plaintiff's claim "arises from the same event or course of conduct as the class claims, and gives rise to the same legal or remedial theory." *Alpern v. UtiliCorp United, Inc.,* 84 F.3d 1525, 1540

26

(8th Cir. 1996). Finally, "[t]ypicality will not be destroyed unless a class representative is subject to a unique defense that threatens to play a major role in the litigation." *Cromeans*, 303 F.R.D. at 552.

Here, Plaintiff's claims are typical of those of the Settlement Class Members. Plaintiff and each of the Settlement Class Members were subject to the same uniform tax practice where Sephora charged excess "tax" on sales of its products through remote sales channels that were shipped from an out-of-state facility to a Missouri delivery address. Further, there are no defenses unique to Plaintiff that would destroy typicality here. While there may be some minor differences among local use tax rates that apply to the Settlement Class Members, none are significant enough to destroy typicality. Because the Settlement Class Members assert the same types of claims based on the same underlying facts, similar legal theories, the same allegedly unlawful conduct, and all have suffered the same type of economic harm, Plaintiff's claims are typical of those of the class he seeks to represent.

### iv. Plaintiff and Class Counsel will continue to adequately represent the Settlement Class Members and protect their interests.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." This requirement "serves to uncover conflicts of interest between unnamed parties and the class they seek to represent." *Amchem*, 521 U.S. at 625 (citation omitted). Adequacy of representation is satisfied where: "(1) the class representatives have common interests with the members of the class, and (2) . . . the class representatives will vigorously prosecute the interest of the class." *George v. Uponor Corp.*, Civ. No. 12–249 (ADM/JJK), 2015 WL 5255280, at *4 (D. Minn. Sept. 9, 2015) (quoting *Paxton*, 688 F.2d at 563).

Here, Plaintiff's interests are entirely representative of and consistent with the interests of the proposed Settlement Class; all have been subject to Sephora's allegedly unlawful practice of charging excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address.  Plaintiff has no interest that is antagonistic to, or in conflict with, the interests of the Settlement Class she seeks to represent.  To the contrary, Plaintiff's interests are coextensive with those of the Settlement Class in establishing liability and recovering damages in the amount of excess tax collected.  Further, as set forth in Section IV.B.1. above, Plaintiff has retained qualified attorneys who are experienced in consumer protection litigation.  Plaintiff's pursuit of this matter and Class Counsel's successful prosecution of this litigation demonstrates that they have been, and will remain, zealous advocates for the Settlement Class Members.  Thus, the adequacy requirement is also satisfied.

### 2.    The Settlement Class Is Certifiable Under Rule 23(b)(3).

#### i.   Common questions predominate over individual questions, and class adjudication is superior to other methods of resolution.

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and [that] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Here, the putative Rule 23 Class satisfies both the "predominance" and "superiority" requirements of Rule 23(b)(3).

First, as to predominance, "[t]he Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  When determining whether common questions predominate, the Eighth Circuit has directed district courts to consider whether, if the plaintiff's general allegations are true,

common evidence could suffice to make out a prima facie case for the class. *See Blades v. Monsanto Co.*, 400 F.3d 562, 566-67 (8th Cir. 2005).

In this case, common questions predominate as to the Settlement Class Members' claims because all of their claims arise out of Sephora's single, uniform practice of charging excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address.  For each individual Settlement Class Member, the answers to the following questions are the same: whether they purchased items from Sephora through remote sales channels that were shipped from an out-of-state facility to a Missouri delivery address; and whether Sephora charged a higher tax rate than the correct applicable use tax rate on their purchases.  These common questions are central to the Settlement Class Members' claims such that even if any individual questions were to remain, they would be outweighed in terms of significance.  As a result, the predominance element is met. *Id.*

Rule 23(b)(3) also requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The superiority analysis "requires the Court to determine whether the class action is manageable[.]"  *Cope*, 319 F.R.D. at 557.  "[T]he argument in favor of class action treatment is most compelling where individual suits would in effect have negative value because litigation costs would outweigh any potential recovery."  *Schoenbaum*, 2009 WL 4782082, at *8.  In other words, a class action is the superior method of resolving a large number of claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at 615.  Further, when "confronted with a request for settlement only class certification,

a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

A class action is especially likely to be the superior method of adjudication for consumer litigation like this case, where there are numerous putative class members, but the value of each individual's claim is relatively small. Here, as alleged in the Complaint, each Settlement Class Member was charged an amount tax in an amount in excess of the correct applicable use tax rate, but the difference is often only a few dollars at most such that costs of individual litigation would far outweigh any potential recovery. *Schoenbaum* 2009 WL 4782082, at *8.

