**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

TIFFANY FEMMER on behalf of herself )
and all others similarly situated, )
                                  )
        Plaintiff, )
                                    )     Case No. 4:20-cv-00676-JMB
v. )
                                    )
SEPHORA USA, INC., )
                                    )
        Defendant. )

**PLAINTIFF'S MOTION AND INCORPORATED
MEMORANDUM OF LAW IN SUPPORT OF APPROVAL
<u>OF ATTORNEYS' FEES AND INCENTIVE AWARD</u>**

**TABLE OF CONTENTS**

I.    BACKGROUND ...................................................................................................... 3

   A.   Factual Background. ........................................................................................... 3

   B.   Procedural History Leading To Settlement.......................................................... 4

   C.   The Refund Claim. .............................................................................................. 6

   D.   Class Counsel's Continuing Efforts Since Preliminary Approval. ..................... 8

II.   THE SETTLEMENT APPROVED BY THE COURT ........................................ 8

   A.   The Proposed Settlement Class Definition ........................................................ 8

   B.   The Settlement Will Provide Settlement Class Members With Meaningful
        Monetary Relief .................................................................................................. 9

   C.   Non-Monetary Relief .......................................................................................... 10

   D.   The Settlement's Notice Plan Is Being Carried Out Successfully. ..................... 10

   E.   The Settlement Class Members' Response To The Settlement Has Been
        Overwhelmingly Positive to Date ...................................................................... 12

III.  DISCUSSION .......................................................................................................... 13

   A.   Legal Standard. ................................................................................................... 13

   B.   The Percentage-Of-The-Fund Method Is The Preferred Approach To Determining
        An Award of Attorneys' Fees In Common Fund Class Actions Like This Case. ............ 14

        1.   *Under the percentage-of-the-fund method, Class Counsel's requested fee award is
             reasonable and well-earned.* ...................................................................... 17

   C.   Other Relevant Factors Considered By Courts In This Circuit Support Class
        Counsel's Requested Fee Award. ....................................................................... 19

        1. *The difficulty and complexity of the legal issues here presented a significant risk of
           non-recovery.* ...................................................................................................... 20

i

*2. The nature of this case supports the requested fee award, as most Settlement Class Members would not have the means to pursue relief on their own absent a class action.* ............................................................................................................. *24*

*3. Both Parties were represented by experienced, capable counsel.* ................................ *25*

*4. The time and effort expended by Class Counsel support the requested Fee Award.* ..... *26*

D.   The Requested Incentive Award For Plaintiff's Service As Class Representative Is Also Reasonable And Should Be Approved. .......................................................................... 28

**IV.  CONCLUSION** ............................................................................................................. 29

# **TABLE OF AUTHORITIES**

**Cases**

*Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280, 286 (D. Minn. 1997) ............................................................... 18

*Bezdek v. Vibram USA, Inc.*,
    809 F.3d 78, 84 (1st Cir. 2015) .......................................................................... 19

*Blum v. Stenson*,
    465 U.S. 886, 900 n.16 (1984) ....................................................................... 14, 16

*Boeing Co. v. Van Gemert*,
    444 U.S. 472, 478 (1980) .............................................................................. 14, 15

*Caligiuri v. Symantec Corp.*,
    855 F.3d 860 at 866 (D. Minn. 1997) ............................................................. 18, 28

*Carlson v. C.H. Robinson Worldwide, Inc.*,
    2006 WL 2671105 (D. Minn. Sept. 18, 2006) .................................................... 18

*Cromeans v. Morgan Keegan & Co.*, Inc.,
    2015 WL 5785576 (W.D. Mo. Sept. 16, 2015) .................................................. 18

*Fellows v. Am. Campus Communities Servs., Inc.*,
    No. 4:16-cv-01611-JAR, 2018 WL 3056046 (E.D. Mo. June 10, 2018) ........................... 14

*Florin v. Nationsbank of Ga., N.A.*,
    34 F.3d 560, 566 (7th Cir. 1994) ...................................................................... 17

*Huyer v. Buckley*,
    849 F.3d 395, 399 (8th Cir. 2017) ................................................................. 18, 21

*Huyer v. Njema*,
    847 F.3d 934, 941 (8th Cir. 2017) ..................................................................... 28

*In re Adelphia Comm'ns Corp Sec. & Derivative Litig.*,
    2009 WL 3378705 (S.D.N.Y. Nov. 26, 2006) .................................................... 25

*In re Charter Comm'ns, Inc. Sec. Litig.*,
    2005 WL 4045741 (E.D. Mo. June 30, 2005) ......................................... 13, 15, 25

*In re Employee Ben. Plans Sec. Litig.*,
    No. 92-708, 1993 WL 330595 (D. Minn. June 2, 1993) ..................................... 15

*In re IBP, Inc. Sec. Litig.*,
    328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) ....................................................... 15

*In re U.S. Bancorp Litig.*,
    291 F.3d 1035, 1038 (8th Cir. 2002) ......................................................... 15, 17

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*,
    724 F. Supp. 160, 170 (S.D.N.Y. 1989) ....................................................... 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980, 991 (D. Minn. 2005)................................................... 15

*Johnson v. Georgia Highway Express*,
    488 F.2d 714, 719-20 (5th Cir. 1974) ................................................... 19, 20

*Johnston v. Comerica Mortg. Corp.*,
    83 F.3d 241, 244-45 (8th Cir. 1996) .................................................. 14, 15, 16

*Keil v. Lopez*,
    862 F.3d 685, 697 (8th Cir. 2017) ...................................................... 19, 20

*Martinez v. Medicredit, Inc.*,
    2018 WL 2223681 (E.D. Mo. May 15, 2018) ............................................... 18

*Mills v. Elec. AutoLite Co.*,
    396 U.S. 375, 392 (1970)................................................................... 15

*Petrovic v. Amoco Oil Co.*,
    200 F.3d 1140, 1157 (8th Cir. 1999) ...................................................... 15

*Prater v. Medicredit, Inc.*,
    2015 WL 8331602 (E.D. Mo. Dec. 7, 2015) ................................................ 18

*Schneider v. United States*,
    2020 WL 1557905 (D. Neb. April 1, 2020)................................................. 28

*Schoenbaum v. E.I. Dupont De Nemours and Co.*,
    2009 WL 4782082 (E.D. Mo. 2009)....................................................... 25

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005).............................................. 22

*Shackleford v. Cargill Meat Solutions, Inc.*,
    No. 12-cv-4065-FJG, 2013 WL 937550 (W.D. Mo. Mar. 8, 2013) ..................... 16

*Skelton v. Gen. Motors Corp.*,
    860 F.2d 250, 252 (7th Cir. 1988) ........................................................ 14

*Sutton v. Bernard*,
    504 F.3d 688, 691 (7th Cir. 2007) ........................................................ 14

*Teachers Ret. System of Louisiana v. A.C.L.N., Ltd.*,
    2004 WL 1087261 (S.D.N.Y. May 14, 2004) ...................................... 26

