## CLASS ACTION SETTLEMENT AGREEMENT

This Class Action Settlement Agreement (**"Settlement Agreement"** or **"Agreement"**) is entered into by and between Plaintiff Tiffany Femmer (**"Plaintiff"**) and Defendant Sephora USA, Inc. (**"Sephora"** or **"Defendant"**). Each of Plaintiff and Defendant is referred to herein as a **"Party"**; collectively, they are the **"Parties."**

This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle this Action and the Released Claims (both as defined below), based upon and subject to the terms of this Settlement Agreement and subject to the preliminary and final approval of the Court.

## RECITALS

WHEREAS, on or about March 19, 2020, Plaintiff and Kathryn Schott together filed a putative class action Complaint in the 21st Judicial Circuit Court, St. Louis County, Missouri, captioned *Tiffany Femmer and Kathryn Schott, on behalf of themselves and all others similarly situated v. Sephora USA, Inc.*, Case No. 20SL-CC01736;

WHEREAS, on May 21, 2020, Defendant removed the case to the United States District Court for the Eastern District of Missouri;

WHEREAS, the United States District Court's February 25, 2021 Memorandum and Order stayed the case with respect to Ms. Schott pursuant to her agreement to arbitrate her claims on an individual basis and dismissed the Complaint in part with respect to Plaintiff, without prejudice for Plaintiff to amend;

WHEREAS, on March 4, 2021, Plaintiff filed a First Amended Complaint (**"Amended Complaint"**) captioned *Tiffany Femmer on behalf of herself and all others similarly situated v.*

Exhibit 1

*Sephora USA, Inc.*, Case No. 4:20-cv-00676-JMB, which superseded the original Complaint and is the current operative pleading in this dispute (this **"Action"**);

WHEREAS, the Amended Complaint alleges in part that Sephora charged certain Missouri consumers more tax than was due to the state of Missouri on certain transactions, including sales made via Sephora's website or other remote means for shipment from a location outside the State of Missouri to Missouri delivery addresses, and seeks to recover against Sephora, on behalf of Plaintiff and a putative class of similarly situated individuals, under the Missouri Merchandising Practices Act and theories of unjust enrichment, money had and received, and negligence;

WHEREAS, on March 18, 2021, Sephora answered the Amended Complaint, denying liability and asserting various affirmative defenses, including, among others, that the claims of many of the putative class members are barred because of binding arbitration agreements and class action waivers between Sephora and those putative class members;

WHEREAS, in and around the month of April 2021, the Parties actively discussed settlement;

WHEREAS, in support of the Parties' settlement discussions and to allow the Parties to better assess the amount in dispute, Sephora shared with Plaintiff's counsel—on a confidential basis and for settlement purposes only—certain data about potential class members and transactions;

WHEREAS, in mid-May 2021, the Parties reached agreement on a general, non-binding framework for settling their disputes, and they agreed to negotiate and jointly draft this Settlement Agreement, which will become binding only if and when it is signed by the Parties;

WHEREAS, the Parties intend that the amount of the settlement described in this Agreement will be determined based on the amount of a tax refund that results from a refund claim

that Sephora will file with the Missouri Department of Revenue seeking the return of the amount of excess tax Plaintiff contends Sephora collected on certain sales made via its website for shipment to Missouri delivery addresses, subject to the terms of this Settlement Agreement, including Paragraph 5.2;

WHEREAS, Plaintiff believes her claims asserted in the Amended Complaint are strong on the merits and are appropriate for adjudication on a class basis, but Plaintiff and her counsel recognize that Sephora has raised defenses in this Action that present a risk that Plaintiff may not succeed in certifying a class, or on the merits, or both; and Plaintiff and her counsel also have taken into account the uncertainty and risks inherent in any litigation, and especially in complex class action litigation; and because of these risks Plaintiff desires to fully and finally compromise, settle, and resolve this Action and the Released Claims (as defined below) pursuant to the terms set forth in this Settlement Agreement;

WHEREAS, Class Counsel have evaluated the law and facts relating to the claims and defenses in this Action and concluded that the terms of this Settlement Agreement are fair, reasonable, and adequate to resolve the claims of the putative class, and that it is in the best interests of the putative class members to settle the claims raised in this Action pursuant to the terms set forth in this Settlement Agreement;

WHEREAS, Sephora has denied, and continues to deny, any wrongdoing and maintains that it has asserted meritorious defenses to the Amended Complaint, and further maintains that the claims asserted in the Amended Complaint are not appropriate for adjudication on a class basis, but Sephora recognizes there is a risk that Plaintiff may succeed in certifying a class, or on the merits, or both; and Sephora also has taken into account the uncertainty and risks inherent in any litigation, and especially in complex class action litigation; and because of these risks Sephora

desires to fully and finally compromise, settle, and resolve this Action and the Released Claims pursuant to the terms set forth in this Settlement Agreement;

WHEREAS, the Parties intend that neither the negotiations leading up to this Settlement Agreement, nor this Settlement Agreement itself, nor any act performed, statement made, document executed, or consideration given or received pursuant to, in furtherance of, or as a result of this Settlement Agreement (subject to the terms of this Settlement Agreement, including Paragraph 12.8) may be construed as, or used as, an admission by Defendant of any fault, wrongdoing, or liability whatsoever, or as an admission, concession, or probative evidence against any Party of the truth or falsity of any allegations or the validity or amount of any claims raised in the Action, or as an admission, concession, or probative evidence against any Party that certification of a class other than solely for purposes of this Settlement Agreement is appropriate in this or any other dispute; and

WHEREAS, the Parties agree that all Settlement Class Members (as defined below) will have an individual right to exclude themselves from this Settlement Agreement by following the procedures for requesting exclusion set forth herein;

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Plaintiff, on her own behalf and on behalf of the Settlement Class Members, and Sephora that, subject to the preliminary and final approval of the Court as provided for in this Settlement Agreement, and in consideration of the benefits according to the Parties as set forth herein, the Action and Released Claims will be fully and finally compromised, settled, and released, and the Action will be dismissed on the merits and with prejudice, upon and subject to the terms set forth in this Settlement Agreement.

## <u>AGREEMENT</u>

**1.      DEFINITIONS.**

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1      **"Action"** has the meaning set forth in the Recitals to this Agreement.

1.2      **"Administrative Expenses"** means costs, disbursements, and expenses reasonably incurred in the implementation of this Settlement Agreement by the Settlement Administrator, including, without limitation: the cost of disseminating the Notice to Settlement Class Members and the cost of distributing the Settlement Payments to Settlement Class Members.

1.3      **"Amended Complaint"** has the meaning set forth in the Recitals to this Agreement.

1.4      **"Class Counsel"** and **"Plaintiff's Counsel"** mean Daniel J. Orlowsky, Esq. of Orlowsky Law, LLC and Adam M. Goffstein, Esq. of Goffstein Law, LLC.

1.5      **"Class List"** means a list of Persons who meet the definition of "Settlement Class," below, and the following information for each Person, to the extent reasonably available: a code uniquely identifying the Person; the Person's first name; the Person's last name; the Person's email address; the Person's mailing or shipping address; and the Person's total amount of Potential Tax Overcharges.

1.6      **"Class Representative"** means the named Plaintiff in this Action, Tiffany Femmer.

1.7      **"Class Representative Released Claims"** has the meaning set forth in Paragraph 10.2.

1.8      **"Court"** means the United States District Court for the Eastern District of Missouri, the Honorable John M. Bodenhausen presiding, or any judge who succeeds him as judge in this Action.

1.9 **"Days"** (whether or not beginning with a capital letter) means calendar days, unless otherwise expressly stated herein, and when computing any period of time prescribed or allowed by this Settlement Agreement, the day of the event from which the designated period of time begins to run will not be included.

1.10 **"Effective Date"** means the date described in Paragraph 9.7, if that date occurs.

1.11 **"Fee Award"** means the amount of attorneys' fees, costs, and expenses awarded by the Court to Class Counsel in response to Class Counsel's motion described in Paragraph 8.1.

1.12 **"Final"** means one business day following the latest of the following dates: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Approval Order approving this Settlement Agreement; (ii) if there is an appeal or appeals, the date of completion, in a manner that finally affirms and leaves in place the Final Approval Order without any material modification, of all proceedings arising out of the appeal or appeals (including, without limitation, the expiration of all deadlines for motions for reconsideration or petitions for review or *certiorari,* all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of all appeals or the final dismissal of all proceedings on *certiorari*.

1.13 **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Approval Order to be entered by the Court finally approving the Settlement Agreement, and the Court will determine the Fee Award and the Service Award.

1.14 **"Final Approval Order"** means the judgment and order to be entered by the Court finally approving this Settlement Agreement and dismissing the Action on the merits and with prejudice, substantially in the same form as **Exhibit D** attached hereto.

1.15 **"MDOR"** means the Missouri Department of Revenue.

1.16   **"Net Settlement Proceeds Estimate"** means, as set forth in Paragraph 5.4, the amount of money Sephora is required to put into the Settlement Fund less the maximum amount of the Fee Award, the maximum amount of the Service Award, and the estimated amount of Administrative Expenses.

1.17   **"Notice"** means the Court-approved form of notice to the class, substantially in the same form as **Exhibit A** attached hereto, which will notify the Settlement Class Members of the settlement described in this Agreement and direct them to the settlement website for more information about the settlement.  When not capitalized, or when context requires, "notice" has its ordinary meaning and can include, for example, notice from MDOR or notice between the Parties.

1.18   **"Notice Date"** means the date defined in Paragraph 6.8, even if the Settlement Administrator disseminates all of the Notices in advance of that date.

1.19   **"Objection/Exclusion Deadline"** means the date by which an objection to or request for exclusion from this Settlement Agreement must be submitted or postmarked, as set forth in Paragraphs 7.2 and 7.3.

1.20   **"Party"** and **"Parties"** have the meanings set forth on the first page of this Agreement.

1.21   **"Person"** includes, without limitation, natural persons, firms, corporations, businesses, limited liability companies, partnerships, federal, state, and other governments and their political subdivisions, agencies and instrumentalities, and all other entities.

1.22   **"Plaintiff"** has the meaning set forth on the first page of this Settlement Agreement.

1.23   **"Potential Tax Overcharges"** has the meaning set forth in Paragraph 3.1.

1.24    **"Preliminary Approval"** means the issuance of an order, in substantially the same form as **Exhibit C** attached hereto, that is consistent with and preliminarily approves this Settlement Agreement in all material respects.

1.25    **"Administration Start Date"** means the later to occur of the following two dates (i) the date on which both Parties have received notice that Preliminary Approval has occurred; and (ii) the Refund Payment Date.

1.26    **"Qualifying Purchase"** means a retail transaction for the purchase of tangible personal property from Sephora for which all of the following are true: (a) the transaction was made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora was responsible for calculating tax due on the purchase; (b) the transaction was completed between March 01, 2015 through June 30, 2021; (c) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; (d) the purchaser's delivery address was within the state of Missouri; and (e) Sephora charged the purchaser an amount of tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction. Notwithstanding the foregoing sentence, any transaction on which the purchaser received a refund on the entire transaction will be excluded from "Qualifying Purchases," and where a consumer received a partial refund on a transaction, only the portions of the transaction on which the purchaser did not receive a refund may be a Qualifying Purchase, provided that those portions, standing alone, meet the definition of "Qualifying Purchase" set forth in this Paragraph.

