IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TIFFANY FEMMER on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> SEPHORA USA, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) )     Case No. 4:20-cv-00676-JMB |

**DECLARATION OF DANIEL J. ORLOWSKY IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF ATTORNEYS' FEES AND INCENTIVE AWARD**

I, Daniel J. Orlowsky, hereby declare as follows:

1. I am an attorney admitted to practice law in Missouri and before this Court. I am counsel in this action for Plaintiff Tiffany Femmer ("Plaintiff"). I have personal knowledge of the matters set forth in this Declaration, or know of them based on my review of the case records kept in the ordinary course of business, and could and would competently testify to them under oath if called as a witness.

2. I, together with Adam M. Goffstein of Goffstein Law, LLC, have been appointed by the Court to Serve as Class Counsel representing the certified Settlement Class in this matter. This Declaration is being submitted in support of Plaintiff's Motion and Incorporated Memorandum of Law in Support of Approval of Attorneys' Fees and Incentive Award being filed herewith.

*Qualifications & Experience*

3. I spent over eleven years with Thompson Coburn LLP in St. Louis, MO, defending some of the largest and most scientifically complex lawsuits ever brought. These matters include the largest lawsuit in dollar terms ever tried, *United States v. Philip Morris USA et al.*, which was

1

Exhibit 2

a RICO case brought by the United States Department of Justice seeking $280 billion from the tobacco industry, resulting in a trial that lasted nearly ten (10) months, was the subject of intense media coverage, and has been called the largest civil trial in U.S. history; *In re Tobacco Litigation* (IPIC), a mass consolidation of approximately 1,200 individual plaintiffs' personal injury claims challenging the defendants' advertising and labeling practices, which was tried in West Virginia – one of the nation's top-ranked "Judicial Hellholes" – that ended in a defense verdict; and *City of St. Louis v. American Tobacco Co. et al.* where I helped secure a trial victory for a tobacco company in a lawsuit filed against the tobacco industry by dozens of hospitals and health care providers seeking more than $4 billion in compensatory damages which resulted in the largest defense jury verdict in the history of tobacco cost recovery litigation following a three-month trial with testimony from 49 witnesses.

4. In 2016, I started my own law firm, Orlowsky Law, LLC. I now represent consumers whose rights have been infringed in ways that have unfortunately gone largely unnoticed by our legal system. I specialize in allegations of violations of consumer protection statutes. Recently, I was named "Top 100 Trial Lawyer" and "Top 25 Class Action Lawyer" by the National Trial Lawyer's Association.

5. Since starting my own practice, I have brought more than two dozen large class actions. I serves as co-plaintiffs' counsel in the following pending class action cases: *Sally v. Panera Bread Company et al.*, 2022-CC01133-02 (St. Louis City Cir. Ct. filed June 10, 2020) (claims on behalf of a Missouri class for fraudulent, deceptive and misleading marketing of consumer products as "100% clean" and/or "clean" with no artificial preservatives, sweeteners, flavors, or colors from artificial sources"); *Sally v. Adidas America, Inc.*, 20SL-CC03903 (St. Louis County Cir. Ct. filed July 27, 2020) (claims on behalf of a Missouri class for the illegal over

collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *Perry v. Schnuck Markets, Inc.*, 2022-CC10425 (St. Louis City Cir. Ct. filed December 3, 2020 (claims on behalf of a Missouri class for violations of Missouri law by making false and misleading price comparisons in connection with the advertisement and sale of consumer products); *Garcia v. Overstock.com, Inc.*, 21SL-CC00665 (St. Louis County Cir. Ct. filed February 12, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *McKinnon v. Restoration Hardware, Inc.*, 21SL-CC01126 (St. Louis County Cir. Ct. filed March 11, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *Garcia v. Bath & Body Works, LLC, et al.*, 21SL-CC02227 (St. Louis County Cir. Ct. filed May 18, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *Lizama v. Hobby Lobby Stores, Inc.*, 21SL-CC02225 (St. Louis County Cir. Ct. filed May 18, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *Lizama v. Victoria's Secret Stores, LLC et al.*, 21SL-CC02221 (St. Louis County Cir. Ct. filed May 18, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a Missouri delivery address); *Lizama v. Michael's Stores, Inc.*, 21SL-CC03638 (St. Louis County Cir. Ct. filed August 10, 2021) (claims on behalf of a Missouri class for the illegal over collection of excess tax on sales of products through remote sales channels that were shipped from out-of-state to a