Additionally, many putative Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to prosecute their claims. Because the class members have little incentive to bring individual actions to recover "the relatively minimal amount of damages" at issue, it is unlikely that, absent a class action, the Settlement Class Members would be able to obtain relief through individual lawsuits. As such, adjudicating the Settlement Class Members' claims in a single proceeding will "save[] the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 155 (1982). *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (holding that a class action is superior where it allows the plaintiffs to pool claims that would be uneconomical to litigate individually). Moreover, because certification is being sought for purposes of settlement, the Court need not be concerned with issues of manageability relating to trial. *Amchem*, 521 U.S. at 620.

Resolving all claims in a single case is in the best interest of the Settlement Class Members and the court system. Indeed, piecemeal litigation of the claims at issue here would be

30

an extraordinary waste of judicial time, effort, and expense given that the same legal theories and evidence will be used by all Settlement Class Members, and given the low value of each individual claim.   Accordingly, a class action is the superior method of adjudicating the Settlement Class Members' claims and the proposed Settlement Class should be certified.

### 3.   The proposed Notice Plan informs the Settlement Class Members about all material aspects of the Settlement and satisfies Due Process.

Where, as here, a class is to be certified pursuant to Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."   Fed. R. Civ. P. 23(c)(2)(B).   Due Process requires that notice contain specific information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members.   Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii); *see Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999).   As explained by the U.S. Supreme Court, Due Process does not require that the notice be perfect, but it must be the "best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections" as well as "describe the action and the plaintiffs' rights in it." *Shutts*, 472 U.S. at 812 (internal quotations omitted).

The proposed notice plan in this case satisfies Due Process.   As set forth in detail in section III(C) above, the Settlement Agreement provides for a far-reaching, multi-faceted Direct Notice plan designed to reach each and every of the 345,000 estimated Settlement Class Members via email or postcard.   Additionally, the Settlement Administrator will establish a Settlement Website containing the Settlement Agreement, relevant court documents, a Long Form Notice, and allow Settlement Class Members to select payment via check, in lieu of electronic payment.   The Long Form Notice available on the Settlement Website includes all

relevant information about the Settlement, including important deadlines and instructions as to how Settlement Class Members can receive payment, exclude themselves, or object to the Settlement.  The proposed Postcard Notice, Emailed Notice, and Long Form Notice are attached as Exhibits C, D, and E to the Janowicz Decl., respectively.  Together, the Class Notices in conjunction with the Settlement Website apprise the Settlement Class Members of their rights and options under the Settlement and afford them an opportunity to receive payment in the form most convenient to them, ask questions about the Settlement, or raise any objections to it.

Because the proposed Notice Plan is the best practicable plan under the circumstances present here, it comports with the requirements of Due Process and Rule 23 and warrants approval.[5]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Tiffany Femmer respectfully requests that the Court enter an order: (1) granting this Motion; (2) preliminarily approving the Parties' Settlement Agreement; (3) conditionally certifying the Settlement Class for settlement purposes only; (4) appointing Plaintiff as representative of the Settlement Class; (5) appointing Daniel J. Orlowsky of Orlowsky Law, LLC and Adam M. Goffstein of Goffstein Law, LLC as Class Counsel; (6) approving the form and methods of the proposed notice; (7) setting a date for the Final Approval Hearing; and (8) granting such further relief as the Court deems reasonable and just.

---

[5] Additionally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, and no later than ten days after filing the Agreement with the Court, Rust Consulting will send the required notice to the appropriate government entities. *Id*. § 1715(b).

Respectfully submitted,

Orlowsky Law, LLC


/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs


Goffstein Law, LLC


/s/ Adam M. Goffstein
Adam M. Goffstein, #45611MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs


## CERTIFICATE OF SERVICE


I hereby certify that on this  4th  day of November, 2022, the foregoing was filed electronically with the Clerk of Court and served via the Court's CM/ECF system to all attorneys of record.


/s/Daniel J. Orlowsky