*Tussey v. ABB, Inc.*,
    2019 WL 3859763 (W.D. Mo. Aug. 16, 2019) ........................... 17, 18, 28

*Uselton v. Commercial Lovelace Motor Freight, Inc.*,
    9 F.3d 849, 854 (10th Cir. 1993) ........................................................ 20

*Yarrington v. Solvay Pharmaceuticals, Inc.*,
    697 F. Supp. 2d 1057, 1063 (D. Minn. 2010)................................. 25, 28

*Zilhaver v. UnitedHealth Group*, Inc.,
    646 F. Supp. 2d 1075, 1083 (D. Minn. 2009)................................. 21, 28

**Statutes**

Missouri Revised States §§ 144.190 ........................................... 7, 23, 24, 27


**Other Authorities**

Class Actions § 15:65 (5th ed.)................................................................. 15, 16

*Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237,
    255–56 (3d. Cir. 1985)................................................................................ 16

**Rules**

Fed. R. Civ. P. 12 ...................................................................................... 4, 5, 26

Fed. R. Civ. P. 23 ............................................................................................ 13

## **INTRODUCTION**

The Court preliminarily approved the Parties' class action Settlement[1] on November 29, 2022, bringing an end to nearly three years of litigation.  Dkt. 70.  In advance of the upcoming final approval hearing scheduled for April 27, 2023, Plaintiff submits this Motion in support of an award of reasonable attorneys' fees for Class Counsel, as well as an incentive award for Plaintiff in recognition of her service as Class Representative.

Plaintiff is pleased to report that the Settlement's Notice Plan was implemented successfully following preliminary approval, and the Settlement has been met with enthusiastic support from the Settlement Class Members.  As of the date of this filing, email notices have been sent to 286,186 Settlement Class Members, and an additional 13,538 Post Card Notices were mailed to class members without email addresses or whose email notices bounced back.  Because there is no claims process, Settlement Class Members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  While 1,986 Settlement Class Members opted to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  Most importantly, there have been no objections filed with the Court or submitted to the Settlement Administrator as of the date of this filing.  (Declaration of Daniel J. Orlowsky, hereinafter "Orlowsky Decl.," at ¶¶ 18-21, attached hereto as Exhibit 2.) This strongly supports the fairness of this Settlement and reflects the Settlement Class Members' overwhelming approval of the terms of the Settlement.

---

[1] Unless stated otherwise, capitalized terms that are not defined in this Motion are intended to have the meanings assigned to them in the Parties' Settlement Agreement, a true and accurate copy of which is attached as Exhibit 1.

The Settlement Class Members' positive response to the Settlement is not unexpected, because the Settlement that Class Counsel achieved in this case is an exceptional result.  Under the Settlement, Settlement Class Members can claim meaningful monetary relief that they otherwise would not be able to obtain on their own.  Defendant Sephora USA, Inc. ("Sephora" or "Defendant") has agreed to establish a fund of $2,082,646.03; Plaintiff and Class Counsel obtained a commitment from Sephora to amend its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to the types of transactions at issue in this litigation; and Settlement Class Members will receive a pro rata share of the Net Settlement Amount, after deductions for an Incentive Award to Plaintiff, an award of Attorneys' Fees to Class Counsel, and Notice and Administration Costs.  Exh. 1 at ¶¶  1.26, 5, 12.27.

With this Motion, Plaintiff requests a fee award of $749,752.57 for Class Counsel, along with a $5,000 incentive award for Plaintiff's service as Class Representative. As explained in detail below, the requested awards are justified in light of the Settlement's exceptional result, are consistent with fee awards granted in similar class action settlements within the Eighth Circuit, and are reasonable given the significant risk of pursuing a complex class action against a multinational retailer with significant resources. Further, the lack of any opposition to the Settlement—including to the proposed fee award and Incentive Award, which were both fully disclosed in the Settlement Agreement and Notice—strongly support the reasonableness and appropriateness of the requested awards in this case.  *Id.* at ¶¶ 5, 8.

Both Plaintiff and Class Counsel have devoted substantial time and effort to prosecuting the Settlement Class Members' claims in the face of staunch defenses and an uncertain outcome. Those efforts continued throughout the Refund Claim process outlined below, ultimately leading to the prompt and just resolution of this litigation for the well-deserved benefit of the Settlement

2

Class Members.  Class Counsel's extensive efforts and capable lawyering have thus yielded very meaningful benefits for Missouri consumers.

Accordingly, the requested fee award and incentive award are amply justified when taking into consideration Class Counsel's investment of time and effort, the risks of continued litigation, and the excellent result achieved for the Settlement Class Members.  Plaintiff and Class Counsel respectfully request that the Court approve a total award of Attorneys' Fees of $749,752.57, as well as an incentive award of $5,000 for Plaintiff as Class Representative.

## I.    BACKGROUND

### A.    Factual Background.

As explained in prior filings, Missouri law requires retailers and sellers of consumer goods to charge sales or use tax on the sales of their products to Missouri purchasers.  Dkt. 35 at ¶¶ 1, 23.  Missouri state law mandates that retailers and sellers of consumer goods with tax nexus charge a use tax on sales of their products through remote means, including an internet website, telephone, catalog or other remote communications systems (collectively, "remote sales channel(s)") to Missouri purchasers that are shipped from an out-of-state facility.  *Id.* at ¶¶ 2, 12, 20-24.  The state use tax rate for these sales is 4.225%.  *Id.* at ¶¶ 3, 24, 28.  There may also be additional local use taxes that are imposed on sales made through remote sales channels based on the delivery address of the Missouri purchasers.  *Id* at ¶ 2.  The state use tax rate of 4.225% plus any applicable local use tax impositions is the cumulative use tax rate for any given location.  *Id.* at ¶¶ 2, 12, 24.

As alleged in the Amended Complaint, despite clear Missouri law to the contrary, Sephora charged excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility

to a Missouri delivery address.  *Id.* at ¶ 25.  Plaintiff brought this class action on behalf of herself and all persons and entities who, during the five-year period before the filing of the Complaint, purchased a product from Sephora for personal, family or household use through remote sales channels, including its internet website, that was delivered from an out-of-state facility to a Missouri delivery address and who were charged tax monies at a higher tax rate than the correct applicable use tax rate.  *Id.* at ¶ 26.

Plaintiff filed this suit on her own behalf and on behalf of a putative statewide class, asserting claims under four counts for: (1) violations of the Missouri Merchandising Practices Act ("MMPA") Mo. Ann. Stat. 407.010 *et seq.*, (2) unjust enrichment, (3) negligence, and (4) money had and received.  *Id* at ¶¶ 46-73.