1.27    **"Reasonable"** (whether or not beginning with a capital letter, and including when used as a variant of the same word, such as "reasonably") has the meaning given that word under the common law of the state of Missouri, except that in making a determination regarding reasonableness the Court may consider the extent to which fairness and equity require either Party

to bear the risk or consequences of relevant events that occurred.  In applying the concepts of fairness and equity in the determination of reasonableness as used in this Agreement, the Court may consider whether Defendant is the only Party with access to and in control of any data and information that may be at issue.

1.28   **"Refund Amount"** means the amount of a tax refund, if any, issued to Sephora by MDOR as a result of MDOR's final decision on the Refund Claim. If MDOR's final decision is to deny the Refund Claim, the Refund Amount will be deemed to be zero dollars ($0) and Sephora will be deemed to have received payment of the Refund Amount on the date that is fourteen (14) days after MDOR's decision.

1.29   **"Refund Claim"** has the meaning set forth in Paragraph 3.1.

1.30   **"Refund Payment Date"** means the date that is one (1) business day after both of the following have occurred: (a) Sephora has received payment of the Refund Amount from MDOR; and (b) neither Party has any right to further review of MDOR's final decision on the Refund Claim, either because the time for filing a request for review has expired, or because no further stage of review is possible, or because the Parties both have agreed in writing to waive any right to further review that either of them may have.

1.31   **"Released Claims"** means the Settlement Class Member Released Claims and the Class Representative Released Claims.

1.32   **"Released Parties"** means (i) Sephora USA, Inc., (ii) its past, present and future direct and indirect parents, subsidiaries, divisions, affiliates (including LVMH Moet Hennessy Louis Vuitton SE), associates, predecessors, successors, successors in interest, officers, directors, managers, managing directors, representatives, administrators, owners, controlling shareholders, holding companies, partners, principals, members, employers, employees, independent contractors,

agents, consultants, advisors, assigns, insurers, and attorneys; (iii) any firm, trust, corporation, officer, director, or other individual or entity in which Sephora USA, Inc. has a controlling interest; and (iv) any of the foregoing's present and former officers, directors, managers, employees, representatives, agents, attorneys, owners, predecessors, successors, successors in interest, and assigns.

1.33    **"Releasing Parties"** means, for a given Person: that Person's present or past spouses, children, beneficiaries, attorneys, heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, affiliates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, any other agent or representative of any of these Persons and entities, and anyone claiming through or on behalf of any of these Persons and entities.

1.34    **"Sephora"** and **"Defendant"** have the meaning set forth on the first page of this Agreement.

1.35    **"Sephora's Counsel"** and **"Defendant's Counsel"** mean Robert E. Shapiro, Esq., Joshua W. Mahoney, Esq., and Michael J. B. Pitt, Esq. of Barack Ferrazzano Kirschbaum & Nagelberg, LLP, and A. James Spung, Esq. and Mohsen Pasha, Esq. of Husch Blackwell LLP, as well as any other attorneys that Sephora may designate as its counsel in this matter.

1.36    **"Service Award"** means the amount awarded by the Court to Plaintiff pursuant to the request described in Paragraph 8.2, in recognition of her services as class representative.

1.37    **"Settlement Administrator"** means Rust Consulting, Inc., or such other qualified, independent, third-party settlement administrator retained by Defendant, and agreeable to both Parties, to perform the duties of the Settlement Administrator set forth in this Agreement, as well as its employees and outside vendors working under its supervision. The fact that Defendant is

retaining and supervising the Settlement Administrator does not affect or change the status of the Settlement Administrator as "independent." Defendant understands that Plaintiff's counsel may represent the class and may need certain information and assurances from the Settlement Administrator, subject to Paragraph 4.7.

1.38    **"Settlement Agreement"** and **"Agreement"** have the meaning set forth on the first page of this agreement.

1.39    **"Settlement Fund"** has the meaning set forth in Paragraph 5.1.

1.40    **"Settlement Class"** means all Persons who made at least one Qualifying Purchase, regardless whether such Person is or might be a party to an arbitration agreement or class action waiver with Sephora, but "Settlement Class" does not include any of the following: Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, assigns, and employees; Class Counsel and members of the immediate family of Class Counsel; the judge and staff to whom this case is assigned and any member of the judge's immediate family.

1.41    **"Settlement Class Member"** means a Person who falls within the definition of "Settlement Class" and who has not submitted a timely and complete request for exclusion pursuant to Paragraph 7.2.

1.42    **"Settlement Class Member Released Claims"** has the meaning set forth in Paragraph 10.1.

1.43    **"Stay"** means the Court's Order, at the Parties' request, suspending the litigation as set forth in Section 2 and triggering the obligations set forth in Paragraph 3.1.

1.44    **"Settlement Payment"** means a payment made to a Settlement Class Member pursuant to this Settlement Agreement, estimated as set forth in Paragraph 6.4 and finally calculated and distributed as set forth in Paragraph 5.8.4 *et seq.*

1.45    **"Toll"** (whether or not beginning with a capital letter, and including when used as a variant of the same word, such as "tolled") means, for a deadline expressed as a date certain, to add a number of days equal to the number of days during which the deadline was "tolled," and for a deadline expressed as a number of days, to exclude from the calculation of that deadline all days during which the deadline was "tolled."

1.46    **"Vendor's Use Tax Amount"** means, for a given purchase transaction made on a given date and associated with a given delivery address provided by the purchaser: the amount, expressed in dollars and cents, that is equal to the following calculation:

   ***(Product Charges Before Tax + Shipping & Handling Charges) x Vendor's Use Tax Rate***

where "Product Charges Before Tax" means the charges for all products purchased in the transaction, not including any gift cards purchased, not including any tax, and not including any non-taxable charges that may have been part of the transaction, and "Shipping & Handling Charges" means the charges, if any, for shipping and/or handling on the transaction. ("Vendor's Use Tax Rate" is defined below.)

1.45    **"Vendor's Use Tax Rate"** means, for a given purchase transaction made on a given date and associated with a given delivery address provided by the purchaser: the number, expressed as a percentage, that is equal to the sum of all Missouri state and local vendor's use tax rates (including, without limitation, the vendor's use tax rates for any city, county, or taxing district such as a community improvement district or an ambulance district) applicable to and in effect at the delivery address on the date the transaction was made.

2.      **STAY OF THE ACTION.**

2.1     Within seven (7) days after the execution of this Agreement, the parties will jointly request a Stay from the Court that will suspend all deadlines in this Action relating to adversarial litigation until further order of the Court. The purpose of the Stay will be to permit the Parties to attempt to consummate the settlement set forth in this Agreement. For the avoidance of doubt, the Stay will not apply to any filing or proceeding that is required by, or expressly permitted by, this Agreement.

2.2     The Parties will request that the Court include the following language in its order entering the Stay:

> This Stay is being entered because of a settlement agreement between the parties, pursuant to which they are attempting to resolve all claims in this action on a classwide basis and on behalf of all class members.
>
> Accordingly, it is further ordered that neither the negotiations leading up to the settlement agreement, nor the settlement agreement itself, nor any act performed, statement made, document executed, or consideration given or received pursuant to, or in furtherance of, or as a result of the settlement agreement is, may, or will be deemed, used, offered, or received, in any court or adversarial proceeding, against either party to this action as an admission, concession, or probative evidence against any party to this action of the validity or amount of any claim or defense, the truth or falsity of any fact, the violation of or compliance with any law or statute, the reasonableness or unreasonableness of the settlement agreement, the amount that might or might not have been recovered at trial in this litigation, or any alleged wrongdoing, liability, negligence, misrepresentation, omission, or fault; except as expressly permitted by the settlement agreement.

2.3     The Parties will further request that the Court order them to file a joint report every ninety-one (91) days during the Stay, to keep the Court informed as to the status of the progress of this settlement.

2.4     So long as this Agreement remains in effect, neither Party will seek to end the Stay unless the other Party gives its written consent to end the Stay.

2.5     If the Court refuses to grant the Stay, or if the Court ends the Stay while this Agreement is in effect and without the written consent of both Parties, such event will be deemed the rejection of a material aspect of this Settlement Agreement for purposes of Paragraph 11.1 and will trigger the right to terminate pursuant to that Paragraph.

**3.      REFUND CLAIM.**

3.1     As soon as reasonably practicable after the Stay is entered pursuant to Section 2, and no later than seventy (70) days after such Stay is entered, Sephora, with Plaintiff's input as detailed in this Paragraph 3.1, will file a tax refund claim with MDOR (the **"Refund Claim"**) seeking a refund of the amount of tax charged on each Qualifying Purchase that may have been in excess of the Vendor's Use Tax Amount for that Qualifying Purchase (the **"Potential Tax Overcharges"**).

3.1.1   Sephora will file with the Refund Claim a cover letter explaining that the refund is being sought pursuant to this Settlement Agreement with the intention of using the Refund Amount to fund the settlement to the Persons who are Settlement Class Members pursuant to this Agreement, and referring MDOR to Class Counsel's letter (described below).

3.1.2   Class Counsel will draft a letter that articulates Class Counsel's arguments for why vendor's use tax was owed by the purchasers on the Qualifying Purchases and why, accordingly, MDOR should refund the Potential Tax Overcharges. Sephora will file the letter with the Refund Claim.

3.1.3   Sephora will file with the Refund Claim a request that MDOR include Class Counsel on all written correspondence relating to the Refund Claim and that MDOR permit Class Counsel to participate in any real-time correspondence with MDOR relating to the Refund Claim, such as meetings, telephone calls, and videoconferences.

3.1.4   Sephora will file the Refund Claim and all associated documentation with MDOR via in-person hand delivery in Jefferson City. On the same date as this in-person filing, Class Counsel may contact MDOR and request to schedule a meeting with appropriate MDOR management, which may include representatives from the Director's Office, the General Counsel's Office and the Division of Taxation, to discuss this Action, the Refund Claim, this Settlement Agreement, Class Counsel's arguments in support of the Refund Claim, and the Parties' intent to use the Refund Amount to fund a settlement  with the Persons who are Settlement Class Members pursuant to this Agreement. Sephora's Counsel will be entitled to participate in the meeting, and Class Counsel will schedule the meeting for a date and time when Sephora's Counsel are available.

3.1.5   Sephora's response time to MDOR.  The Parties acknowledge that Sephora is the only Party with access to and control of the data and information related to the Refund Claim, except to the extent that Sephora shares such data and information with Class Counsel or MDOR.  Sephora shall be the Party responsible for providing data and information in response to MDOR's requests relating to the Refund Claim. Sephora understands that

Plaintiff has concerns regarding Sephora's response time and the completeness of Sephora's responses to MDOR.  Although Sephora denies that Plaintiff's concerns are justified, Sephora's assurance that it will act and respond timely and give proper and complete responses to MDOR relating to the Refund Claim, except to the extent Sephora has a reasonable basis for failing to do so, is a material inducement to Plaintiff's willingness to enter into this Agreement. Incomplete or untimely responses to MDOR's reasonable requests related to the Refund Claim will be deemed to be breaches of this Agreement only in accordance with and subject to the terms set forth below:

(a)     If MDOR issues any correspondence to Sephora related to the Refund Claim herein and Sephora knows MDOR failed to provide such correspondence to Class Counsel pursuant to Paragraph 3.1.3 of this Settlement Agreement, Sephora will send electronic copies of such correspondence to Plaintiff's counsel within five (5) business days after the date Sephora received the correspondence.