Missouri delivery address); *Sally v. Royal Canin USA Inc., et al.*, 2122-CC09472 (St. Louis City Cir. Ct. filed October 6, 2021) (claims on behalf of a Missouri class for fraudulent, deceptive and misleading marketing of consumer pet food products as healthy, safe, nutritional, and without risk to animals); *Boone v. Pepsico, Inc. et al.*, 4:22-CV-00108-AGF (E.D. Mo. filed January 27, 2022) (claims on behalf of National and Missouri classes for fraudulent, deceptive and misleading marketing of consumer food products as containing no artificial preservatives); *Lizama et al. v. Venus Laboratories, Inc. dba Earth Friendly Products, Inc.*, 4:22-CV-00841 (E.D. Mo. filed August 11, 2022) (claims on behalf of Missouri, California, and National classes for fraudulent, deceptive and misleading marketing of consumer products as "non-toxic," "safer," "made without known carcinogens, reproductive toxins, or endocrine disruptors," "climate positive," "Earth Friendly," and/or "sustainable").

### *Goffstein Law, LLC*

6.  Adam M. Goffstein is an attorney admitted to practice law in Missouri and before this Court.  He graduated from University of Colorado Boulder with a B.A. in political Science with minors in English and Sociology in 1990.  Adam Goffstein graduated from the University of Missouri Columbia School of Law in 1994. Adam was admitted to practice law in Missouri in 1994, Colorado in 2005, and Utah in 2010.  Adam Goffstein has never faced disciplinary proceedings from any bar or any court. He began his legal career at the Law Office of Charles M. Shaw, working with an extensive criminal docket and in court most days.  He has represented clients in Municipal, State and Federal Courts on motions, trials, and appeals.  He later helped start the law firm of Antoniou, Goffstein and Antoniou LLC with a primary practice of plaintiff litigation that grew into mass tort and class action law.  In 2005 he started Goffstein Law, LLC with his focus in Plaintiff litigation including mass tort and class action law.  Adam Goffstein has

served as an adjunct professor at Washington University School of Law.  Adam Goffstein has represented thousands of clients on numerous mass tort cases and class action cases including Fen Phen litigation in 2:12-md-01203-HB, *In Re: Diet Drugs (Phentermine/Fenfluramine/Dexfenfluhramine) Products Liability Litigation*; and mesh litigation: WVS/2:12-md-02327, *In Re: Ethicon, Inc. Pelvic Repair System Products Liability*; WVS/2:12-md-02325, *In Re: American Medical Systems, Inc., Pelvic Repair Systems Products Liability Litigation*; WVS/2:12-md-02326, *In Re:  Boston Scientific Corp. Pelvic Repair System Products Liability Litigation*; WVS/2:10-md-02187, *In Re: C.R. Bard, Inc., Pelvic Repair System Products Liability Litigation*.  Adam Goffstein has been the co-lead counsel with me on the numerous class action cases stated in paragraph 4 of this Declaration.  Adam Goffstein has been recognized by *Best Lawyers of America* in 2023 for Mass Tort Litigation/Class Action – Plaintiff.

### *Class Counsel's Contribution to the Case*

7. From the outset of this litigation, Orlowsky Law, LLC and Goffstein Law, LLC anticipated spending hundreds of hours litigating the claims in this matter with no guarantee of success.  Class Counsel understood that prosecution of this case would require that other work be foregone, there was significant uncertainty surrounding the applicable legal and factual issues, and there would be significant opposition from a defendant with substantial resources.

8. Class Counsel assumed significant risk of non-payment in prosecuting this litigation given the formidable legal defenses that Defendant Sephora USA, Inc. ("Defendant" or "Sephora"), and its counsel raised or were prepared to raise had this case proceeded further.  From the outset of this case, Defendant aggressively moved for dismissal on multiple different theories, and indicated that it would further challenge Plaintiff's claims on the merits and at the class certification stage.