### B.    Procedural History Leading To Settlement.

As the Court is aware, this litigation has been lengthy and contentious.  Plaintiff Femmer and Kathryn Schott initiated this lawsuit on March 19, 2020.  Dk.t 1.  On May 21, 2020, Defendant removed the case to this Court.  Dkt. 1.  Plaintiff and Kathryn Schott filed a motion to remand the case to state court on June 22, 2020.  Dkt. 14.  After extensive briefing over the course of the next few months, this Court denied Plaintiff and Kathryn Schott's motion to remand.  Dkt. 22.

The Parties subsequently engaged in lengthy motion practice related to the pleadings and Kathryn Schott's agreement to arbitrate her claims on an individual basis.  On October 19, 2020, Defendant filed a motion to: (a) stay the case pursuant to Kathryn Schott's agreement to arbitrate, or in the alternative to dismiss pursuant to Rule 12(b)(6; and (b) to dismiss the case with respect to Plaintiff Femmer pursuant to Rule 12(b)(6).  Dkt. 25.

Following briefing, the Court issued an order on February 25, 2021 granting Defendant's motion to stay with respect to Kathryn Schott pursuant to the parties' agreement to arbitrate.

Dkt. 34.   The Court further ordered that Defendant's motion to dismiss Plaintiff Femmer's claims pursuant to Rule 12(b)(6) was granted in part and denied in part.   *Id.*   In the Court's Memorandum, Opinion & Order, the Court held that Plaintiff had plausibly alleged claims for unjust enrichment, negligence, and money had and received.   The Court dismissed Plaintiff Femmer's claim under the MMPA without prejudice with leave to amend until March 5, 2021. *Id.*   On March 4, 2021, Plaintiff filed her First Amended Complaint.   Dkt. 35.   And on March 18, 2021, Sephora filed its Answer to Plaintiff's Complaint.   Dkt. 37.

During the month of April 2021, the Parties began to actively discuss settlement.   Ex. 1 at 2.   Over the course of the next six (6) weeks the Parties held numerous telephone conferences, and, in support of these settlement discussions, Sephora shared with Plaintiff's counsel—on a confidential basis and for settlement purposes only—certain data about potential class members and the transactions at issue.   *Id.*   In mid-May 2021, the Parties reached agreement on a general, non-binding framework for settling their disputes, and they agreed to negotiate and jointly draft the Settlement Agreement.   *Id.*   As part of that framework, Sephora agreed to file a Refund Claim with the Missouri Department of Revenue ("MDOR"), seeking the return of the amount of excess monies Plaintiff contends Sephora collected as tax on certain sales made via its website for shipment to Missouri delivery addresses, and use any refund received for the class, subject to the terms of the Settlement Agreement.   *Id.* at 2-3.

Following the agreement on a general, non-binding framework for settlement, on May 17, 2021, the Parties filed a joint motion requesting a stay from the Court suspending all deadlines in the action relating to adversarial litigation until further order of the Court.   *Id.* at ¶ 2.1.   The purpose of the stay was to permit the Parties to attempt to consummate the settlement set forth in the Settlement Agreement.   *Id.*   The Parties further requested that the Court order them to file a joint report every ninety-one (91) days during the stay, to keep the Court informed

as to the status of the progress of the settlement.  *Id.* at ¶ 2.3.  On June 28, 2021, the Court granted the Parties motion to stay.

Over the seven (7) months that followed, the Parties negotiated the contours of the Settlement Agreement, including how they would work together during the Refund Claim process, the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement.  Once the negotiations concluded, Plaintiff and the Parties' counsel executed the final Settlement Agreement in early December 2021, which the Court approved on November 29, 2022.  Dkt. 70.

**C.     The Refund Claim.**

Following the entry of the stay, the Parties worked together over a period of sixteen (16) months on a Refund Claim that Sephora, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Sephora charged on certain sales made via its website for shipment to Missouri delivery addresses, subject to the terms of the Settlement Agreement.  Ex. 1 at ¶ 3.1.  As part of the Settlement Agreement, Sephora agreed to contribute any refunded monies to the Settlement Class and executed a non-exclusive power of attorney limited to sales/use taxes for the Refund Claim that allowed the MDOR to discuss the refund claim with Plaintiff's counsel.  *Id.* at ¶ 3.1.1.

Sephora gathered, researched and reviewed all transactional data made during the Class Period with input from Plaintiff's counsel in order to prepare the necessary amended Missouri use tax returns to reflect the proper state and local use tax that Plaintiff contends should have been collected on remote sales of tangible personal property shipped by, or on behalf of, Sephora from  a "ship-from" location outside the state of Missouri  to a purchaser's delivery address within the state of Missouri.  Sephora engaged the accounting firm of KPMG to assist with that process.   A Missouri Form 472S, Refund Claim Form, the amended returns and other

documentation required to support the refund claims were prepared and filed with the MDOR pursuant to §§ 144.190.1, 144.190.2 and 144.190.3.   In lieu of Defendants completing the "Reason for Overpayment" section of the Form 472S, Refund Claim Form, Plaintiffs' counsel drafted and submitted a separate cover letter articulating Plaintiff's argument for why the transactions are subject to use tax rather than sales tax.  *Id.* at ¶ 3.1.2.  The Refund Claim and all supporting documentation was filed with the MDOR on March 3, 2022.

After the Refund Claim was filed with the MDOR, counsel for the Parties traveled to Jefferson City, MO and held a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim, and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class.  *Id.* at ¶ 3.1.4.  Over the course of the next six (6) months, counsel for the Parties have been in constant communication with each other and the MDOR via email and held numerous meetings via telephone conferences and video in order to perfect the Refund Claim.  *Id.* at ¶ 3.1.4.

On July 12, 2022, the MDOR informed Sephora that the Refund Claim was being processed.  On July 27, 2022, Sephora received an initial refund payment for $2,029,682.51.  And on August 25, 2022, Sephora received the remaining $52,963.52.  The total amount of the Refund Claim is $2,082,646.03, which Sephora put into an escrow account that created the proceeds for the Settlement Fund.  *Id.* at ¶¶ 3.2, 5.2.

Once the Refund Claim was completed, Plaintiff filed her motion for preliminary approval and the Court subsequently granted preliminary approval on November 29, 2022.  Dkt. 70.

**D.      Class Counsel's Continuing Efforts Since Preliminary Approval.**

Class Counsel has continued to invest significant time and effort in this action following preliminary approval. Orlowsky Decl. at ¶¶ 12-22. The Parties selected Rust Consulting as settlement administrator, and Class Counsel have been actively involved in supervising and managing all aspects of Rust Consulting's administration of the Notice Plan and settlement payment. *Id.* at ¶ 14. Prior to the start of the Notice Period, Class Counsel reviewed the language and content of the Settlement Website, reviewed and edited the Direct Notice that was sent to each and every Settlement Class member that made a Qualifying Purchase. *Id.* Once the Notice Plan began, Class Counsel worked to ensure a smooth notice process by monitoring notice mailing activity, notice response activity, telephone activity, website activity, responding to inquiries and phone calls from Settlement Class Members, and regularly communicating with the Settlement Administrator. *Id.* at ¶¶ 11-12. Class Counsel will continue to devote their time and effort as the Notice Plan and settlement payments process continues, as well as monitor the distribution of any settlement payments by the Settlement Administrator following final approval. *Id.* at ¶ 22.