(b)     If MDOR issues a request to Sephora for additional information or data related to the Refund Claim and this request has a time limit (or an extended time limit negotiated with MDOR) for responding to MDOR, Sephora will provide its proposed response, including any data, to Class Counsel for review (i) if the time limit is forty-five (45) days or longer, at least five (5) business days before the due date of the response; (ii) if the time limit is fourteen (14) days or

longer but less than forty-five (45) days, at least two (2) business days before the due date of the response; or (iii) if the time limit is less than fourteen (14) days, at least one (1) business day before the due date of the response.

(c)  If MDOR issues a request to Sephora, either directly or indirectly through counsel acting on behalf of Sephora, for additional information or data related to the Refund Claim and this request does not have a time limit related to responding to MDOR, the Parties will agree upon a reasonable due date for the response depending on the nature of the request. If the Parties cannot agree, Sephora will ask MDOR to impose a reasonable due date. Sephora will provide its proposed response, including any data, to Class Counsel for review (i) if the agreed-upon time limit is forty-five (45) days or longer, at least five (5) business days before the due date of the response; (ii) if the agreed-upon time limit is fourteen (14) days or longer but less than forty-five (45) days, at least two (2) business days before the due date of the response; or (iii) if the agreed-upon time limit is less than fourteen (14) days, at least one (1) business day before the due date of the response.

(d)  Any failure of Sephora to meet an above-outlined time deadline will be deemed a breach—but not necessarily a material breach—of this Agreement only if all of the following are true: (i) Plaintiff notified Sephora of the missed deadline and Sephora failed to cure the

missed deadline by submitting the response to the MDOR within five (5) business days after receiving notification from Plaintiff; (ii) Sephora did not have a reasonable basis for failing to meet the deadline, as extended by the cure period; and (iii) Sephora's failure to meet the deadline, as extended by the cure period, caused MDOR to impose a negative consequence affecting Plaintiff or the Refund Claim.

(e)     If Sephora commits a breach of this Agreement as defined in Paragraph 3.1.5(d), above, and if Plaintiff believes in good faith that the breach is a material breach, Plaintiff may issue a notice of intent to terminate this Agreement. If Plaintiff does so, Paragraph 11.2 applies as if the notice of intent to terminate had been timely issued pursuant to that Paragraph, except that, if Plaintiff does not send such notice of intent to terminate within twenty-one (21) days after the last to occur of the events listed in Paragraph 3.1.5(d), above, Plaintiff will be deemed to have waived the right to terminate based on the breach in question, so long as Plaintiff had notice of the breach.

3.1.6   Sephora will copy Class Counsel on, or simultaneously provide Class Counsel with copies of, any submissions to MDOR relating to the Refund Claim, including all written correspondence and documents submitted in connection therewith.

3.1.7    Sephora will consider in good faith Class Counsel's comments upon and proposed revisions to any of Sephora's intended submissions to MDOR relating to the Refund Claim.  Sephora will not unreasonably refuse edits or additions Class Counsel proposes for submissions to MDOR relating to the Refund Claim.

3.1.8    Whenever reasonably practicable, Sephora and Class Counsel will jointly participate in any real-time correspondence with MDOR relating to the Refund Claim, such as meetings, telephone calls, and videoconferences.

3.1.9    Class Counsel may communicate with MDOR relating to the Refund Claim in writing, but only if they first give Sephora's Counsel five (5) business days to review a draft of the intended written communication. Class Counsel may communicate with MDOR relating to the Refund Claim in real time, such as in a meeting, telephone call, or videoconference, but only if they give Sephora's Counsel one (1) business day's notice of the real-time correspondence and the opportunity to participate in the real-time correspondence.

3.1.10   Sephora must use its best efforts to comply with all applicable laws and administrative rules and procedures in filing the Refund Claim and in providing any additional information or documentation that Sephora agrees to provide in response to a request by MDOR. To the extent Class Counsel takes any action relating to the Refund Claim, they must use their best efforts to comply with all applicable laws and administrative rules and procedures.

3.1.11 Sephora will retain a reputable, independent, third-party accounting firm of Sephora's choosing to calculate the Potential Tax Overcharges, to prepare the Refund Claim and any supporting paperwork, and, at Sephora's discretion, to perform other tasks related to the Refund Claim. The fact that Sephora is retaining the accounting firm does not affect or change the status of the accounting firm as "independent." To the extent Sephora uses the aforementioned accounting firm for any task, Sephora will be entitled to rely on the work done by the accounting firm and will not be liable or otherwise responsible for any error made by that accounting firm so long as Class Counsel was given the opportunity to review any pertinent documentation submitted to MDOR in support of the Refund Claim.

3.1.12 Plaintiff and Class Counsel will keep the Refund Claim, and all information and documents either of them receives relating to the Refund Claim, strictly confidential and will not use the Refund Claim or such information or documents for any purpose other than assisting Sephora in obtaining the requested refund, except to the extent required by law.

3.2   If MDOR grants the Refund Claim in whole or in part, the Refund Amount will be put into an escrow account pursuant to, and subject to, Paragraph 5.2. The Refund Claim, however, will be made solely on Sephora's behalf, with the intention of using the Refund Amount to fund the settlement described in this Agreement if this Agreement is fully consummated.

3.3   If, in adjudicating the Refund Claim, MDOR issues a final decision denying the Refund Claim or concluding that the Refund Amount will be less than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46), Sephora

has the right, but not the obligation, to timely seek review of that decision in accordance with applicable law, at its own expense. Plaintiff will not oppose Sephora's attempt to seek review.

3.4     If, in adjudicating the Refund Claim, MDOR issues a final decision concluding that the type of tax that was to be collected in connection with all or a significant portion of the Qualifying Purchases was a type of tax other than vendor's use tax, each Party may, in its discretion, attempt to timely seek review of that decision in accordance with applicable law, at its own expense.

3.4.1   If neither Party timely seeks review of MDOR's decision, or if a Party seeks review and is unsuccessful and on any occasion does not timely seek further review, or if a Party seeks review and is unsuccessful and no further review is possible, the releases described in Paragraph 10.2 will take effect as if the Effective Date had occurred, Plaintiff will move to voluntarily dismiss the Action with prejudice within five (5) business days and will take all other actions necessary to secure the voluntary dismissal of this Action with prejudice and without costs, and Plaintiff will not appeal the dismissal. When the dismissal of the Action with prejudice becomes final and non-appealable, this Agreement will terminate and cease to bind the Parties in any way except with respect to the releases that have taken effect and as set forth in Paragraph 11.6.

## 4.     SETTLEMENT ADMINISTRATION.

4.1     The motion for Preliminary Approval will be filed at the time set forth in Paragraph 9.2 and will move the Court to appoint the Settlement Administrator to perform the Settlement Administrator's duties set forth in this Agreement.

4.2     Defendant will hire the Settlement Administrator and is responsible for supervising the Settlement Administrator. The Settlement Administrator is responsible for ensuring that it performs all of its duties set forth in this Agreement. Sephora is entitled to rely on the work done by the Settlement Administrator and will not be liable or otherwise responsible for any error made by the Settlement Administrator.

4.3     The Settlement Administrator will maintain detailed records of its activities under this Settlement Agreement and will make such records available to the Parties upon request. The Settlement Administrator will provide reports and other information as agreed by the Parties or required by the Court.

4.4     Upon the Administration Start Date, the Settlement Administrator will be permitted to submit bills for Administrative Expenses to Sephora, which Sephora will pay out of the Settlement Fund pursuant to Paragraph 5.7.

4.5     The Settlement Administrator will make its best efforts not to incur Administrative Expenses in excess of the amount stated in Paragraph 5.4.3.

4.6     The Settlement Administrator will keep all information it receives regarding the Settlement Class and Settlement Class Members strictly confidential and will not use such information for any purpose other than performing its duties set forth in this Settlement Agreement; provided, however, that the Settlement Administrator may provide general, summary information to the Parties and the Court to update them on the status of the Settlement.

4.7     Except to the extent expressly required by this Agreement, in no event will Plaintiff or Class Counsel be entitled to receive, nor will the Settlement Administrator provide to any of them, the Class List or the first or last name or email address of any current or former Settlement Class Member. Plaintiff and Class Counsel will keep all information they receive regarding the

Settlement Class and Settlement Class Members strictly confidential and will not use such information for any purpose other than consummating this Settlement Agreement.

## 5.    SETTLEMENT FUND.

5.1    All amounts required to be paid pursuant to this Agreement, including, without limitation, Settlement Payments, Administrative Expenses, the Fee Award, and the Service Award, will be paid from a settlement fund (the **"Settlement Fund"**).

5.2    Within seven (7) business days after the Refund Payment Date, Sephora must establish the Settlement Fund, which it will do by establishing an escrow account with a reputable bank and transferring money into that escrow account. Upon its creation, the escrow account will be deemed to be the Settlement Fund and all references to the Settlement Fund in this Agreement will be deemed to be references to the escrow account unless context requires another meaning. Only Sephora will have the right to instruct the bank regarding the escrow account and the money in it, but Sephora will not remove money from the escrow account except as permitted by this Agreement. The amount of money that Sephora must put into the escrow account will be the Refund Amount, pursuant to and subject to the following terms:

5.2.1    Sephora will put the Refund Amount into the Settlement Fund. If the Refund Amount is less than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46) because of a matter or matters primarily within Sephora's exclusive control, Sephora additionally will put into the Settlement Fund an amount of money equal to the amount by which the matter or matters primarily within Sephora's exclusive control caused the Refund Amount to fall below One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and

Forty-Six Cents ($1,765,108.46). If, on the other hand, the Refund Amount is less than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46) because of a matter or matters not primarily within Sephora's exclusive control, Sephora will have no obligation to put any money into the Settlement Fund beyond the Refund Amount.

5.2.2   Unless either Party intends to attempt to seek further review of MDOR's final decision on the Refund Amount pursuant to Paragraph 3.3 or 3.4: (a) if the Refund Amount is less than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46) then as soon as reasonably practicable after learning MDOR's final decision on the Refund Amount, the Parties will confirm in writing their agreement upon the specific dollar amount that Sephora is or will be required to put into the Settlement Fund pursuant to Paragraph 5.2.1; or (b) if the Refund Amount is equal to or greater than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46) then the Parties automatically will be deemed to have confirmed in writing their agreement, as of the date on which the last of them has learned of MDOR's final decision on the Refund Amount, that Sephora is or will be required to put the entire Refund Amount into the Settlement Fund pursuant to Paragraph 5.2.1. If the Refund Amount is less than One Million Seven Hundred Sixty-Five Thousand One Hundred Eight Dollars and Forty-Six Cents ($1,765,108.46), the Parties will attempt to agree in good faith

regarding whether a particular matter affecting the Refund Amount was primarily within Sephora's exclusive control, but if they cannot agree, either Party may file a motion with the Court seeking an adjudication of this issue. All deadlines in this Settlement Agreement will be tolled from the date of filing of the motion until the date on which both Parties have received notice of the Court's decision.

5.2.3   The following is a non-exclusive list of hypothetical reductions to the Refund Amount that the Parties agree would be because of matters primarily within Sephora's exclusive control if they occur:

(a)   MDOR reduces the Refund Amount to offset tax that Sephora owes to MDOR, whether or not that tax is related to the Refund Claim.

(b)   Sephora, without a reasonable basis, refuses to provide, or agrees to provide but fails to provide, documents or information requested by MDOR that are within Sephora's possession and that would have caused MDOR to issue a larger Refund Amount.