5

9. Although this case arose out of a simple consumer transaction, the legal issues involved here were anything but simple and straightforward. This is especially true as Sephora has expressly denied many of Plaintiff's material allegations and has put up a vigorous defense. In the absence of settlement, it is certain that the expense, duration, and complexity of continued litigation would be considerable. Not only would the Parties have to undergo additional motion practice before any trial on the merits, additional evidence and witnesses from across the country would have to be assembled for depositions and as witnesses during any trial.

10. Indeed, throughout this litigation, Sephora and its counsel have raised multiple defenses to Plaintiff's individual claims on the merits and to her ability to represent a class of others subject to the allegedly unlawful tax practices at issue in this case. Had this case not settled, the Parties would have continued with extensive oral and written discovery, including targeted class discovery, and would have engaged in further motion practice on merits issues at the summary judgment stage. Sephora would also have vigorously contested class certification. Achieving certification in this case is extremely challenging due to the sheer volume of consumer transaction data, the potential number of state sales and use tax rates at issue, and the wide geographic distribution of the putative class. Given the financial resources at Sephora's disposal, any final decision favorable to Plaintiff would also have likely been appealed or challenged through post-judgment proceedings.

11. Despite the significant risks involved in continued litigation, Class Counsel were able to obtain an outstanding benefit for the Settlement Class members through the Settlement preliminarily approved by the Court. The work that the attorneys and staff of Orlowsky Law, LLC and Goffstein Law, LLC have committed to this case has been substantial. Among other things, Class Counsel have:

a. Investigating Sephora's business practices and specifically its practices concerning collection of taxes on sales of its products through remote sales channels that are shipped from a facility outside the state of Missouri to a Missouri delivery address;

b. Evaluating the facts giving rise to the claims asserted by Plaintiff and potential defenses thereto and developed those claims;

c. Drafting the initial Class Action Complaint and the First Amended Class Action Complaint in response to Defendant's first Rule 12(b)(6) Motion to Dismiss;

d. Successfully briefed and opposed Defendant's Rule 12(b)(6) motion to dismiss;

e. Engaging in months of ongoing settlement negotiations involving, among other things, the parameters of the Refund Claim Process, how the Parties would work together to perfect the Refund Claim, the settlement administration process, the scope of the release, the compensation provided to putative class members, and the details of the injunctive relief being provided;

f. Keeping the Court informed of the settlement negotiations and Refund Claim Process during numerous Status Conferences;

g. Working closely with the Settlement Administrator to develop a robust notice plan to apprise the Settlement Class Members of the Settlement;

h. Exchanging numerous draft settlement documents with Sephora's counsel, which resulted in the drafting and execution of the finalized Settlement Agreement and related documents, including class notices and the payment process for class members with qualifying purchases;

i. Preparing the final executed Settlement Agreement and related documents;

j. Working with Sephora to prepare the Refund Claim for submission to the MDOR;

k.  Assisting Sephora with the filing of the Refund Claim with the MDOR including traveling to Jefferson City, MO for a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class;

l.  Engaging in constant communication with Sephora and the MDOR via email and held numerous meetings via telephone conferences and video in order to perfect the Refund Claim; and

m.  Drafting and presented the filings in support of approval of the Settlement;

n.  Fielding inquiries about the Settlement from Settlement Class Members; and

o.  Supervising and working with the Settlement Administrator to oversee implementation of the Notice Plan and payment process.

### *Class Counsel's Continuing Efforts Following Preliminary Approval*

12.  In addition to Class Counsel's efforts to secure the Settlement reached here, Class Counsel has also been responsible for supervising notice and payment to Settlement Class Members and responding to Settlement Class Member inquiries in accordance with the terms of the Settlement and this Court's Preliminary Approval Order. To this end, Class Counsel have also received and reviewed weekly reports from the Settlement Administrator and kept track of the corresponding notice and payment data.

13.  The Court-approved Settlement Administrator, Rust Consulting, has informed me that in accordance with the Court's Preliminary Approval Order (Dkt. 70), the notice plan

8

approved by the Court commenced on December 29, 2022. The toll-free phone line and website both went live that same day.