## II.      THE SETTLEMENT APPROVED BY THE COURT

**A.      The Proposed Settlement Class Definition**

In its Preliminary Approval Order, the Court certified the Settlement Class defined as follows:

> [A]l Persons who made at least one Qualifying Purchase, regardless of whether such person is or might be a party to an arbitration agreement or class action waiver with Sephora…

Dkt. 70 at ¶ 4; Ex. 1 at ¶¶ 1.40. A Qualifying Purchase is defined as follows:

> [A] retail transaction for the purchase of tangible personal property from Sephora for which all of the following are true: (a) the transaction was made either via Sephora's website, www.sephora.com, or via another remote sales channel for

which Sephora was responsible for calculating tax due on the purchase; (b) the transaction was completed between March 01, 2015 through June 30, 2021; (c) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; (d) the purchaser's delivery address was within the state of Missouri; and (e) Sephora charged the purchaser an amount of tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction. Notwithstanding the foregoing sentence, any transaction on which the purchaser received a refund on the entire transaction will be excluded from "Qualifying Purchases," and where a consumer received a partial refund on a transaction, only the portions of the transaction on which the purchaser did not receive a refund may be a Qualifying Purchase, provided that those portions, standing alone, meet the definition of "Qualifying Purchase" set forth in this Paragraph.

Dkt. 70 at ¶ 4; Ex. 1 at ¶ 1.26.

**B.    The Settlement Will Provide Settlement Class Members With Meaningful Monetary Relief**

Plaintiff and Class Counsel's efforts have yielded a Settlement that provides immediate monetary compensation to Missouri consumers.  The Settlement makes available a fund of $2,082,646.03, and each Settlement Class Member will receive a pro rata share of the Settlement Fund after deductions for an Incentive Award to Plaintiff, an award of Attorneys' Fees, and payment of Notice and Administration Costs.  *Id.* at ¶ 5.

Because the Settlement Fund is to be distributed to Settlement Class Members pro rata, the total payment to each Settlement Class Member will ultimately depend on the number of Qualifying Purchases that were made during the class period.  *Id.* at ¶ 1.26.  To date, email notices have been sent to 286,186 Settlement Class Members.  And an additional 13,538 Post Card Notices were mailed to class members without email addresses or whose email notices bounce back.  Because there is no claims process, Settlement Class Members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase. 1,986 Settlement Class Members opted to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.   Orlowsky Decl. ¶¶ 13, 18-20.   To date, each

Settlement Class Member has receive an individual payment of between $0.01 and $1,443.93. This range of payment is a strong result given the claims arise out of relatively small consumer transactions and the amount of damages per-person are likewise small.  Dkt. 35 at ¶¶ 27-29.

### C.       Non-Monetary Relief

In addition to the Settlement's monetary relief, the Settlement also provides meaningful prospective relief to every Settlement Class Member and Missouri consumers in general. Sephora represents that it has amended its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to retail transactions for the purchase of tangible personal property for which all of the following are true: (a) the transaction is made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora is responsible for calculating tax due on the purchase; (b) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; and (c) the purchaser's delivery address is within the state of Missouri.  Ex. 1 at ¶ 12.27.

### D.       The Settlement's Notice Plan Is Being Carried Out Successfully.

The Court approved the Parties' choice of Rust Consulting as Settlement Administrator. Following the entry of the Court's Preliminary Approval Order, Rust Consulting began effectuating notice and payment under Class Counsel's supervision.  Orlowsky Decl. ¶¶ 12-13. To that end, Rust Consulting has been responsible for effectuating the Notice Plan and payment to the Settlement Class Members, and launching the settlement website and call center.  *Id.*

As explained in Plaintiff's preliminary approval motion, and outlined in exhibits to the Settlement Agreement, the Parties developed a robust Notice Program that that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase.  Sephora prepared a Class List identifying Settlement Class Members and provided it to the administrator that provided the basis for the Notice Plan.  The Notice Program is projected

to reach at least 70% of the class.  The Court-approved Notice Plan consists of a short form notice describing the Settlement via email ("Email Class Notice") to Settlement Class Members. Dkt. 68, Decl. of Tiffaney Janowicz at ¶ 10, Ex. D.  The Email Class Notice includes a link to the Settlement Website where Class Members will find the Settlement details, including the Settlement Agreement and Long Form Notice.  *Id.*

Email delivery attempts are tracked, and Rust Consulting has mailed the summary notice via First Class U.S. Mail in the form of a postcard ("Postcard Notice"), to any class members without email addresses or whose email notices bounce back.  *Id.* at ¶¶ 11-12, Ex. C.  Rust Consulting also mails class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requests it.  *Id.* at ¶ 14, Ex. E.  The Long Form Notice includes detailed information about the Settlement, including answers to frequently asked questions.  *Id.*

The format and language of the notices were carefully drafted in straightforward, easy-to-read language in order to apprise Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to, their right to object to the Settlement or opt-out, and the amount of attorneys' fees that could be sought as an award to Class Counsel.  The notices also invite Settlement Class Members to visit the Settlement Website, where they can review more detailed information. Ex. 1 at ¶ 6.1; Dkt. 68, Janowicz Decl., Ex. E.

The Settlement Website, which is presently live, can be reached at the following URL: https://missouritaxsettlementsephora.com/Home/portalid/0.  The Settlement Website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., objection deadline, final approval hearing date and time, etc.), all relevant court documents (e.g., the Preliminary Approval Order, Settlement Agreement, and this Motion), contact information for Class Counsel, answers to frequently asked questions, and the ability to change payment

method. In addition, the Settlement Website gives detailed instructions for opting out or filing objections.  All Notices direct the Settlement Class Members to visit the Settlement Website.

Again, there is no claims process.  Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  Dkt. 68, Janowicz Decl., Exs. C, D, E.  Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.*

The Notice Plan commenced with email notices that that were sent beginning on December 29, 2022.  Orlowsky Decl. at ¶ 13.  The toll-free phone line and website both went live that same day.  To date, the Notice Plan has proved to be extremely successful at reaching potential Settlement Class Members and informing them of the Settlement. Again, email notices have been sent to 286,186 Settlement Class Members.  An additional 13,538 Post Card Notices were mailed to class members without email addresses or whose email notices bounce back.  Because there is no claims process, Settlement Class Members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  And 1,986 Settlement Class Members opted to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.* at ¶¶ 18-20.  The Settlement Website has received over 23,661 unique website visitors.  *Id.*

**E.    The Settlement Class Members' Response To The Settlement Has Been Overwhelmingly Positive to Date**

As stated above, email notices have been sent to 286,186 Settlement Class Members. These 286,186 Settlement Class Members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  And 1,986 Settlement Class

Members opted to receive a check in the form of a postcard.  This reflects a strong level of participation among Settlement Class Members who support and are participating in the Settlement.