(c)   Sephora agrees to provide, and does provide, documents or information requested by MDOR, but provides such documents or information after the time frame detailed in Paragraph 3.1.5(b) or (c) (as applicable) have elapsed, and Sephora's tardiness in providing such documents or information causes MDOR to issue a smaller Refund Amount than it would have issued had Sephora provided such documents or information within the time frame detailed in Paragraph 3.1.5(b) or (c) (as applicable).

(d)     MDOR reduces the Refund Amount pursuant to Mo. Rev. Stat. § 144.190.8 because under the meaning of that statute Sephora has received a previous refund on "the same issue" as that raised by the Refund Claim.

5.2.4   The following is a non-exclusive list of hypothetical reductions to the Refund Amount that the Parties agree would <u>not</u> be because of matters primarily within Sephora's exclusive control if they occur:

(a)     MDOR reduces the Refund Amount because it calculates the applicable refund differently than Sephora did in its Refund Claim, regardless whether MDOR's calculations are correct.

(b)     MDOR reduces the Refund Amount because it concludes that the applicable tax type or tax rates are different from those asserted to apply in the Refund Claim, regardless whether MDOR's selected tax type or tax rates are correct.

5.2.5   If the Parties mutually agree that the amount that would be required for the Settlement Fund pursuant to Paragraph 5.2.1 is not enough money for the settlement to be cost-effective, then, notwithstanding Paragraph 5.2.1, the parties may negotiate a "dismissal accord" which, if agreed to, will modify this Agreement as follows: (a) Sephora will not be required to put any money whatsoever into the Settlement Fund; (b) the releases described in Paragraph 10.2 will take effect as if the Effective Date had occurred on the Refund Payment Date; (c) Plaintiff will move to voluntarily dismiss the Action with prejudice within thirty (30) days and will take all other actions

necessary to secure the voluntary dismissal of the Action with prejudice and without costs; (d) Plaintiff will not appeal the dismissal; and (e) when the dismissal of the Action with prejudice becomes final and non-appealable, this Agreement will terminate and cease to bind the Parties in any way except with respect to the releases that will have taken effect and as set forth in Paragraph 11.6.  The Parties may negotiate and agree upon additional terms that will apply to their "dismissal accord" including, without limitation, terms regarding compensation to be paid to Class Counsel. Each Party may agree or withhold agreement to the "dismissal accord" described in this Paragraph in its sole and unlimited discretion. If the Parties do not mutually agree to the "dismissal accord" described in this Paragraph, they remain bound to fully consummate the settlement pursuant to and subject to the terms of this Agreement.

5.3     Once Sephora has put the required amount of money into the Settlement Fund pursuant to Paragraph 5.2, Sephora has no obligation to put any more money into the Settlement Fund. Sephora will keep records sufficient to show all amounts it pays out of the Settlement Fund.

5.4     Once the Parties have confirmed in writing their agreement upon the specific dollar amount that Sephora is or will be required to put into the Settlement Fund pursuant to Paragraph 5.2, Sephora will promptly calculate the Net Settlement Proceeds Estimate according to the following calculation:

Amount of money Sephora is, was, or will be required to put into the Settlement Fund pursuant to Paragraph 5.2 minus all of the following amounts:

5.4.1   The dollar amount equal to forty percent (40%) of the amount of money Sephora is, was, or will be required to put into the Settlement Fund pursuant to Paragraph 5.2, which is the maximum amount Class Counsel will be permitted to request for their Fee Award;

5.4.2   Five thousand dollars ($5,000.00), which is the maximum amount Plaintiff will be permitted to request for her Service Award; and

5.4.3   An amount equal to one hundred twenty percent (120%) of the amount that, in discussions with the Parties after they execute this Settlement Agreement, the Settlement Administrator estimates will be the largest amount of Administrative Expenses that might be required for this Settlement Agreement.

5.5   Sephora will promptly report the amount of the Net Settlement Proceeds Estimate to Class Counsel and the Parties will confirm their agreement on the amount of such Net Settlement Proceeds Estimate, which Plaintiff will then use to support the motion for Preliminary Approval.

5.6   Within seven (7) days after the Administration Start Date, Sephora will report the amount of the Net Settlement Proceeds Estimate to the Settlement Administrator, which will then calculate an estimated Settlement Payment for each Settlement Class Member as set forth in Paragraph 6.4.

5.7   After the Administration Start Date, Sephora will be authorized to pay, and will pay, all Administrative Expenses out of the Settlement Fund, except that it will only pay for each Administrative Expense after it has been incurred and will not pay for any Administrative Expenses in advance.

5.8     Within seven (7) business days after the Effective Date, Sephora will grant the Settlement Administrator the right to make disbursements from the escrow account representing the Settlement Fund for use in administering this Settlement Agreement. The Settlement Administrator will then pay out the entire remaining amount of the Settlement Fund as follows:

5.8.1   The Settlement Administrator first will promptly estimate the largest amount of Administrative Expenses it believes in good faith it may incur in fulfilling its obligations in Paragraphs 5.8.2 through 5.8.7, and will temporarily remove one hundred twenty percent (120%) of that amount from the Settlement Fund and set it aside. The Settlement Administrator will report to the Parties the amount that was set aside. The Settlement Administrator may use the amount set aside to reimburse itself for Administrative Expenses that it thereafter incurs, provided that it must inform the Parties two (2) business days in advance of each such reimbursement. The Settlement Administrator may not use the amount set aside for any other purpose.

5.8.2   The Settlement Administrator then will immediately pay the amount of the Fee Award to Class Counsel out of the Settlement Fund, and in no scenario will it wait more than five (5) business days from receiving the right to make disbursements from the Settlement Fund to pay the Fee Award to Class Counsel.

5.8.3   The Settlement Administrator then will immediately pay the amount of the Service Award to Plaintiff out of the Settlement Fund, and in no scenario will it wait more than five (5) business days from receiving the right to make

disbursements from the Settlement Fund to pay the Service Award to Plaintiff.

5.8.4    The Settlement Administrator then will calculate a final Settlement Payment for each Settlement Class Member by dividing the remaining amount of the Settlement Fund among the Settlement Class Members in proportion to the total Potential Tax Overcharges on each Settlement Class Member's Qualifying Purchases.

As a simplified, hypothetical example solely for illustration purposes, suppose there are only three Settlement Class Members, Anna, Brian, and Cindy. Anna's Potential Tax Overcharges on her Qualifying Purchases totaled $1; Brian's totaled $4; and Cindy's totaled $5. Suppose also that the remaining amount of the Settlement Fund totals $5. Pursuant to the methodology in this Paragraph, Anna's final Settlement Payment would be $0.50, Brian's would be $2, and Cindy's would be $2.50.

5.8.5    Within sixty-three (63) days after the Effective Date, the Settlement Administrator will issue a payment to each Settlement Class Member in the amount of that Settlement Class Member's final Settlement Payment as calculated in Paragraph 5.8.4.

(a)    The Settlement Administrator will issue the payments to the Settlement Class Members via reputable, cost-effective methods.

(b)    The Settlement Administrator will include with the payments a short statement in substantially the same form as **Exhibit E** attached hereto.

5.8.6   The Settlement Payments will remain valid for ninety (90) days from the date of their issuance. After this 90-day period, the payments will no longer be valid or negotiable and the Settlement Administrator will promptly cancel all payments that have not been redeemed. The Settlement Class Members will be clearly notified in **Exhibit E** to this Settlement Agreement that the payments will fully expire after 90 days from the date of the issuance.

5.8.7   Promptly after cancelling the last unredeemed Settlement Payment, the Settlement Administrator will restore to the Settlement Fund any amounts that it temporarily removed and set aside pursuant to Paragraph 5.8.1 but did not use to reimburse Administrative Expenses. The Settlement Administrator will then pay out the entire remaining amount of the Settlement Fund (which will include, at a minimum, the value of all cancelled Settlement Payments and any amounts that previously were set aside to be used, but were not used, for Administrative Expenses) to Legal Services of Eastern Missouri or, if that entity will not accept the funds, another 501(c)(3) non-profit to be agreed upon by the Parties.

## 6.   NOTICE TO THE SETTLEMENT CLASS AND CALCULATION OF SETTLEMENT PAYMENTS.

6.1   Before it sends Notices pursuant to Paragraph 6.7, the Settlement Administrator will purchase the internet domain name "www.missouritaxsettlementsephora.com" or, if that name is unavailable or unreasonably expensive, a substantially similar domain name agreed to by the Parties, and will establish at that location, and thereafter maintain until this Agreement is fully consummated or is terminated, a website with the following features and content:

6.1.1   A "Home" webpage containing either the full text of a "Detailed Class Notice," in substantially the same form as **Exhibit B** attached hereto, or a link to download such Detailed Class Notice; and also containing links to the other webpages making up the settlement website;

6.1.2   A "Documents" webpage containing links to download (a) this Agreement, (b) the Court's Preliminary Approval order, and (c) any filing or order thereafter made or entered in the Action relating to the settlement described in this Agreement;

6.1.3   A webpage containing a fillable online "Opt-Out Form," which Settlement Class Members may use to exclude themselves from this Settlement Agreement as set forth in Paragraph 7.2.

6.1.4   Optionally, and subject to further discussion and agreement by the Parties and the Settlement Administrator, a webpage containing a fillable online "Payment Method Selection Form," which may be used by a Settlement Class Member to designate a method by which that Settlement Class Member's Settlement Payment will be sent if the Effective Date occurs.

6.1.5   A webpage containing a fillable online form which may be used to submit questions regarding the settlement described in this Agreement;

6.1.6   A link to the Court's calendar, which is available at https://www.moed.uscourts.gov/docket; and

6.1.7   Any other features or content agreed to by the Parties and relating to the settlement described in this Agreement.

6.2     Within seven (7) days after the Administration Start Date, Sephora will prepare the Class List and provide it to the Settlement Administrator.

6.3     The Settlement Administrator may, in its reasonable business judgment, elect to use cost-effective means to verify and, if necessary, make reasonable changes or updates to any or all of the email addresses and mailing or shipping addresses on the Class List to promote accuracy or ease of sending Notice or to reduce the expense of sending Notice.  The Parties agree that if valid email addresses are available, they will be used for sending Notice.

6.4     The Settlement Administrator will then calculate an estimated Settlement Payment for each Settlement Class Member by dividing the Net Settlement Proceeds Estimate among the Settlement Class Members in proportion to the total Potential Tax Overcharges on each Settlement Class Member's Qualifying Purchases.

As a simplified, hypothetical example solely for illustration purposes, suppose there are only three Settlement Class Members, Anna, Brian, and Cindy. Anna's Potential Tax Overcharges on her Qualifying Purchases totaled $1; Brian's totaled $4; and Cindy's totaled $5. Suppose also that the Net Settlement Proceeds Estimate totals $5. Pursuant to the methodology in this Paragraph, Anna's estimated Settlement Payment would be $0.50, Brian's would be $2, and Cindy's would be $2.50.

6.5     The Settlement Administrator will update the Class List to include the amount of each Person's estimated Settlement Payment and provide the updated Class List to Sephora. Sephora will then promptly provide Class Counsel with a copy of the Class List that has been modified to remove all first and last names and email addresses.