14. The Settlement's Notice Plan features a robust Notice Program that that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase. Sephora prepared a Class List identifying Settlement Class Members and provided it to the administrator that provided the basis for the Notice Plan. The Notice Program is projected to reach at least 70% of the class. The Court-approved Notice Plan consists of a short form notice describing the Settlement via email ("Email Class Notice") to Settlement Class Members. The Email Class Notice includes a link to the Settlement Website where Class Members will find the Settlement details, including the Settlement Agreement and Long Form Notice.

15. Email delivery attempts are tracked, and Rust Consulting has mailed the summary notice via First Class U.S. Mail in the form of a postcard, to any class members without email addresses or whose email notices bounce back. Rust Consulting also mails class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requests it. The Long Form Notice includes detailed information about the Settlement, including answers to frequently asked questions.

16. The Settlement Website is active and can be reached at the following URL: https://missouritaxsettlementsephora.com/Home/portalid/0. The Settlement Website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., objection deadline, final approval hearing date and time, etc.), all relevant court documents (e.g., the Preliminary Approval Order, Settlement Agreement, and this Motion), contact information for Class Counsel, answers to frequently asked questions, and the ability to change payment method.

In addition, the Settlement Website gives detailed instructions for opting out or filing objections. All Notices direct the Settlement Class Members to visit the Settlement Website.

17. There is no claims process. Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase. Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.

18. The Settlement Administrator informs me that as of the date of this Declaration email notices have been sent to 286,186 Settlement Class Members. An additional 13,538 Post Card Notices were mailed to class members without email addresses or whose email notices bounce back.

19. Again, because there is no claims process, Settlement Class Members will automatically received payment via PayPal to the email account that was used to make the Qualifying Purchase. To date, 1,986 Settlement Class Members have opted to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.

20. The Settlement Website is active and has received over 23,661 unique website visitors.

21. To date there have been no objections and only one (1) opt-out request for exclusion by the Settlement Administrator.

22. Going forward, Class Counsel will continue to monitor the administration of the Settlement up to and through final approval and will monitor the distribution of settlement payments by the Settlement Administrator.

### *The Class Representative's Contributions to the Litigation*

23. Plaintiff, Tiffany Femmer, has been closely involved in this litigation from its outset. She has willingly contributed her own time and efforts in prosecuting her claims on behalf of others, and is deserving of the requested incentive award.

24. Prior to filing this case, Ms. Femmer was instrumental in assisting Class Counsel's investigation of her claims and Sephora's tax practices on remote sales transactions, and she has remained fully involved in the litigation through the present. Her efforts and involvement include:

   a. Making herself consistently available to consult with Class Counsel over the phone and by email on numerous occasions to answer questions about the facts underlying her claims;

   b. Providing the necessary evidence and documentation to support her claims;

   c. Reviewing pleadings and case filings; and

   d. Committing many hours of her own time for the benefit of the Settlement Class.

25. Together with Class Counsel, Ms. Femmer has succeeded in obtaining substantial financial relief for the Settlement Class Members. Were it not for Ms. Femmer's efforts and contributions to the litigation by assisting Class Counsel with their investigation and prosecution of her claims, and her monitoring of the case throughout the course of the litigation, the substantial benefit to the Settlement Class Members afforded under this Settlement Agreement would not have been achieved.

26. Ms. Femmer has not received any side payments in this matter, was never promised any payments, and was not guaranteed that she would receive an award of any kind in this litigation. Rather, the requested incentive award is meant to compensate Ms. Femmer for her time, effort, and contributions to this case.

I declare under penalty of perjury that the foregoing is true and correct.

**[Remainder of page intentionally left blank.]**

**FURTHER AFFIANT SAYETH NAUGHT.**

_____          2/15/23
Daniel J. Orlowsky                                        DATE

STATE OF MISSOURI        )
                                            ) SS
COUNTY OF ST. LOUIS    )

Subscribed and sworn to before me this 15th day of February, 2023.

_____
NOTARY PUBLIC

My Commission Expires:

SHERI E. SCHMITT
My Commission Expires
May 6, 2024
St. Louis County
Commission #12503172

13