In addition to informing Settlement Class Members about the Settlement and providing payment, the Notice also explained that Settlement Class Members could exclude themselves from the Settlement or object to the Settlement's terms. To date there has only been one (1) opt-out.  *Id.* at ¶ 16, 18-20.  More importantly, however, there have not been any objections to the Settlement filed with the Court or received by the Settlement Administrator.  *Id.* at ¶ 21.  The absence of any opposition to the Settlement demonstrates the Settlement Class Members' enthusiastic support for the Settlement.

## III.    DISCUSSION

Plaintiff seeks an award of attorneys' fees for Class Counsel in the amount of $749,752.57, or 36% of the Settlement's $2,082,646.03 fund. This request is within the range of fees approved in other consumer class actions and is fair and reasonable in light of the benefits secured on behalf of the Settlement Class Members and the work performed by Class Counsel.

### A.    Legal Standard.

In a certified class action, a district court "may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Public policy also strongly supports rewarding class counsel for bringing successful litigation in order to provide capable counsel with an incentive to bring actions and help deter future wrongdoing. *See In re Charter Comm'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *19 (E.D. Mo. June 30, 2005). ("[P]ublic policy favors the granting of [attorneys'] fees sufficient to reward counsel for bringing these actions and to encourage them to bring additional such actions[.]"). Courts utilize two main approaches for determining the reasonableness of a fee award: the

"percentage of the benefit" or percentage of the fund method, where the fee award is "equal to some fraction of the common fund that the attorneys were successful in gathering during the course of the litigation," or the "lodestar" method, under which "the hours expended by an attorney are multiplied by a reasonable hourly rate of compensation so as to produce a fee amount which can be adjusted, up or down, to reflect the individualized characteristics of a given action." *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 244-45 (8th Cir. 1996). As explained below, use of the percentage-of-the fund method is well-established and preferred in class action cases like this one, where the parties' settlement results in creation of a common fund paid out to the class.

> **B.     The Percentage-Of-The-Fund Method Is The Preferred Approach To Determining An Award of Attorneys' Fees In Common Fund Class Actions Like This Case.**

In the Eighth Circuit, the percentage-of-the fund method is the preferred approach to calculating fee awards in common fund class actions. It is well-established that attorneys who, by their efforts, create a common fund for the benefit of a class are entitled to reasonable compensation from the fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Fellows v. Am. Campus Communities Servs., Inc.*, No. 4:16-cv-01611-JAR, 2018 WL 3056046, at *6 (E.D. Mo. June 10, 2018) (finding "the 'percentage of benefit' approach to be the most appropriate methodology for determining fees" where "all amounts paid in connection with the settlement are coming from a common source") (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984)).

This rule "is based on the equitable notion that those who have benefited from litigation should share in its costs." *Sutton v. Bernard*, 504 F.3d 688, 691 (7th Cir. 2007) (citing *Skelton v. Gen. Motors Corp.*, 860 F.2d 250, 252 (7th Cir. 1988)). By awarding fees in this way, courts can

14

fairly and adequately compensate class counsel for services rendered while "spreading fees proportionately among those benefited by the suit." *Boeing*, 444 U.S. at 478; *Mills v. Elec. AutoLite Co.*, 396 U.S. 375, 392 (1970).

Accordingly, in common fund cases like this one, use of the percentage-of-the-fund method is not only approved—it is preferred to the point of being "well established'" in this Circuit. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1157 (8th Cir. 1999); *In re IBP, Inc. Sec. Litig.*, 328 F. Supp. 2d 1056, 1064 (D.S.D. 2004) ("The Eighth Circuit indicated that the percentage of the benefit method is preferred in common fund situations.") (citing *Johnston*, 83 F.3d at 246); *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 991 (D. Minn. 2005); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002); *In re Employee Ben. Plans Sec. Litig.*, No. 92-708, 1993 WL 330595, at *7 (D. Minn. June 2, 1993).

There are also several practical advantages to a percentage method. ***First***, the percentage-of-the-benefit approach "most closely aligns the interests of the lawyers with the class, since the more recovered for the class, the more the attorneys stand to be paid." *In re Charter Comm'ns*, 2005 WL 4045741, at *13 (citing *Johnston*, 83 F.3d at 244). "Under the percentage method, counsel have an interest in generating as large a recovery for the class as possible, as their fee increases with the class's take." 5 Newberg on Class Actions § 15:65 (5th ed.).

***Second***, the percentage method promotes early resolution, because it disincentivizes protracted litigation driven solely by counsel's efforts to increase their lodestar. "[W]hen class counsel's fee is set by an hourly rate, the lawyers have an incentive to run up as many hours as possible in the litigation so as to ensure a hefty fee, even if the additional hours are not serving the clients' interests in any way." *Id.* In other words, the percentage-of-the-fund method promotes efficiency because class counsel are encouraged to seek the greatest amount of relief

15

possible for the class, rather than simply expending the greatest possible amount of attorney time.

And **third**, a percentage-based approach approximates "arrangements in the market place for contingency cases, where the individual client generally agrees to a fee based on amount recovered." *Id.*; *see Blum*, 465 U.S. at 903; *see also Court Awarded Attorney Fees, Report of the Third Circuit Task Force*, 108 F.R.D. 237, 255–56 (3d. Cir. 1985). As such, the percentage-of-the-fund method best reflects the fair market price for the legal services provided by class counsel.

While the Court also has discretion to also use the lodestar method, a lodestar approach is disfavored in common fund cases because it is inefficient and difficult to administrate. *Shackleford v. Cargill Meat Solutions, Inc.*, No. 12-cv-4065-FJG, 2013 WL 937550, at *1 (W.D. Mo. Mar. 8, 2013) (holding that "[t]he Eighth Circuit, as well as this Court, has held that in 'common fund' cases, where attorney fees and class members' benefits are distributed from one fund a percentage of the benefit method may be preferable to the lodestar method") (citation omitted). As one court succinctly explained:

> The percentage method is bereft of largely judgmental and time-wasting computations of lodestars and multipliers. These latter computations, no matter how conscientious, often seem to take on the character of so much Mumbo Jumbo. They do not guarantee a more fair result or a more expeditious disposition of litigation.

*In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 170 (S.D.N.Y. 1989); *see also In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 573 (7th Cir. 1992) (noting that it is easier to establish market-based contingency fee percentages than to "hassle over every item or category of hours and expense and what multiple to fix and so forth"); *Johnston*, 83 F.3d 245 n.8 (noting "deficiencies of the lodestar process particularly as it applies to a fund case"). By

contrast, "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Ga., N.A.*, 34 F.3d 560, 566 (7th Cir. 1994). Therefore, use of the lodestar method is disfavored here. Not only does it add needless work for the Court and its staff, it also misaligns the interests of Class Counsel and the Settlement Class Members and fails to reflect the market rate for legal services.[2]

In sum, the percentage-of-the-fund method would most fairly compensate Class Counsel for the significant time and resources expended in obtaining relief for the Settlement Class Members, while taking into account the magnitude of the recovery achieved for the Settlement Class Members and the substantial risk of non-payment in bringing this litigation, particularly in light of the risks and challenges involved in prosecuting this case. Accordingly, the Court should adopt and apply the percentage-of-the-fund approach here. As explained in more detail below, under this approach, Class Counsel's requested attorneys' fees are reasonable in light of the work performed, the recovery secured for the Settlement Class Members, and the percentages approved in similar cases.