6.6     The Settlement Administrator will cause or prepare a computer program to generate a unique copy of the "Short-Form Class Notice," in substantially the same form as **Exhibit A**

attached hereto, for each Person on the Class List; each Person's copy of the Notice will include the following information:

    6.6.1    A code uniquely identifying the Person (if the codes used by the Settlement Administrator are different from the codes provided by Sephora on the Class List, the Settlement Administrator will update the Class List to include the new codes);

    6.6.2    The Person's first and last names;

    6.6.3    The Person's total amount of Potential Tax Overcharges;

    6.6.4    The Person's estimated Settlement Payment; and

    6.6.5    A statement describing how the Person will or may receive the Person's Settlement Payment if the Effective Date occurs.

    6.7    As soon as reasonably practicable after receiving the Class List and completing all of the tasks in Paragraphs 6.1 and 6.3 through 6.6, but no later than forty-two (42) days after the Administration Start Date, the Settlement Administrator will send the Notices to their intended recipients by one of the following two methods: for all recipients for whom the Class List contains an email address, via email; and for all recipients for whom the Class List does not contain an email address, via postcard using a reputable, cost-effective mailing method.

    6.8    The Settlement Administrator will then identify all Persons on the Class List for whom its email software program has reported that the Notice sent by email was not delivered. The Settlement Administrator will promptly report to the Parties the number of such Persons. As soon as reasonably practicable, but no later than fifty-six (56) days after the Administration Start Date (such 56th day is the **"Notice Date"**), the Settlement Administrator will send Notices to such Persons via postcard using a reputable, cost-effective mailing method.

6.9    On the date that is fourteen (14) days after the Notice Date, the Settlement Administrator will report to the Parties the number of postcard Notices that were returned undeliverable as of the date of the report. The Settlement Administrator has no obligation to make a further attempt to send such Notices to their intended recipients so long as the total number of Notices returned undeliverable is less than fifteen percent (15%) of the total number of Notices mailed.

## 7.    REQUESTS FOR EXCLUSION AND OBJECTIONS.

7.1    The Notice will direct Settlement Class Members to the settlement website for more information about the settlement. As set forth in Paragraph 6.1, the settlement website will include the "Detailed Class Notice," in substantially the same form as **Exhibit B** attached hereto, which will advise Settlement Class Members of their rights: (a) to exclude themselves from this Settlement Agreement and forgo its benefits but preserve any rights they may have to pursue claims against Sephora; and (b) to object to this Settlement Agreement personally or through counsel. The settlement website will include a fillable online "Opt-Out Form" that Settlement Class Members may use to exclude themselves from the Settlement Agreement.

7.2    Any Settlement Class Member other than Plaintiff may request to be excluded from this Settlement Agreement by completing and submitting the fillable online "Opt-Out Form" on the settlement website on or before the date that is forty-nine (49) days after the Notice Date (such 49th day after the Notice Date is the **"Objection/Exclusion Deadline"**) or by mailing a letter via first class mail to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline. For a letter to be a "complete" exclusion request, it must include the Settlement Class Member's first and last names, the unique identifying code from the Settlement Class Member's Notice, a statement that the Settlement Class Member requests to be excluded from the settlement,

and the Settlement Class Member's signature. An exclusion request submitted via the "Opt-Out Form" will be deemed a "complete" exclusion request so long as all required fields are filled in with the requested information, which will include: the Settlement Class Member's first and last names, the unique identifying code from the Settlement Class Member's Notice, and a checkbox or similar field serving as the electronic equivalent of a signature and affirming that the Settlement Class Member requests to be excluded from the settlement. A request for exclusion may only be brought on behalf of the individual Settlement Class Member making the request, and "mass" or "class" requests for exclusion will not be valid and will have no effect. Any Settlement Class Member who submits a timely and complete exclusion request pursuant to the requirements of this Paragraph will no longer be a Settlement Class Member, will not be bound by this Settlement Agreement or the Final Approval Order, will not be entitled to any rights, relief, or benefits under or by virtue of this Settlement Agreement, and will not be entitled to object to or otherwise contest this Settlement Agreement. Any Settlement Class Member who fails to submit a timely and complete exclusion request will continue to be a Settlement Class Member, will not be excluded from this Settlement Agreement, and will be bound by this Settlement Agreement upon the issuance of the Final Approval Order.

7.3     Any Settlement Class Member other than Plaintiff may object to this Settlement Agreement by mailing a letter via first class mail to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline. To be a "complete" objection (without regard to whether the objection has factual or legal merit), the letter must include the Settlement Class Member's first and last names; the unique identifying code from the Settlement Class Member's Notice; all arguments, citations, and evidence supporting the objection (including copies of any documents relied upon); the name and contact information of the Settlement Class Member's

counsel, if any; a statement whether the Settlement Class Member or counsel intends to appear at the Final Approval Hearing; and the Settlement Class Member's signature. Any Person who fails to submit a timely and complete objection pursuant to the requirements of this Paragraph will be deemed to have waived any and all objections and will not be permitted to object to this Settlement Agreement in any manner, in the Action or any other proceeding.

7.4     Plaintiff is conclusively deemed to be a Settlement Class Member and is not permitted to object to or request exclusion from this Settlement Agreement, and any such objection or exclusion request will not be valid and will have no effect.

7.5     On the date that is fourteen (14) days after the Objection/Exclusion Deadline, the Settlement Administrator will provide to the Parties a list of the unique identifying codes corresponding to the Persons who have submitted timely and complete requests for exclusion. The Settlement Administrator will supplement the list from time to time to the extent it receives further timely and complete requests for exclusion.

7.6     If the total number of Persons who submit timely and complete requests for exclusion exceeds fifteen percent (15%) of the number of Notices that were sent by the Settlement Administrator, not including emailed Notices that were not delivered and mailed Notices that were returned undeliverable, Sephora (but not Plaintiff) will have the option in its sole discretion to terminate this Settlement Agreement; provided, however, that such option must be exercised within fourteen (14) days after receiving notice of the facts supplying the basis for the termination.

7.7     Should the Settlement Administrator receive any requests for exclusion that it believes are not timely or are not complete, it will notify the Parties and will provide copies of the materials received, and reports summarizing the materials received, to the Parties upon request.

7.8     Should the Settlement Administrator receive any objections, whether or not timely or complete, it will promptly provide the Parties with copies of the materials received.

7.9     Should the Settlement Administrator receive any other correspondence in connection with administering this Settlement Agreement, it will promptly provide the Parties with copies of the materials received.

## 8.     FEE AWARD AND SERVICE AWARD.

8.1     No later than the date that is twenty-one (21) days after the Notice Date, Class Counsel may file a motion that the Court, if it grants final approval of this Settlement Agreement, include in the Final Approval Order an order for a Fee Award to Class Counsel, to be paid out of the Settlement Fund, in an amount up to but not exceeding the amount described in Paragraph 5.4.1. Sephora will not oppose the Fee Award motion so long as it does not seek more than that amount and is filed within the foregoing timeframe. In no event will Class Counsel request or move for any payment to be made to them in excess of that amount.

8.2     Plaintiff may include in the motion for final approval of this Settlement Agreement a request for a Service Award, to be paid out of the Settlement Fund, in an amount up to but not exceeding the amount stated in Paragraph 5.4.2. Sephora will not oppose the Service Award request so long as it does not seek more than that amount. In no event will Plaintiff request or move for any payment to be made to her in excess of that amount.

8.3     Other than as expressly stated herein with respect to the Fee Award, the Released Parties will have no responsibility for, and no liability with respect to, payment of Plaintiff's or any Settlement Class Member's attorneys' fees, costs, or expenses. The Released Parties also will have no responsibility for, and no liability with respect to, the allocation of the Fee Award and Service Award among Plaintiff and Class Counsel or any disputes regarding such allocation.

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

Plaintiff and Class Counsel each agree to indemnify and hold harmless all of the Released Parties in connection with any such claim or dispute. Plaintiff and Class Counsel are solely responsible for any income or other tax payable by any of them resulting from the receipt of any portion of the Fee Award or Service Award.

8.4     Except as expressly provided herein with respect to the Fee Award, Plaintiff and Class Counsel will bear their own fees, costs, and expenses relating to the Action and this Settlement Agreement, including, without limitation, the activities necessary to consummate this Settlement Agreement.

## 9.     APPROVAL AND EFFECTIVE DATE OF THIS SETTLEMENT AGREEMENT.

9.1     Before making any filing with the Court in connection with consummating the settlement described in this Settlement Agreement, the Party that intends to make the filing will share a draft of the complete filing with the other Party and will give the other Party fourteen (14) days to review the draft and propose revisions. In addition, Plaintiff will not file either the motion for Preliminary Approval or the motion for final approval, discussed below, until Sephora's Counsel has approved the motion and all of its supporting papers in their final form.

9.2     Upon the date that is the later of (i) the date on which neither Party has any right to further review of MDOR's final decision on the Refund Claim, either because the time for filing a request for review has expired, or because no further stage of review is possible, or because the Parties both have agreed in writing to waive any right to further review that either of them may have; and (ii) the date on which the Parties confirm in writing their agreement upon the specific dollar amount that Sephora is or will be required to put into the Settlement Fund pursuant to Paragraph 5.2: Plaintiff will immediately begin preparing and, within twenty-one (21) days after such date, will submit to the Court, a motion for Preliminary Approval of this Settlement

Agreement with supporting papers and a proposed Preliminary Approval order substantially in the same form as **Exhibit C** attached hereto, which: (a) preliminarily approves the necessary portions of this Settlement Agreement in all material respects; (b) conditionally certifies the Settlement Class for settlement purposes only; (c) appoints Plaintiff as class representative for settlement purposes only; (d) appoints Class Counsel as class counsel for settlement purposes only; (e) appoints the Settlement Administrator to perform the Settlement Administrator's duties set forth in this Agreement; (f) authorizes the Parties, without further approval from the Court, to make reasonable modifications to this Settlement Agreement (including its Exhibits) by written agreement, so long as the modifications do not materially limit the rights of Settlement Class Members; (g) sets a date for the Final Approval Hearing that is a sufficient number of days after the date of Preliminary Approval to account for the events detailed in this Agreement that must occur before final approval; (h) sets the date referred to in Paragraph 8.1 as the deadline for Class Counsel's Fee Award motion; (i) incorporates any other provisions, consistent with the material terms of this Settlement Agreement, as the Court deems necessary and just; and (j) to the extent the Court finds it appropriate, preliminarily addresses matters relating to the anticipated Administration Expenses, the Refund Amount, the Net Settlement Proceeds Estimate, Class Counsel's anticipated Fee Award motion, and Plaintiff's anticipated request for the Service Award.

9.3     Within ten (10) days after the filing of the motion for Preliminary Approval, Defendant will cause notice of the proposed settlement to be served upon the required governmental officials pursuant to the Class Action Fairness Action of 2005, 28 U.S.C. § 1715.

9.4     If the Court denies Preliminary Approval because, in its view, the Settlement Fund is too small then, in addition to and without limiting their other rights and obligations under this Agreement, the Parties may negotiate a "dismissal accord" with terms as set forth in Paragraph

5.2.5. Each Party may agree or withhold agreement to such "dismissal accord" in its sole and unlimited discretion. If the Parties fail to agree upon such "dismissal accord" and also fail to reach any agreement that might resolve the Court's objections to Preliminary Approval, this Agreement will terminate, the termination will be deemed to be by both Parties and to have occurred pursuant to Paragraph 11.1, and Paragraph 11.5 will apply.