### 1. Under the percentage-of-the-fund method, Class Counsel's requested fee award is reasonable and well-earned.

Plaintiff's requested 36% fee award is reasonable and within the range of attorneys' fee awards that courts in the Eighth Circuit and this District have found reasonable. While fee award percentages vary from case-to-case, "a one-third fee is a common benchmark in private contingency fee cases," and courts in this Circuit and this District have "frequently awarded attorney fees of 33 1/3%–36% of a common fund." *Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019); *In re U.S. Bancorp Litig.*, 291 F.3d at 1038 (affirming award of

---

[2] If the Court nonetheless wishes to conduct a lodestar analysis, Class Counsel will submit their time records for *in camera* review.

"36% to class counsel who obtained significant monetary relief on behalf of the class"); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at \*8 (D. Minn. Sept. 18, 2006) (awarding 35.5% of the settlement fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts in the Eighth Circuit and in Missouri "have frequently awarded attorneys' fees ranging up to 36% in class actions."); *Caligiuri v. Symantec Corp.*, 855 F.3d 860 at 866 (D. Minn. 1997) (affirming award of attorney's fees amounting to one-third of the settlement fund); *Martinez v. Medicredit, Inc.*, 2018 WL 2223681, at \*4 (E.D. Mo. May 15, 2018) (awarding class counsel one-third of settlement fund as attorneys' fees and finding that amount to be fair and reasonable); *Prater v. Medicredit, Inc.*, 2015 WL 8331602, at \*4 (E.D. Mo. Dec. 7, 2015) (same); *Cromeans v. Morgan Keegan & Co.*, Inc., 2015 WL 5785576, at \*4 (W.D. Mo. Sept. 16, 2015) (same); *Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 286 (D. Minn. 1997) (same).

Here, Plaintiff's requested fee award of $749,752.57 equates to 36% of the Settlement's $2,082,646.03 cash fund.[3] This percentage is clearly within the "33 1/3%–36%" range that is "frequently awarded" in class cases. *Tussey*, 2019 WL 3859763, at \*4. Importantly, however, this calculation does not take into account the additional value that the negotiated and agreed-to prospective relief will provide to the Settlement Class Members. Ex. 1 at ¶ 12.27. Specifically, Sephora amended its tax compliance methodology so that it applies Missouri use tax to retail transactions made by Missouri consumers via remote sales channels that are shipped from outside the state to a Missouri delivery address. *Id.* As a result, Sephora is no longer charging excess "tax" on these types of transactions which provides a significant benefit to all Missouri consumers going forward. *Id.* And, because the majority of Sephora shoppers are repeat

---

[3] When following the percentage-of-the-benefit approach, the percentage is applied to the gross monetary relief being made available, and "may include fund administration costs as part of the benefit when calculating the percentage-of-the-benefit fee amount." *Caligiuri*, 855 F.3d at 865 (quoting *In re Life Time Fitness, Inc. Telephone Consumer Protection Act (TCPA) Litig.*, 847 F.3d 619, 623 (8th Cir. 2017)) (internal quotation marks omitted).

customers, the prospective relief will continue to benefit Class Members in the future, increasing the value of the Settlement to the Settlement Class. Even individuals who decline participation in the Settlement Class stand to benefit from this prospective relief. As a result, the total benefits being made available to the Settlement Class actually exceed the $$2,082,646.03 fund, because the value of prospective relief can properly be included by the Court in assessing the overall value of the Settlement. *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) (citing *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (finding that "[t]he district court did not abuse its discretion in concluding that injunctive relief against continuation of the allegedly false advertising was 'a valuable contribution to this settlement agreement.'")).

Accordingly, Plaintiff's requested fee award—measured as a percentage of the total relief being made available—is in line with precedent in this Circuit and is even more reasonable in light of the valuable prospective relief provided pursuant to the Settlement.

### C.      Other Relevant Factors Considered By Courts In This Circuit Support Class Counsel's Requested Fee Award.

When determining the reasonableness of a fee award under the percentage-of-the-fund-method, district courts may also consider other relevant factors. The Eighth Circuit has held that "courts may consider relevant factors from the twelve factors listed in *Johnson v. Georgia Highway Express*, 488 F.2d 714, 719-20 (5th Cir. 1974)." *Keil*, 862 F.3d at 701. The twelve *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the

attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-719.

However, courts need not consider or evaluate all twelve of these factors, because "rarely are all of the *Johnson* factors applicable[,] . . . particularly in a common fund situation." *Keil*, 862 F.3d at 703 (citing *Uselton v. Commercial Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993)). Because some of the *Johnson* factors have already been addressed in the analysis above, and others are inapposite, Plaintiff will focus only on the remaining relevant factors.

### 1. The difficulty and complexity of the legal issues here presented a significant risk of non-recovery.

Class Counsel assumed substantial risk in bringing this case. Although this case arose out of a simple consumer transaction, the legal issues involved here were anything but simple and straightforward. This is especially true as Sephora has expressly denied many of Plaintiff's material allegations and has put up a vigorous defense. In the absence of settlement, it is certain that the expense, duration, and complexity of continued litigation would be considerable. Not only would the Parties have to undergo additional motion practice before any trial on the merits, additional evidence and witnesses from across the country would have to be assembled for depositions and as witnesses during any trial.

Indeed, throughout this litigation, Sephora and its counsel have raised multiple defenses to Plaintiff's individual claims on the merits and to her ability to represent a class of others subject to the allegedly unlawful tax practices at issue in this case. Had this case not settled, the Parties would have continued with extensive oral and written discovery, including targeted class discovery, and would have engaged in further motion practice on merits issues at the summary judgment stage. Sephora would also have vigorously contested class certification. Achieving

certification in this case is extremely challenging due to the sheer volume of consumer transaction data, the potential number of state sales and use tax rates at issue, and the wide geographic distribution of the putative class. Given the financial resources at Sephora's disposal, any final decision favorable to Plaintiff would also have likely been appealed or challenged through post-judgment proceedings.

While Plaintiff believes she would have prevailed at class certification and on the merits, she acknowledges that Sephora has firmly denied her material allegations and has presented a vigorous defense. Had Sephora succeeded on any of its defenses, or in defeating class certification, Plaintiff and the Settlement Class Members would have received no payments and no relief whatsoever.