9.5     At least fourteen (14) days before the date of the Final Approval Hearing, Plaintiff will file a motion for final approval of this Settlement Agreement. The motion will reiterate the amount requested for the Fee Award in the motion filed pursuant to Paragraph 8.1, will state the amount requested for the Service Award, pursuant to Paragraph 8.2, and will include supporting papers and a proposed Final Approval Order substantially in the same form as **Exhibit D** attached hereto, which: (a) finally approves this Settlement Agreement; (b) finds that the Parties have met all applicable legal requirements relating to notifying the Settlement Class of this Settlement Agreement and providing an opportunity to object or request exclusion; (c) finds that this Settlement Agreement meets all applicable legal requirements for a class settlement and is final and binding on all Settlement Class Members; (d) states the amount, if any, of the Settlement Fund that will be paid to Plaintiff as her Service Award; (e) states the amount, if any, of the Settlement Fund that will be paid to Class Counsel as their Fee Award; (f) orders that the remaining amount of the Settlement Fund be paid out as set forth in this Agreement; (g) orders that the releases set forth in this Agreement will become effective upon the Effective Date; (h) dismisses the Action on the merits and with prejudice, without fees or costs to any party except as provided in this Agreement; (i) without affecting the finality of the Final Approval Order for purposes of appeal, retains jurisdiction regarding all matters relating to the further administration and enforcement of the Settlement Agreement and the Final Approval Order until such time as the Court determines

that the Settlement Agreement is fully consummated; (j) continues to authorize the Parties, without further approval from the Court, to make reasonable modifications to this Settlement Agreement (including its Exhibits) by written agreement, so long as the modifications are consistent with the Final Approval Order and do not materially limit the rights of Settlement Class Members; and (k) incorporates any other provisions, consistent with the material terms of this Settlement Agreement, as the Court deems necessary and just.

9.6     Regarding the motion for Preliminary Approval and the motion for final approval detailed in this Section 9, Plaintiff, through Class Counsel, must: (a) file each motion by the applicable filing deadline; (b) within the bounds of ethical advocacy, zealously prosecute each motion and make her best efforts to cause the Court to grant each motion; and (c) not withdraw either motion. These obligations apply so long as this Agreement remains in effect, regardless of the Refund Amount, the number of objections or exclusion requests, or any other factor that may cause the settlement described in this Agreement to be less or more favorable to Plaintiff or the Settlement Class than Plaintiff might originally have believed it would be.

9.7     The Effective Date of this Settlement Agreement will not occur unless and until each and every one of the following events occurs, and will be the first business day after the last in time of the following events occurs:

9.7.1   This Settlement Agreement has been fully executed;

9.7.2   The Refund Payment Date has occurred;

9.7.3   The Court has entered an order granting Preliminary Approval of this Settlement Agreement;

9.7.4   The Court has entered the Final Approval Order; and

9.7.5   The Final Approval Order has become Final, as defined in Paragraph 1.12.

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

## 10.    RELEASES.

10.1    <u>Settlement Class Member Released Claims</u>. Upon the Effective Date, each Settlement Class Member and that Settlement Class Member's Releasing Parties will be deemed to have, and by operation of the Final Approval Order will have, fully, finally, and forever, irrevocably and unconditionally released, acquitted, relinquished, and discharged the Released Parties from and against all of the following, through and including (but not beyond) the Effective Date: any and all debts, obligations, losses, costs, controversies, suits, liabilities, judgments, damages, expenses, filings, complaints, grievances, claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, asserted or unasserted, express or implied, real or imaginary, suspected or unsuspected, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, that the Settlement Class Member or any of the Settlement Class Member's Releasing Parties ever had, have, may have, or claim or assert to have against any of the Released Parties arising out of or relating to the facts alleged in the Amended Complaint in this Action, including, without limitation, (a) the claims that were pleaded therein; (b) all claims that could have been pleaded based on the facts alleged therein; and (c) all claims arising out of or relating to the amount of tax Sephora charges or has charged on purchases that are shipped to a Missouri address from a location outside Missouri (**"Settlement Class Member Released Claims"**).

10.1.1  Upon the Effective Date, each Settlement Class Member and that Settlement Class Member's Releasing Parties will be deemed to have, and by operation of the Final Approval Order will have, represented, covenanted,

and agreed not to bring any claim, action, suit, or proceeding of any nature whatsoever in any venue (including in any court, with any regulatory or governmental agency, via arbitration or otherwise) against any of the Released Parties with respect to the Settlement Class Member Released Claims to the fullest extent permitted by applicable law.

10.1.2  A Settlement Class Member may hereafter discover facts in addition to or different from those which the Settlement Class Member now knows or believes to be true with respect to the subject matter of the Settlement Class Member Released Claims, but the Settlement Class Member will be deemed to have, and by operation of the Final Approval Order will have, fully, finally, and forever settled and released any and all Settlement Class Member Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, without limitation, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. If Section 1542 of the Civil Code of the State of California, or any comparable law or regulation, applies to this Agreement, Settlement Class Members will be deemed to have waived any rights under that statute (and under any comparable law or regulation) and thus to have waived any claims that they do not now know or suspect to exist in their favor that would materially affect the settlement.

Class Counsel further represent that that they understand and acknowledge, and accept on behalf of the Settlement Class Members, the consequence of this express waiver of Section 1542 of the Civil Code of the State of California, which reads as follows:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

10.1.3  All Settlement Class Members will be bound by this release unless they timely submit a complete request for exclusion from this Settlement Agreement by following the procedures set forth in Paragraph 7.2.

10.2    <u>Class Representative Released Claims</u>. Upon the Effective Date, the Class Representative and her Releasing Parties will be deemed to have, and by operation of the Final Approval Order will have, fully, finally, and forever, irrevocably and unconditionally released, acquitted, relinquished, and discharged the Released Parties from and against all of the following, through and including (but not beyond) the Effective Date: any and all debts, obligations, losses, costs, controversies, suits, liabilities, judgments, damages, expenses, filings, complaints, grievances, claims, demands, actions, and causes of action of any kind or nature whatsoever, whether at law or equity, asserted or unasserted, express or implied, real or imaginary, suspected or unsuspected, known or unknown, direct, indirect, or consequential, liquidated or unliquidated, foreseen or unforeseen, developed or undeveloped, arising under common law, regulatory law, statutory law, or otherwise, whether based on federal, state or local law, statute, ordinance, regulation, code, contract, common law, or any other source, that the Class Representative or any of the Class Representative's Releasing Parties ever had, have, may have, or claim or assert to

have against any of the Released Parties arising out of or relating to any facts whatsoever, whether or not arising out of or relating to the Action (**"Class Representative Released Claims"**).

10.2.1   Upon the Effective Date, the Class Representative and her Releasing Parties will be deemed to have, and by operation of the Final Approval Order will have, represented, covenanted, and agreed not to bring any claim, action, suit, or proceeding of any nature whatsoever in any venue (including in any court, with any regulatory or governmental agency, via arbitration or otherwise) against any of the Released Parties with respect to the Class Representative Released Claims to the fullest extent permitted by applicable law.

10.2.2   The Class Representative may hereafter discover facts in addition to or different from those which she now knows or believes to be true with respect to the subject matter of the Class Representative Released Claims, but the Class Representative will be deemed to have, and by operation of the Final Approval Order will have, fully, finally, and forever settled and released any and all Class Representative Released Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which then exist, or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, without limitation, conduct which is negligent, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Class Representative further agrees that if Section

1542 of the Civil Code of the State of California, or any comparable law or regulation, applies to this Agreement, she waives any rights under that statute (and under any comparable law or regulation) and thus waives any claims that she does not now know or suspect to exist in her favor that would materially affect the settlement.   The Class Representative further represents that she has been advised by her legal counsel and that she understands and acknowledges the consequence of this express waiver of Section 1542 of the Civil Code of the State of California, which reads as follows:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

10.3    Notwithstanding anything else in this Agreement, neither the Settlement Class Member Released Claims nor the Class Representative Released Claims include any claim or right that is not waivable as a matter of law.

## 11.    TERMINATION.

11.1    Either Party may terminate this Settlement Agreement immediately upon notice to the other Party if the Court, or any appellate court, rejects, modifies, or denies approval of any material aspect of this Settlement Agreement, or if the Court, or any appellate court, enters an order that is inconsistent with any material aspect of this Settlement Agreement, except that such right to terminate is subject to Paragraph 12.2, if applicable. All provisions relating to the Stay are material aspects of this Agreement for purposes of this Paragraph. A Party must terminate within

twenty-one (21) days after receiving notice of such event prompting the termination or else the Party will be deemed to have waived the right to terminate based on that event.

11.2     If a Party believes in good faith that the other Party has breached a material term of this Settlement Agreement, the non-breaching Party may send a notice of breach to the allegedly breaching Party. Upon receiving a notice of breach, the allegedly breaching Party may cure the breach within the greater of (a) ten (10) business days; or (b) if a cure cannot reasonably be accomplished in ten business days, the time actually taken by the allegedly breaching party to cure, provided that the allegedly breaching party commences to cure within ten (10) business days and thereafter diligently continues its efforts to cure. If the allegedly breaching Party fails to cure the breach within the time period described in the previous sentence, the non-breaching Party may send a notice of intent to terminate to the allegedly breaching Party. The non-breaching Party must send its notice of breach within twenty-one (21) days after receiving notice of the alleged breach, and must send its notice of intent to terminate within twenty-one (21) days after the allegedly breaching Party's failure to cure the alleged breach, or else the non-breaching Party will be deemed to have waived the right to terminate based on the alleged breach.

11.2.1 Within twenty-one (21) days after sending or receiving any notice of intent to terminate this Agreement, either Party may file a motion with the Court seeking a determination whether there was a material breach of this Agreement.  The Parties agree that a breach of this Agreement can be a material breach even if not specifically designated a material breach in the Agreement but that the failure to meet a deadline set by this Agreement, standing alone, is not a material breach.  The other Party will have fourteen (14) days to respond to the motion. All deadlines in this Settlement

Agreement will be tolled from the date of filing of the motion until the date both Parties have received notice of the Court's decision. However, no deadline that was set by MDOR will be tolled or extended except to the extent that MDOR agrees to toll or extend the deadline.

(a)     If the Court finds that there was a material breach of this Agreement, and the non-breaching Party does not inform the Court in writing that it will waive the material breach, the Court may grant any appropriate relief for such breach, including ordering that the Agreement will be terminated. In addition, if the Court finds that Sephora materially breached this Agreement and orders that the Agreement will be terminated as relief for Sephora's material breach, Sephora will waive any and all rights it may have to enforce, for any purpose in the Action, any arbitration agreement or class action waiver against any and all Persons who fall within the definition of the Settlement Class except Kathryn Schott.  Sephora understands that this is a material and important provision in the Agreement to Plaintiff.

(b)     If the Court finds that neither Party committed a material breach of this Agreement, or if every material breach is waived by the non-breaching Party in a writing submitted to the Court, the parties will jointly request that the Court not grant any relief to either Party and order that the Agreement remains in effect and is not terminated.

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

11.2.2  If neither Party files a motion of the type and within the time limit set forth in Paragraph 11.2.1, this Agreement will terminate upon the expiration of that time limit and both Parties will be deemed to have waived any and all remedies for the other Party's alleged or actual breach other than the termination of this Agreement.

11.3    It is a material term of this Agreement that Sephora will file and prosecute the Refund Claim diligently and in good faith and work to obtain the maximum supportable Refund Amount.

11.4    The termination methods set forth in this Agreement are the exclusive methods of terminating this Agreement, and the Parties waive any and all other rights they may have to terminate this Agreement, including rights at common law, in equity, and pursuant to statute.