Acknowledging these complex and challenging issues, Class Counsel undertook significant risk in proceeding with this litigation. Defendant's liability to Plaintiff was unclear, and Class Counsel agreed to commence this litigation knowing they would assuredly face rigorous opposition from a party with significant financial resources. Orlowsky Decl. ¶¶ 7-10. From the outset of this case, Defendant aggressively moved for dismissal on multiple different theories, and indicated that it would further challenge Plaintiff's claims on the merits and at the class certification stage. *Id.* at ¶¶ 8-10.

This necessarily meant that Class Counsel would be required to invest significant time and resources despite the real risks involved. *Id.* at ¶ 7; see *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017); *see also Zilhaver v. UnitedHealth Group*, Inc., 646 F. Supp. 2d 1075, 1083 (D. Minn. 2009) (awarding attorneys' fees based, in part, on the plaintiffs' counsel's assumption of risk in taking the matter). Even so, and despite an uncertain outcome, Class Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would

require the devotion of a substantial amount of attorney time and a significant expenditure of litigation expenses with no guarantee of compensation.  Orlowsky Decl. at ¶¶ 7-9.  Indeed, "[t]here are numerous class actions in which plaintiffs' counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005).

Had Sephora prevailed either on the merits or in defeating class certification, the Settlement Class Members would have received nothing. And if Plaintiff recovered nothing, Class Counsel would have received nothing. Notwithstanding the many risks of proceeding and staunch opposition from Sephora, Class Counsel achieved an excellent result for the Settlement Class Members in obtaining a $2,082,646.03 fund along with prospective relief to systematically remedy the underlying problem of the collection of excess tax on the transactions at issue in this case. Class Counsel were able to achieve these results solely due to their experience and extensive efforts in prosecuting this litigation through developing Plaintiff's claims; fully briefing and defeating a dispositive motion; effectively engaging in multiple rounds of settlement negotiations; securing a refund from the Missouri Department of Revenue to fund the Settlement Class; and securing court approval of the Settlement Agreement.  Orlowsky Decl. at ¶ 11.

Indeed, due to their expertise and extensive efforts, Class Counsel was able to achieve an outstanding benefit for the Settlement Class Members by successfully negotiating and prosecuting the Refund Claim.  Following the execution of the Settlement Agreement, the Parties worked together on a Refund Claim that Sephora, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Sephora charged on certain sales made via its website for shipment to Missouri delivery addresses, subject to the terms of the Settlement Agreement.  Ex. 1 at ¶ 3.1. As part of the Settlement Agreement, Sephora agreed to assign the

rights to any refunded monies to the Settlement Class and executed a non-exclusive power of attorney limited to sales/use taxes for the Refund Claim that allowed the MDOR to discuss the refund claim with Plaintiff's counsel. *Id.*

Sephora gathered, researched and reviewed all transactional data made during the Class Period with input from Plaintiff's counsel in order to prepare the necessary amended Missouri use tax returns to reflect the proper state and local use tax that should have been collected on remote sales of tangible personal property shipped by, or on behalf of, Sephora from a "ship-from" location outside the state of Missouri to a purchaser's delivery address within the state of Missouri. *Id.* A Missouri Form 472S, Refund Claim Form, the amended returns and other documentation required to support the refund claims were prepared and filed with the MDOR pursuant to §§ 144.190.1, 144.190.2 and 144.190.3. In lieu of Defendants completing the "Reason for Overpayment" section of the Form 472S, Refund Claim Form, Plaintiffs' counsel drafted and submitted a separate cover letter articulating Plaintiff's argument for why the transactions are subject to use tax rather than sales tax. *Id.* at ¶ 3.1.2. The Refund Claim and all supporting documentation was filed with the MDOR on March 3, 2022.

After the Refund Claim was filed with the MDOR, counsel for the Parties traveled to Jefferson City, MO and held a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class. *Id.* at ¶ 3.1.4. On July 12, 2022, the MDOR informed Sephora that the Refund Claim was being processed. The total

23

amount of the Refund Claim is $2,082,646.03, which Sephora put into an escrow account that created the proceeds for the Settlement Fund. *Id.* at ¶¶ 3.2, 5.2.

As such, a settlement providing for a significant cash benefit like the one here is an exceptional result. Given the challenges and significant efforts needed to secure the Settlement in this litigation, the fee award sought by Class Counsel is reasonable and justified.

> **2. The nature of this case supports the requested fee award, as most Settlement Class Members would not have the means to pursue relief on their own absent a class action.**

Absent this case, none of the Settlement Class Members could have obtained the relief that the Settlement provides. The small value of Plaintiff's and the other Settlement Class Members' individual claims makes it infeasible to proceed on an individual basis. Plaintiff's individual damages were a charge of 7.467% in excess tax on her purchase. *See Compl*. ¶¶ 28-30. As such, even if Plaintiff had received the full amount of damages, her recovery would still be dwarfed by the costs of obtaining a judgment, let alone the costs trying this case. The same would be true if any of the Settlement Class Members attempted to bring an individual lawsuit. This small amount of damages would preclude many, if not all Settlement Class Members from seeking redress for their losses. Additionally, many Settlement Class Members may not have access to competent counsel willing to invest the time and resources necessary to bring a class action and to prosecute their claims. Because the class members have little incentive to bring individual actions to recover the relatively minimal amount of damages at issue on an individual basis, it is unlikely that the Settlement Class Members would be able to obtain any relief at all if not for this suit.

Even so, Plaintiff and Class Counsel were able to overcome these obstacles and obtain meaningful relief for consumers across the state of Missouri. It is fact patterns such as this that

highlight the efficiencies of the class action model and the benefits for ordinary consumers. *Schoenbaum v. E.I. Dupont De Nemours and Co.*, 2009 WL 4782082, at *8 (E.D. Mo. 2009) ("[T]he argument in favor of class action treatment is most compelling where individual suits would in effect have negative value because litigation costs would outweigh any potential recovery.").

### 3.   Both Parties were represented by experienced, capable counsel.

The quality of the representation provided by Class Counsel is also an important factor that supports the reasonableness of the requested fee. *See In re Charter Comm'ns*, 2005 WL 4045741, at *12. As demonstrated in the attached Class Counsel declaration, Class Counsel are highly experienced in the field of class actions and consumer law in particular. *See* Orlowsky Decl. at ¶¶ 3-6. Class Counsel have developed a long track-record of success litigating class actions and other complex litigation in courts across the country. *Id.* Class Counsel prosecuted this Action with great persistence, skill, and creativity, and they believe that the quality of the result obtained for the Settlement Class speaks to the quality of Class Counsel's capable representation.