11.5    In the event of a termination pursuant to Paragraphs 7.6, 11.1, or 11.2, the Parties will be restored to their respective positions in the Action as of the moment in time immediately before entering into this Settlement Agreement (except that if, pursuant to Paragraph 11.2.1(a), this Agreement is terminated by order of the Court as relief for Sephora's material breach, the waiver described in that Paragraph will take effect); the Parties will take all necessary actions to restore themselves and each other, to the extent reasonably practicable, to the *status quo ante* as of the moment in time immediately before entering into this Settlement Agreement; the escrow account representing the Settlement Fund will be closed and all money within it will be disbursed to Sephora and will revert to being Sephora's ordinary, unrestricted financial property; and all orders entered by the Court in accordance with this Settlement Agreement will be treated as vacated to the extent such treatment is permitted by the Court, and the Parties will move to vacate such orders to the extent necessary.

11.6     Notwithstanding anything else in this Agreement, the following Paragraphs will survive any termination of this Agreement and will continue to bind the Parties: Paragraphs 11.2.1(a), 12.7, and 12.8.

## 12.     ADDITIONAL PROVISIONS.

12.1     <u>Cooperation</u>. The Parties: (a) acknowledge that it is their intent to consummate the settlement described in this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate and to use their reasonable best efforts to consummate the settlement described in this Settlement Agreement.

12.2     <u>Court-requested Modifications</u>. If the Court asks the Parties to modify any aspect of the Settlement Agreement, or if it appears that a modification of the Settlement Agreement might resolve an issue identified by the Court as an impediment to its granting Preliminary Approval or final approval of the Settlement Agreement, the Parties will meet and confer in good faith to consider potentially modifying the Settlement Agreement to resolve any issues identified by the Court. Any such modification of the Settlement Agreement will be by mutual written consent of the Parties, and no Party will be obligated to accept modifications without its consent.

12.3     <u>No Assertions of Bad Faith or Lack of Reasonable Basis</u>. The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiff or defended by Sephora in bad faith or without a reasonable basis in any respect.

12.4     <u>Voluntary, Arm's Length Settlement</u>. The Parties represent and agree that the terms of this Settlement Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement that was reached voluntarily based upon adequate information and sufficient discovery and investigation and after consultation with experienced legal counsel.

12.5    <u>Mutual Drafting and Intent to Be Bound</u>. The determination of the terms of, and the drafting of, this Settlement Agreement have been by mutual agreement after negotiation, with consideration by and participation of the Parties and their counsel. This Settlement Agreement accordingly will not be construed more strictly against one Party than the other. The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect hereof by counsel of their own selection and intend to be legally bound by the same.

12.6    <u>Arbitration Agreements and Class Action Waivers Do Not Affect This Settlement</u>. No arbitration agreement or class action waiver between Sephora and any Settlement Class Member will have any effect upon whether this Settlement Agreement applies to any Settlement Class Member.

12.7    <u>Class Certification Solely for Settlement Purposes</u>. The Parties agree and acknowledge that Sephora's agreement to the conditional certification of the Settlement Class described herein is for purposes of this Settlement Agreement only. Should, for whatever reason, the Effective Date not occur, including because this Agreement terminates, the Parties' stipulation to certification of the Settlement Class will become null and void *ab initio* and will have no bearing on, and will not be admissible in connection with, the issue of whether or not certification is proper or appropriate in the Action or in any other court or adversarial proceeding. Sephora expressly reserves its right to, and declares that it intends to, oppose class certification vigorously should this Settlement Agreement not become final.

12.8    <u>Prohibition on Use of This Agreement Against Either Party</u>. Whether the Effective Date occurs or this Settlement Agreement is terminated, neither the negotiations leading up to this Settlement Agreement, nor this Settlement Agreement itself, nor any act performed, statement made, document executed, or consideration given or received pursuant to, or in furtherance of, or

as a result of this Settlement Agreement is, may, or will be deemed, used, offered, or received, in any court or adversarial proceeding, against either Party or any of the Released Parties as an admission, concession, or probative evidence against any Party of the validity or amount of any claim or defense, the truth or falsity of any fact, the violation of or compliance with any law or statute, the reasonableness or unreasonableness of this Settlement Agreement, the amount that might or might not have been recovered at trial in the Action, or any alleged wrongdoing, liability, negligence, misrepresentation, omission, or fault. Matters that, pursuant to the foregoing sentence, may not be used against either Party as an admission, concession, or probative evidence against any Party include, without limitation: (a) the preparation, filing, and prosecution of the Refund Claim; (b) MDOR's decision on the Refund Claim; (c) the existence of a tax refund, its amount, or Sephora's receipt or control of it; (d) the escrow account or Sephora's control of it; and (e) the Court's decisions and orders relating to this Agreement, including, without limitation, its decisions and orders relating to Preliminary Approval and final approval of this Agreement. Notwithstanding the foregoing two sentences, nothing in this Paragraph precludes the use of this Settlement Agreement or any acts performed, statements made, documents executed, or consideration given or received pursuant to, or in furtherance of, or as a result of this Settlement Agreement for any of the following purposes:

12.8.1  To consummate the settlement described in this Settlement Agreement;

12.8.2  If this Settlement Agreement is finally approved by the Court, to support a defense or counterclaim based on principles of *res judicata,* collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion, or similar defense or counterclaim;

12.8.3  If a Party issues a notice of intent to terminate pursuant to Paragraph 11.2 and a Party initiates the proceedings described in Paragraph 11.2.1, to support an argument in those proceedings that a Party did or did not commit a material breach of this Settlement Agreement;

12.8.4  If used by Sephora other than in this Action, for any purpose; and

12.8.5  If used in this Action by either Party, for the limited purpose of providing general background information to the Court regarding the events that have occurred relating to this Agreement, but which in no event may be used as probative evidence against Sephora.

12.9    Dispute Resolution. In the event of a bona fide dispute between the Parties regarding the meaning, interpretation, validity, or enforceability of any term or aspect of this Agreement, either Party may file a motion with the Court seeking a ruling on the disputed issue. All deadlines in this Settlement Agreement will be tolled from the date of filing of the motion until the date both Parties have received notice of the Court's decision. However, no deadline that was set by MDOR will be tolled or extended except to the extent that MDOR agrees to toll or extend the deadline.

12.10   Plaintiff's Representations. Plaintiff represents and warrants that she has not assigned any claim or right or interest relating to any of the Released Claims against the Released Parties to any other Person or party and that she is fully entitled to release the same.

12.11   Signatories' Representations. Each Person signing this Settlement Agreement on behalf of a Party hereby warrants and represents that such Person has the full authority to sign this Agreement on behalf of that Party and has the authority to take appropriate action required or permitted to be taken by that Party pursuant to this Settlement Agreement to effectuate its terms.

Each attorney signing this Agreement (except Sephora's in-house counsel if signing on behalf of Sephora as a Party) warrants and represents that he has the full authority to sign on behalf of both himself and the law firm listed in his signature block and has the authority to take appropriate action required or permitted to be taken by Class Counsel (for Mr. Orlowsky and Mr. Goffstein), or by Defendant's Counsel (for Mr. Shapiro), pursuant to this Settlement Agreement to effectuate its terms.

12.12   No Anticipated Cases. Each Class Counsel represents and agrees that neither he nor any of his principals, employees, or agents has or has knowledge of current or prospective undisclosed clients with claims against Sephora, or any of Sephora's affiliated entities, regarding the claims asserted, or that could have been asserted, in this Action (other than Kathryn Schott). Each Class Counsel further represents that neither he nor any of his principals, employees, or agents has any present intention to represent or assist in representing any plaintiffs (other than Kathryn Schott) in a lawsuit other than this Action against Sephora or any of Sephora's affiliated entities. For the avoidance of doubt, this Paragraph does not prevent Class Counsel from representing any client in any litigation or other legal matter.

12.13   Confidentiality and Publicity. The Parties, Class Counsel, and Defendant's Counsel agree not to make any public statements, including, without limitation, statements to the press or media, statements on websites, and statements on social media (e.g., Twitter, Facebook, Instagram), relating to the Action, any claims asserted or that could have been asserted in the Action, the Refund Claim, or this Settlement Agreement; provided, however, that nothing in this Paragraph will preclude:

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

12.13.1   Any Party or that Party's counsel from making statements, representations, or disclosures that are legally required by any applicable statute, court order, rule, regulation, or disclosure requirement;

12.13.2   Any Party or that Party's counsel from discussing the Action or Settlement Agreement directly with any Settlement Class Members or their representatives in a non-public communication or forum;

12.13.3   Defendant, its counsel, or its representatives from discussing the Action or the Settlement Agreement in responding to inquiries from actual or potential customers;

12.13.4   Any Party or that Party's counsel from responding to statements that appear in the press or media about this Action that are disparaging to the Party or that Party's counsel;

12.13.5   Counsel for any of the Parties from setting forth basic information concerning their participation in the Action (which does not include information about the Refund Amount, the size of the Settlement Fund, or the amount of any payments made pursuant to the Settlement Agreement) on their firms' websites;

12.13.6   Counsel for any of the Parties from setting forth basic information concerning their participation in the Action (which does not include information about the Refund Amount, the size of the Settlement Fund, or the amount of any payments made pursuant to the Settlement Agreement) in their resumes or in court filings in unrelated actions where the experience of counsel is an issue;

12.13.7   Any Party or that Party's counsel from directing a press or media organization to information about the Action and the Settlement Agreement on the law firms' websites, per Paragraph 12.13.5 above; or

12.13.8   Any Party or that Party's counsel from providing a press or media organization, upon request by such organization, with copies of the pleadings or Court orders related to the Settlement Agreement.

12.14   <u>Non-disparagement</u>. Plaintiff and Class Counsel will not make any statements (whether written or oral) relating to the Action, any claims asserted or that could have been asserted in the Action, the Refund Claim, or this Settlement Agreement that disparage, defame, criticize, demean, or otherwise impair the reputation, goodwill, or interests of Sephora or any of the Released Parties. Plaintiff and Class Counsel will not state or imply that the Settlement Agreement in any way reflects or implies the existence of fault, liability, loss, or damage.

12.15   <u>Calculation of Time</u>. If the date for performance of any act required by or under this Settlement Agreement falls on a Saturday, Sunday, federal holiday, or Court holiday, that act may be performed on the next business day with the same effect as if it had been performed on the day or within the period of time specified by or under this Settlement Agreement.

12.16   <u>Change of Time Periods</u>. Any time period, date, or deadline described in this Settlement Agreement may be modified, without notice to the Settlement Class: (a) if set by MDOR or by a Court order, as applicable; and (b) if not set by MDOR or by a Court order, by mutual written agreement of the Parties. The settlement website will advise Settlement Class Members that they may check the Court's calendar, which is available at https://www.moed.uscourts.gov/docket, to confirm whether any Court-ordered time periods, dates, or deadlines have been changed, including the date for the Final Approval Hearing.

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

12.17   <u>Governing Law</u>. This Agreement is intended to and will be governed by the laws of the state of Missouri, without giving effect to any conflicts of law principles.

12.18   <u>Sections, Paragraphs, Recitals, and Exhibits Incorporated</u>. All of the Sections, Paragraphs, Recitals, and Exhibits to this Settlement Agreement are material and integral parts of this Settlement Agreement and are hereby fully incorporated into this Settlement Agreement. If any Exhibit to this Settlement Agreement has not been drafted as of the date of execution of this Settlement Agreement, upon being drafted and agreed upon by the Parties such Exhibit will become a material and integral part of this Settlement Agreement and will hereby be fully incorporated into this Settlement Agreement. All of the Recitals to this Settlement Agreement are true and neither of the Parties will dispute any of them.