Courts have also recognized that "[t]he quality and vigor of opposing counsel is important in evaluating the services rendered by Lead Counsel." *In re Charter Comm'ns*, 2005 WL 4045741, at *17; *Yarrington v. Solvay Pharmaceuticals, Inc.*, 697 F. Supp. 2d 1057, 1063 (D. Minn. 2010) (the fact that defendant's attorneys "consist of multiple well-respected and capable defense firms" which "consistently challenged Plaintiffs throughout the litigation" supported class counsel's request for fees); *In re Adelphia Comm'ns Corp Sec. & Derivative Litig.*, 2009 WL 3378705, at *3 (S.D.N.Y. Nov. 26, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best

defense firms in the country' also evidences the high quality of lead counsel's work"); *Teachers Ret. System of Louisiana v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *7 (S.D.N.Y. May 14, 2004) ("The quality of opposing counsel is also relevant in evaluating the quality of services rendered by Plaintiffs' Counsel.").

Here, Sephora, a multi-national corporation with vast resources, has been represented throughout this litigation by capable and well-respected defense counsel at two reputed national firms: BARACK FERRAZZANO LLP and HUSCH BLACKELL LLP. There can be no doubt that these counsel represented their client skillfully and zealously throughout this Litigation. Notwithstanding formidable opposition from counsel with substantial resources, Class Counsel's determined prosecution of this case since 2020 enabled them to achieve a favorable settlement for the benefit of the Settlement Class.

### 4. The time and effort expended by Class Counsel support the requested Fee Award.

Plaintiff's counsel undertook this action with no guarantee of success, and the knowledge that hundreds of hours of attorney time would be required. Orlowsky Decl. at ¶ 7. Class Counsel's efforts include (1) conducting an extensive factual investigation into Sephora's business and tax collection practices; (2) drafting the Complaint and First Amended Complaint; (3) successfully briefing and opposing Defendant's Rule 12(b)(6) motion to dismiss; (4) engaging in weeks of continued communications, negotiations, and the exchange—on a confidential basis and for settlement purposes only—certain data about potential class members and the transactions at issue; (5) exchanging of multiple settlement drafts with Sephora's counsel; (6) agreeing to a framework for settlement where, as part of that framework, Sephora agreed to file a Refund Claim with the MDOR, seeking the return of the amount of excess monies Plaintiff contends Sephora collected as tax on certain sales made via its website for

shipment to Missouri delivery addresses, and use any refund received for the class, subject to the terms of the Settlement Agreement; (7) filing a joint motion requesting a stay from the Court suspending all deadlines in the action relating to adversarial litigation until further order of the Court; (8) drafting the final executed Settlement Agreement and related documents; (9) following the entry of the stay, working with Sephora's Counsel over sixteen (16) months on a Refund Claim that Sephora, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Sephora charged on the transactions at issue; (10) preparing and filing a Missouri Form 472S, Refund Claim Form, and other documentation required to support the refund claims with the MDOR pursuant to §§ 144.190.1, 144.190.2 and 144.190.3; (11) after the Refund Claim was filed with the MDOR, traveling to Jefferson City, MO and holding a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class; (12) kept the Court informed of the settlement negotiations and Refund Claim Process during numerous Status Conferences; (13) communicating with Sephora's Counsel and the MDOR during the six (6) months it took to perfect the Refund Claim; (14) drafting and presenting the filings in support of approval of the Settlement; (15) fielding inquiries about the Settlement from Settlement Class Members; and (16) supervising and working with the Settlement Administrator to oversee implementation of the Notice Plan and payment process. *Id.* at ¶ 11.

Class Counsel sought to prosecute this Litigation consistent with their obligation to vigorously represent the interests of the Class. Thus, the significant amount of time and effort

devoted to this case by Class Counsel and the efficient and effective management of the litigation confirm that the fee request here is reasonable.

> **D.    The Requested Incentive Award For Plaintiff's Service As Class Representative Is Also Reasonable And Should Be Approved.**

The requested $5,000 incentive award for Plaintiff is also well-earned and in line with other incentive awards granted to class representatives in similar class actions in the Eighth Circuit. "In a class action, the rationale for an incentive award to a class representative include compensating the class representative for his or her time and energy and the benefits they conveyed to the class, acknowledging the risk he or she took in pursuing the action, and offering an incentive to encourage people to step up and represent the class." *Schneider v. United States*, 2020 WL 1557905, at *2 (D. Neb. April 1, 2020) (citing *Tussey*, 850 F.3d at 962)). Indeed, courts often grant service awards to class representatives to "promote the public policy of encouraging individuals to undertake the responsibility of representative lawsuits." *Caligiuri*, 855 F.3d at 867 (citing *Yarrington*, 697 F. Supp. 2d at 1068).

Here, the amount of the requested Incentive Award—$5,000—is modest and eminently reasonable given that "courts in this circuit regularly grant service awards of $10,000 or greater." *Caligiuri*, 855 F.3d at 868; *Huyer v. Njema*, 847 F.3d 934, 941 (8th Cir. 2017) (affirming approval of settlement that included $10,000 service awards to the named plaintiffs); *Zilhaver*, 646 F. Supp. 2d at 1085 (granting each of the named plaintiffs a $15,000 to be paid from common fund).

Additionally, Plaintiff's time, effort, and participation in the prosecution of this case justify the $5,000 award sought. Even though no award of any sort was promised to Plaintiff prior to the commencement of the litigation or at any time afterward, Plaintiff nonetheless contributed her time and effort assisting with Class Counsel's investigation, and participating in

numerous conferences and meetings with Class Counsel—all of which demonstrate a willingness to participate and undertake the responsibilities and risks attendant with bringing a representative action.  Orlowsky Decl. at ¶¶ 23-26.

Indeed, Plaintiff's decision to contest Defendant's allegedly unlawful tax practices was the primary catalyst for this litigation. Were it not for Plaintiff's willingness to pursue this action on a classwide basis, her efforts and contributions to the litigation by assisting Class Counsel with their investigation and filing of this suit, and her continued participation and monitoring of the case up through settlement, the substantial benefits to the Settlement Class Members afforded under the Settlement Agreement would not exist.

Compensating Plaintiff for the efforts she undertook to benefit the Settlement Class Members is reasonable under the circumstances of this case, especially in light of the exceptional results obtained. As shown above, courts have regularly approved incentive awards in similar class action litigation consistent with and far greater than the unopposed $5,000 Incentive Award here. Moreover, no objection to the Incentive Award has been raised to date. Accordingly, an Incentive Award of $5,000 to Plaintiff is reasonable, justified by Plaintiff's time and effort in this case, and should be approved.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court enter an order: (1) approving an award of Attorneys' Fees of $749,752.57; (2) approving an incentive award in the amount of $5,000 to Plaintiff in recognition of her significant efforts on behalf of the Settlement Class Members; and (3) granting such further relief as the Court deems reasonable and just.

Respectfully submitted,

Orlowsky Law, LLC


/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs


Goffstein Law, LLC


/s/ Adam M. Goffstein
Adam M. Goffstein, #45611MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs


## CERTIFICATE OF SERVICE


I hereby certify that on February 15, 2023 the foregoing was filed electronically with the Clerk of Court and served via the Court's CM/ECF system to all attorneys of record.


/s/Daniel J. Orlowsky