12.19   <u>Entire Agreement</u>. This Settlement Agreement, including its Recitals and Exhibits, sets forth the entire agreement and understanding of the Parties with respect to the matters set forth herein and supersedes all prior negotiations, agreements, arrangements, and undertakings with respect to the matters set forth herein. No representations, warranties, or inducements have been made to any party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized within it.

12.20   <u>Modification</u>. This Settlement Agreement may be amended or modified only by written instrument signed by or on behalf of both Parties or their respective successors-in-interest.

12.21   <u>No Waiver</u>. Except as expressly provided in this Settlement Agreement, no provision or breach of this Settlement Agreement is or will be deemed waived or forfeited by any Party except pursuant to a writing signed by that Party expressly stating or affirming such waiver or forfeiture. The waiver by a Party of any provision or breach of this Settlement Agreement will not be deemed a waiver of any other provisions or breaches of this Settlement Agreement.

12.22 <u>Headings for Convenience Only</u>. The headings used herein are for convenience only and are not intended to have legal effect.

12.23 <u>References Include Subdivisions</u>. A reference to a "Section" or "Paragraph" is to a section or paragraph of this Settlement Agreement and includes the terms of all subdivisions of the referenced section or paragraph. For example, a reference to Paragraph 3.1 refers to the terms of the paragraph labeled 3.1 as well as the paragraph labeled 3.1.1, and the paragraph labeled 3.1.2, and so forth.

12.24 <u>Binding Agreement</u>. This Settlement Agreement will be binding upon and inure to the benefit of the Parties' respective heirs, successors, and assigns.

12.25 <u>Notices</u>. All notices required by this Settlement Agreement must be made in writing and communicated either (a) by overnight delivery to all of the applicable mailing addresses below, in which event the notice will be deemed given on the first business day after the date of sending; or (b) by email to all of the applicable email addresses below, in which event the notice will be deemed given on the date of sending. The applicable mailing and email addresses are as follows:

If the notice is to Plaintiff or Class Counsel:

> Daniel J. Orlowsky
> Orlowsky Law, LLC
> 7777 Bonhomme, Suite 1910
> St. Louis, MO 63105
> dan@orlowskylaw.com
>
> -and-
>
> Adam M. Goffstein
> Goffstein Law, LLC
> 7777 Bonhomme, Suite 1910
> St. Louis, MO 63105
> adam@goffsteinlaw.com

If the notice is to Defendant or Defendant's Counsel:

A. James Spung
Mohsen Pasha
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105-3433
james.spung@huschblackwell.com
mohsen.pasha@huschblackwell.com

-and-

Robert E. Shapiro
Joshua W. Mahoney
Michael J. B. Pitt
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 W. Madison St., Suite 3900
Chicago, IL  60606
rob.shapiro@bfkn.com
joshua.mahoney@bfkn.com
michael.pitt@bfkn.com

-and-

Sephora USA, Inc.
ATTN: Eric Baysinger, Vice President and General Counsel
525 Market Street, 15th Floor
San Francisco, CA 94105
eric.baysinger@sephora.com

12.26   <u>Execution in Counterparts</u>. The signatories may execute this Settlement Agreement in counterparts, and such execution will have the same force and effect as if all signatories had signed the same instrument. The Parties may exchange the counterparts in electronic format, such as PDF, and by electronic means, such as email.

12.27   <u>Going Forward Relief: Sephora's Representation Regarding Its Tax Compliance Methodology</u>.  Sephora represents that it has amended its tax compliance methodology to conform with Plaintiff's theory that Missouri use tax applies to retail transactions for the purchase of tangible personal property for which all of the following are true: (a) the transaction is made either

via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora is responsible for calculating tax due on the purchase; (b) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; and (c) the purchaser's delivery address is within the state of Missouri.

      12.28   <u>Drafting the Exhibits</u>. The Parties acknowledge that this Agreement is being signed without having drafted any of the Exhibits A through E, and that the Parties intend to jointly draft and agree upon the form and contents of those Exhibits at a later date, which will be before filing the motion for Preliminary Approval. The Parties agree that each of Exhibits A through E will have a form and contents that are reasonably effective in achieving its intended purpose and will be consistent with this Settlement Agreement. To the extent any dispute arises between the Parties during the drafting of any of Exhibits A through E regarding the form or contents of such Exhibit, no Party may terminate this Agreement solely on the basis of such dispute, but either Party may file a motion with the Court seeking an order resolving the dispute. The Court may make any order it deems appropriate regarding the form or contents of any such disputed Exhibit, except that the Court will not have the power to modify the terms of this Agreement and, accordingly, may not order that any Exhibit have a form or contain any content that is inconsistent with this Agreement or any term thereof.

      IN WITNESS WHEREOF the undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below.

[<em>Signature page follows</em>]

AGREED TO AND ACCEPTED:

**TIFFANY FEMMER**, individually and on behalf of the Settlement Class,

Dated: _December 6, 2021_

Signature: _Tiffany Femmer_

**SEPHORA USA, INC.**

Signature: _____

Name: _____

Dated: _____

Title: _____

APPROVED AS TO FORM AND SUBSTANCE, AND AGREED AS TO PARAGRAPHS 8.3, 12.11, 12.12, 12.13, AND 12.14:

Daniel J. Orlowsky, Esq.
Orlowsky Law, LLC
Counsel for Plaintiff

Dated: _12/6/21_

Signature: _____

Adam M. Goffstein, Esq.
Goffstein Law, LLC
Counsel for Plaintiff

Dated: _12.06.21_

Signature: _____

Robert E. Shapiro, Esq.
Barack Ferrazzano Kirschbaum & Nagelberg LLP
Counsel for Defendant

Dated: _____

Signature: _____

AGREED TO AND ACCEPTED:

**TIFFANY FEMMER**, individually and on behalf
of the Settlement Class,

Dated: _____          Signature: _____

**SEPHORA USA, INC.**

Signature: _____

Name: _____

Dated: 12/06/2021          Title: _____

APPROVED AS TO FORM AND SUBSTANCE, AND AGREED AS TO PARAGRAPHS 8.3,
12.11, 12.12, 12.13, AND 12.14:

Daniel J. Orlowsky, Esq.
Orlowsky Law, LLC
Counsel for Plaintiff

Dated: _____          Signature: _____

Adam M. Goffstein, Esq.
Goffstein Law, LLC
Counsel for Plaintiff

Dated: _____          Signature: _____

Robert E. Shapiro, Esq.
Barack Ferrazzano Kirschbaum & Nagelberg LLP
Counsel for Defendant

Dated: _____          Signature: _____

Page 62                    CLASS ACTION SETTLEMENT AGREEMENT
                           *Femmer v. Sephora USA, Inc.*,
                           Case No. 4:20-cv-00676-JMB

AGREED TO AND ACCEPTED:

**TIFFANY FEMMER**, individually and on behalf of the Settlement Class,

Dated: _____          Signature: _____

**SEPHORA USA, INC.**

Signature: _____

Name: _____

Dated: _____          Title: _____

APPROVED AS TO FORM AND SUBSTANCE, AND AGREED AS TO PARAGRAPHS 8.3, 12.11, 12.12, 12.13, AND 12.14:

Daniel J. Orlowsky, Esq.
Orlowsky Law, LLC
Counsel for Plaintiff

Dated: _____          Signature: _____

Adam M. Goffstein, Esq.
Goffstein Law, LLC
Counsel for Plaintiff

Dated: _____          Signature: _____

Robert E. Shapiro, Esq.
Barack Ferrazzano Kirschbaum & Nagelberg LLP
Counsel for Defendant

Dated: December 4, 2021          Signature: _____

## SCHEDULE OF EXHIBITS

Exhibit A        Short-Form Class Notice (to be sent via email/postcard) [to be drafted]

Exhibit B        Detailed Class Notice (to be posted on settlement website) [to be drafted]

Exhibit C        [Proposed] Preliminary Approval Order [to be drafted]

Exhibit D        [Proposed] Final Approval Order [to be drafted]

Exhibit E        Notice of Final Approval to Accompany Settlement Payment [to be drafted]

Exhibit F        Settlement Timeline [on the following page; to be made into an exhibit upon drafting the other exhibits]

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

**Settlement Timeline**

The following timeline summarizes certain deadlines in the Settlement Agreement and is for convenience and planning purposes only. In the event of a discrepancy between this timeline and the Settlement Agreement terms, the Settlement Agreement terms will control.

| Event | Deadline |
| --- | --- |
| Parties jointly request a Stay of the Action | 7 days after execution of this Agreement |
| Deadline to file Refund Claim | 70 days after the Stay is entered |
| Parties update the Court regarding the progress of the settlement | Every 91 days after the Stay is entered |
| Deadline for Sephora to put money into Settlement Fund | 7 business days after Refund Payment Date |
| Deadline for Plaintiff to file motion for Preliminary Approval | 21 days after Refund Claim is finally resolved and Parties agree on specific dollar amount Sephora must put into Settlement Fund |
| Deadline for Sephora to notify government officials of this Settlement Agreement | 10 days after filing of motion for Preliminary Approval |
| Deadline for Sephora to report the amount of the Net Settlement Proceeds Estimate to the Settlement Administrator | 7 days after Administration Start Date |
| Deadline for Settlement Administrator to establish the settlement website | Before sending Notices (see below) |
| Deadline for Sephora to provide the Class List to the Settlement Administrator | 7 days after Administration Start Date |
| Deadline for Settlement Administrator to send Notices by email (if the Class List contains an email address for the recipient) and postcard (otherwise) | 42 days after Administration Start Date |
| Deadline for Settlement Administrator to mail Notices by postcard for those recipients to whom Notice by email was not delivered ("Notice Date") | 56 days after Administration Start Date |

CLASS ACTION SETTLEMENT AGREEMENT
*Femmer v. Sephora USA, Inc.*,
Case No. 4:20-cv-00676-JMB

| Event | Deadline |
|-------|----------|
| Date for Settlement Administrator to report the number of postcard Notices returned undeliverable | 14 days after Notice Date |
| Deadline for Class Counsel to file a motion that the Court include a Fee Award in the Final Approval Order | 21 days after Notice Date |
| Deadline for Settlement Class Members to postmark objections or exclusion requests ("Objection/Exclusion Deadline") | 49 days after Notice Date |
| Date for Settlement Administrator to provide a list of codes identifying Persons who have submitted timely and complete exclusion requests | 14 days after Objection/Exclusion Deadline |
| Deadline for Plaintiff to file motion for final approval | 14 days before Final Approval Hearing |
| Final Approval Hearing | As set by the Court |
| Deadline for Sephora to grant the Settlement Administrator the right to make disbursements from the Settlement Fund to effectuate the settlement | 7 business days after Effective Date |
| Deadline for Settlement Administrator to pay Fee Award and Service Award | 5 business days after receiving the right to make disbursements from the Settlement Fund |
| Deadline for Settlement Administrator to issue Settlement Payments | 63 days after Effective Date |
| Settlement Payments expire; thereafter, Settlement Administrator must promptly cancel unredeemed payments | 90 days after payments are issued |
| Settlement Administrator pays out remaining amount of Settlement Fund to Legal Services of Eastern Missouri | Promptly after cancelling the last unredeemed payment |