**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | | |
|---|---|---|
| TIFFANY FEMMER on behalf of herself<br>and all others similarly situated, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 4:20-cv-00676-JMB |
| v. | ) | |
| | ) | |
| SEPHORA USA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S *UNOPPOSED* MOTION AND INCORPORATED MEMORANDUM OF
LAW IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

I.   BACKGROUND ......................................................................................... 3

  A.   FACTUAL BACKGROUND ..................................................................... 3
  B.   PROCEDURAL HISTORY AND THE PARTIES' SETTLEMENT NEGOTIATIONS ...................... 4
  C.   THE REFUND CLAIM ........................................................................... 6
  D.   CLASS COUNSEL'S CONTINUING EFFORTS SINCE PRELIMINARY APPROVAL...................... 8

II.  THE PROPOSED SETTLEMENT ............................................................... 9

  A.   THE SETTLEMENT CLASS ..................................................................... 9
  B.   MONETARY RELIEF AND THE SETTLEMENT FUND....................................... 9
  C.   NON-MONETARY RELIEF ..................................................................... 10
  D.   NOTICE AND SETTLEMENT ADMINISTRATION ........................................ 10
  E.   EXCLUSION AND OBJECTION PROCEDURE............................................. 12
  F.   RELEASE OF LIABILITY ....................................................................... 14
  G.   ATTORNEYS' FEES AND INCENTIVE AWARD ........................................... 14

III. THE SETTLEMENT WARRANTS FINAL APPROVAL................................ 14

  A.   LEGAL STANDARD AT THE FINAL APPROVAL STAGE ................................ 15
  B.   THE SETTLEMENT'S TERMS ARE FAIR, REASONABLE, AND ADEQUATE, TAKING INTO
       ACCOUNT THE FACTORS LISTED IN FEDERAL RULE 23(E)(2)............................ 17
  C.   THE REMAINING *VAN HORN* FACTORS ALSO WEIGH IN FAVOR OF SETTLEMENT .............. 25
  D.   RUST CONSULTING'S IMPLEMENTATION OF THE NOTICE PLAN, WHICH WAS OVERSEEN BY
       CLASS COUNSEL, SATISFIES DUE PROCESS ......................................... 26

IV.  CONCLUSION...................................................................................... 29

# **TABLE OF AUTHORITIES**

## *Cases*

*Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) ...................................................... 21

*Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, (D. Minn. Sept. 18, 2006) ....... 24

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) ............................................................. 17

*Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) ................................................................... 24

*In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741 ................... 19

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ............. 20

*Keil v. Lopez*, 862 F.3d 685, 699 (8th Cir. 2017) ................................................................... 20, 21

*Marshall v. Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) ...................................... 26

*Morgan v. United Parcel Serv. of N. Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996) .............. 18

*Owner–Operator Indep. Drivers Ass'n, Inc. v. New Prime, Inc.*, 213 F.R.D. 537, 544
    (W.D. Mo. 2002), 339 F.3d 1001 (8th Cir. 2003) .................................................................... 18

*Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ........................................ 25, 26

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ........................................................ 27

*Rawa v. Monsanto Company*, 934 F.3d 862, 869 (8th Cir. 2019) ................................................ 20

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082,
    (E.D. Mo. Dec. 8, 2009) ..................................................................................................... 15, 17

*Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020) ......................... 16, 20

*Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ................................. 24

*Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) ........................................... 16, 17, 20, 22

## **Other Authorities**

Conte & Newberg, 4 *Newberg on Class Actions*  (4th ed. 2002) ............................... 12, 13, 16, 25

The *Manual for Complex Litigation* ...................................................................................... 11, 12

**<u>Rules</u>**

Fed. R. Civ. P. 23 .................................................................................................................... passim

## **INTRODUCTION**

Plaintiff Tiffany Femmer, as Class Representative of the Settlement Class, and pursuant to Fed. R. Civ. P. 23(e), respectfully submits this memorandum of law in support of final approval of the Parties' class action Settlement Agreement.[1]  As explained in detail below, the Settlement—reached after almost nine (9) months of negotiations and another ten (10) months spent working together to secure a tax refund from the Missouri Department of Revenue ("MDOR") based on a refund of taxes Sephora USA, Inc. ("Defendant" or "Sephora") collected on certain sales made via its website for shipment to Missouri delivery addresses—is fair, reasonable, and adequate, and has been met with overwhelming support from the Settlement Class Members.  Upon final approval, the Settlement will provide Settlement Class Members with meaningful relief and financial compensation that they otherwise could not have obtained on their own.

Following entry of the Court's Preliminary Approval Order (Dkt. 70), the Settlement's Notice Plan commenced in December 2022, and notice of the Settlement successfully reached hundreds of thousands of Settlement Class Members across the state of Missouri.  As of the close of the notice period, more than 250,000 Settlement Class Members have successfully received notice that they are entitled to receive payment.[2]  Notably, ***there has not been a single objection*** to the Settlement from any of the Settlement Class Members, and only one individual has elected to opt out.

The Settlement Class Members' unanimous support for the Settlement is not unexpected, because the Settlement and the relief it provides are a terrific outcome for the Settlement Class.

---

[1] Unless stated otherwise, capitalized terms used in this Motion are intended to have the meanings given to them in the Parties' Settlement Agreement, a copy of which is attached hereto as Exhibit 1.

[2] *See generally* Declaration of Decl. of Jason M. Stinehart (hereinafter "Stinehart Decl.").

Under the Settlement, Defendant has agreed to pay $2,082,646.03 into a Settlement Fund to be distributed to Settlement Class Members who elect to participate in the Settlement.  There is no claims process.  Each Settlement Class Member will be entitled to receive a *pro rata* share of the Settlement Fund after deductions for Court-awarded Attorneys' Fees, an Incentive Award to the Settlement Class Representative, and the expenses associated with administering the Settlement. Plaintiff and Class Counsel also obtained a commitment from Sephora to amend its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to the types of transactions at issue in this litigation.

The Settlement's relief is especially noteworthy when viewed in light of the real risks involved in continued litigation.  Plaintiff and Class Counsel brought this lawsuit against a defendant with substantial resources, strong legal defenses, and a willingness to litigate through trial and appeal. Had Defendant prevailed either on the merits or in opposing class certification, the Settlement Class Members would have received nothing. Despite these risks, Plaintiff and Class Counsel zealously prosecuted this action ultimately leading to the prompt and just resolution of this litigation for the well-deserved benefit of the Settlement Class Members.

In sum, this Settlement favorably resolves years of contentious litigation and brings certainty, closure, and valuable relief to consumers statewide. The Settlement has received unanimous support from the Settlement Class Members and will yield meaningful relief if finally approved.  Further, the Settlement meets or exceeds applicable standards and its terms are fair, reasonable, and adequate.  In advance of the final fairness hearing set for April 26, 2023, Plaintiff respectfully submits the following memorandum and requests that the Court enter an order (i) granting final approval to the Settlement; (ii) finding that sufficient notice has been

provided to the Settlement Class Members; and (iii) approving Plaintiff's requested award of Attorneys' Fees and an Incentive Award.

## I.      BACKGROUND

### A.      Factual Background

Defendant Sephora operates personal care and beauty stores and maintains an e-commerce website, www.sephora.com.  Dkt. 37 at ¶¶ 6, 27.  Sephora offers beauty products including cosmetics, skincare, body, fragrance, nail color, beauty tools, and haircare.  *Id.*

As alleged in prior filings, Missouri law requires retailers and sellers of consumer goods to charge sales or use tax on the sales of their products to Missouri purchasers.  Dkt. 35 at ¶¶ 1, 23.  Missouri state law mandates that retailers and sellers of consumer goods with tax nexus charge a use tax on sales of their products through remote means, including an internet website, telephone, catalog or other remote communications systems (collectively, "remote sales channel(s)") to Missouri purchasers that are shipped from an out-of-state facility.  *Id.* at ¶¶ 2, 12, 20-24.  The state use tax rate for these sales is 4.225%.  *Id.* at ¶¶ 3, 24, 28.  There may also be additional local use taxes that are imposed on sales made through remote sales channels based on the delivery address of the Missouri purchasers.  *Id* at ¶ 2.  The state use tax rate of 4.225% plus any applicable local use tax impositions is the cumulative use tax rate for any given location.  *Id.* at ¶¶ 2, 12, 24.

Plaintiff claims that, despite clear Missouri law to the contrary, Sephora charged excess "tax" on sales of its products through remote sales channels, including Sephora's internet website, to Missouri purchasers that are shipped from an out-of-state facility to a Missouri delivery address.  *Id.* at ¶ 25.  Plaintiff brought this class action on behalf of herself and all persons and entities who, during the five-year period before the filing of the *Complaint*,

purchased a product from Sephora for personal, family or household use through remote sales channels, including its internet website, that was delivered from an out-of-state facility to a Missouri delivery address and who were charged tax monies at a higher tax rate than the correct applicable use tax rate. *Id.* at ¶ 26.

On January 30, 2020, Plaintiff purchased Sephora Collection Retractable Waterproof Eyeliner from Sephora's website, [www.sephora.com](www.sephora.com), for personal, family or household use for delivery to 102 Trail Drive, Berger, Missouri 63014. *Id.* at ¶ 27. Plaintiff's purchase was shipped from 8500 Nail Road, Olive Branch, Mississippi 38654. *Id.* According to the Missouri Department of Revenue, the applicable use tax rate for sales of products through remote sales channels that are shipped by Defendant from an out-of-state facility for delivery to 102 Trail Drive, Berger, Missouri 63014 on January 30, 2020 is 4.225%. *Id.* ¶ 28. When Plaintiff purchased the Sephora Collection Retractable Waterproof Eyeliner on January 30, 2020, Sephora required Plaintiff Femmer to pay an 11.692% tax rate, resulting in the overcollection of monies. *Id.* at ¶ 29.

Plaintiff subsequently brought this suit on her own behalf and on behalf of a putative statewide class, asserting claims under four counts for: (1) violations of the Missouri Merchandising Practices Act ("MMPA") Mo. Ann. Stat. 407.010 *et seq.*, (2) unjust enrichment, (3) negligence, and (4) money had and received. *Id.* at ¶¶ 46-73.

### B. Procedural History and The Parties' Settlement Negotiations

As the Court is aware, this litigation has been lengthy and contentious. Plaintiff Femmer and Kathryn Schott initiated this lawsuit on March 19, 2020. Dk.t 1. On May 21, 2020, Defendant removed the case to this Court. Dkt. 1. Plaintiff and Kathryn Schott filed a motion to remand the case to state court on June 22, 2020. Dkt. 14. After extensive briefing over the

course of the next few months, this Court denied Plaintiff and Kathryn Schott's motion to remand.  Dkt. 22.

The Parties subsequently engaged in lengthy motion practice related to the pleadings and Kathryn Schott's agreement to arbitrate her claims on an individual basis.  On October 19, 2020, Defendant filed a motion to: (a) stay the case pursuant to Kathryn Schott's agreement to arbitrate, or in the alternative to dismiss pursuant to Rule 12(b)(6); and (b) to dismiss the case with respect to Plaintiff Femmer pursuant to Rule 12(b)(6).  Dkt. 25.

Following briefing, the Court issued an order on February 25, 2021 granting Defendant's motion to stay with respect to Kathryn Schott pursuant to the parties' agreement to arbitrate. Dkt. 34.  The Court further ordered that Defendant's motion to dismiss Plaintiff Femmer's claims pursuant to Rule 12(b)(6) was granted in part and denied in part.  *Id.*  In the Court's Memorandum, Opinion & Order, the Court held that Plaintiff had plausibly alleged claims for unjust enrichment, negligence, and money had and received.  The Court dismissed Plaintiff Femmer's claim under the MMPA without prejudice with leave to amend until March 5, 2021. *Id.*  On March 4, 2021, Plaintiff filed her First Amended Complaint.  Dkt. 35.  And on March 18, 2021, Sephora filed its Answer to Plaintiff's Complaint.  Dkt. 37.

During the month of April 2021, the Parties began to actively discuss settlement.  Ex. 1 at 2.  Over the course of the next six (6) weeks the Parties held numerous telephone conferences, and, in support of these settlement discussions, Sephora shared with Plaintiff's counsel—on a confidential basis and for settlement purposes only—certain data about potential class members and the transactions at issue.  *Id.*  In mid-May 2021, the Parties reached agreement on a general, non-binding framework for settling their disputes, and they agreed to negotiate and jointly draft the Settlement Agreement.  *Id.*  As part of that framework, Sephora agreed to file a Refund Claim with the MDOR, seeking the return of the amount of excess monies Plaintiff contends

Sephora collected as tax on certain sales made via its website for shipment to Missouri delivery addresses, and use any refund received for the class, subject to the terms of the Settlement Agreement. *Id.* at 2-3.

Following the agreement on a general, non-binding framework for settlement, on May 17, 2021, the Parties filed a joint motion requesting a stay from the Court suspending all deadlines in the action relating to adversarial litigation until further order of the Court. *Id.* at ¶ 2.1. The purpose of the stay was to permit the Parties to attempt to consummate the settlement set forth in the Settlement Agreement. *Id.* The Parties further requested that the Court order them to file a joint report every ninety-one (91) days during the stay, to keep the Court informed as to the status of the progress of the settlement. *Id.* at ¶ 2.3. On June 28, 2021, the Court granted the Parties motion to stay.

The Parties' negotiations concerning the contours and specifics of the settlement terms continued over the seven (7) months that followed, including how they would work together during the Refund Claim process, the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement. Once the negotiations concluded, Plaintiff and the Parties' counsel executed the final Settlement Agreement in early December 2021 which is now being submitted to the Court for approval.

### C.    The Refund Claim

Following the entry of the stay, the Parties worked together over the next sixteen (16) months on a Refund Claim that Sephora, with Plaintiff's counsel's input, filed with the MDOR seeking a refund of the amount of tax Sephora charged on certain sales made via its website for shipment to Missouri delivery addresses, subject to the terms of the Settlement Agreement. Ex. 1 at ¶ 3.1. As part of the Settlement Agreement, Sephora agreed to contribute any refunded

6

monies to the Settlement Class and executed a non-exclusive power of attorney limited to sales/use taxes for the Refund Claim that allowed the MDOR to discuss the refund claim with Plaintiff's counsel.  *Id.* at ¶ 3.1.1.

Sephora gathered, researched and reviewed all transactional data made during the Class Period with input from Plaintiff's counsel in order to prepare the necessary amended Missouri use tax returns to reflect the proper state and local use tax that Plaintiff contends should have been collected on remote sales of tangible personal property shipped by, or on behalf of, Sephora from  a "ship-from" location outside the state of Missouri  to a purchaser's delivery address within the state of Missouri.  Sephora engaged the accounting firm of KPMG to assist with that process.   A Missouri Form 472S, Refund Claim Form, the amended returns and other documentation required to support the refund claims were prepared and filed with the MDOR pursuant to §§ 144.190.1, 144.190.2 and 144.190.3.   In lieu of Defendants completing the "Reason for Overpayment" section of the Form 472S, Refund Claim Form, Plaintiffs' counsel drafted and submitted a separate cover letter articulating Plaintiff's argument for why the transactions are subject to use tax rather than sales tax.  *Id.* at ¶ 3.1.2.  The Refund Claim and all supporting documentation was filed with the MDOR on March 3, 2022.

After the Refund Claim was filed with the MDOR, counsel for the Parties traveled to Jefferson City, MO and held a meeting with appropriate MDOR management, including representatives from the General Counsel's Office and the Division of Taxation, to discuss the class action case associated with the claim, the parties' proposed settlement of the class action case, the substantive merits of the refund claim and the parties' intended use of the refund claim monies to fund the payment of damages to members of the class.  *Id.* at ¶ 3.1.4.  Over the course of the last six (6) months, counsel for the Parties have been in constant communication with each

other and the MDOR via email and held numerous meetings via telephone conferences and video in order to perfect the Refund Claim. *Id.* at ¶ 3.1.4.

On July 12, 2022, the MDOR informed Sephora that the Refund Claim was being processed. On July 27, 2022, Sephora received an initial refund payment for $2,029,682.51. And on August 25, 2022, Sephora received the remaining $52,963.52. The total amount of the Refund Claim is $2,082,646.03, which Sephora put into an escrow account that created the proceeds for the Settlement Fund. *Id.* at ¶¶ 3.2, 5.2.

### D. Class Counsel's Continuing Efforts Since Preliminary Approval

Class Counsel have continued to invest significant time and effort in this action following preliminary approval. (Declaration of Daniel J. Orlowsky in Support of Plaintiff's Motion for Final Approval of Class Action Settlement ¶¶ 10-21, hereinafter "Orlowsky Declaration" or "Orlowsky Decl.") The Parties selected Rust Consulting as Settlement Administrator, and Class Counsel have been actively involved in supervising and managing all aspects of Rust Consulting's administration of the Notice Plan. *Id.* Prior to the start of the Notice Period, Class Counsel revised the notices, reviewed the language and content of the Settlement Website to ensure that they were easy to understand, and communicated with opposing counsel regarding notice issues. *Id.* ¶ 11.

Once the Notice Plan began, Class Counsel worked to ensure a smooth notice process by monitoring notice and website activity, responding to inquiries and phone calls from Settlement Class Members, and regularly communicating with the Settlement Administrator. *Id.* ¶ 10. Going forward, Class Counsel will continue to devote their time and effort as this process continues, as well as monitor the distribution of settlement payments by the Settlement Administrator following final approval. *Id.* ¶ 21.

## II.  THE PROPOSED SETTLEMENT

### A.  The Settlement Class

With its Preliminary Approval Order, the Court preliminarily certified the Settlement

Class as:

> [A]l Persons who made at least one Qualifying Purchase, regardless of whether such person is or might be a party to an arbitration agreement or class action waiver with Sephora…

Dkt. 70 at ¶; Ex. 1 at ¶ 1.40.  A Qualifying Purchase is defined as follows:

> [A] retail transaction for the purchase of tangible personal property from Sephora for which all of the following are true: (a) the transaction was made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora was responsible for calculating tax due on the purchase; (b) the transaction was completed between March 01, 2015 through June 30, 2021; (c) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; (d) the purchaser's delivery address was within the state of Missouri; and (e) Sephora charged the purchaser an amount of tax on the transaction that exceeded the Vendor's Use Tax Amount for that transaction. Notwithstanding the foregoing sentence, any transaction on which the purchaser received a refund on the entire transaction will be excluded from "Qualifying Purchases," and where a consumer received a partial refund on a transaction, only the portions of the transaction on which the purchaser did not receive a refund may be a Qualifying Purchase, provided that those portions, standing alone, meet the definition of "Qualifying Purchase" set forth in this Paragraph.

Dkt. 70 at ¶; Ex. 1 at ¶ 1.40.

### B.  Monetary Relief and the Settlement Fund

Plaintiff's and Class Counsel's efforts have yielded a Settlement that provides immediate

monetary compensation to consumers statewide.  The Settlement establishes a Settlement Fund

of $2,082,646.03.  *Id.* at ¶ 5.2   The entire amount of the Class Settlement Amount will be

distributed pro rata to Settlement Class Members from the Settlement Fund after deductions for

Notice and Administration Expenses and any Court-awarded Attorneys' Fees and Litigation

Expenses and a Service Award payment to Plaintiff will also be distributed from the Settlement

Fund.  *Id.* at ¶ 5.1.

Because the Net Settlement Amount is being distributed to Settlement Class Members pro rata, the amount of individual payments will ultimately depend on the number of Qualifying Purchases that were made during the class period. *Id.* at ¶ 1.26. By the close of the notice period, more than 280,000 Settlement Class Members have successfully received notice that they are entitled to receive payment. As such, Class Counsel estimate that each Settlement Class Member will receive an individual payment ranging from $0.01 - $1,433.93, for an average payment of $7.33 depending on their Qualifying Purchase(s). This payment amount is strong given that the claims at issue here arise out of relatively small consumer transactions and the amount of per-person damages is likewise small. Dkt. 37 at ¶¶ 27-29 (describing Plaintiff's transaction where Sephora allegedly collect excess taxes from Plaintiff).

### C.     Non-Monetary Relief

In addition to the Settlement's monetary relief, the Settlement also provides meaningful prospective relief to every Settlement Class Member and Missouri consumers in general. Sephora represents that it has amended its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to retail transactions for the purchase of tangible personal property for which all of the following are true: (a) the transaction is made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora is responsible for calculating tax due on the purchase; (b) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; and (c) the purchaser's delivery address is within the state of Missouri. *Id.* at ¶ 12.27.

### D.     Notice and Settlement Administration

The Court approved the Parties' choice of Rust Consulting, to conduct notice and administration. Following entry of the Court's Preliminary Approval Order, Rust Consulting began effectuating notice under Class Counsel's supervision. Orlowsky Decl. ¶¶ 10-18;

Stinehart Decl. ¶¶ 2-11.  To that end, Rust Consulting has been responsible for effectuating the Notice Plan, launching the settlement website, and receiving payment check requests.  *Id.*

As explained in Plaintiff's preliminary approval motion, and outlined in the exhibits attached thereto, the Parties and Rust Consulting have developed a robust Notice Plan that will attempt to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase.  *Id.* at ¶¶ 2-9, Ex. A, B, C.  The Court-approved Notice Plan, outlined in Exhibit 1 and the Stinehart Decl. along with Exhibits A, B, and C attached thereto, included: direct notice via email, with postcard notice being mailed to class members without email addresses.  Ex. 1 at ¶ 6.7; Stinehart Decl. at ¶¶ 2-11.  Sephora prepared a Class List identifying Settlement Class Members and provided it to the administrator that will provide the basis for the Notice Plan.  Ex. 1 at ¶ 6.2.  The Class List provided Rust Consulting with a mail and email address for all class members.  Stinehart Decl. at ¶ 3.  Rust Consulting sent a short form notice describing the Settlement via email ("Email Class Notice") to Settlement Class Members.  *Id.* at ¶¶ 4-5, Ex. C.  The Email Class Notice included a link to the Settlement Website where Class Members can find the Settlement details, including the Settlement Agreement and Long Form Notice.  *Id.*

The format and language of the notices were carefully drafted in straightforward, easy-to-read language in order to apprise Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to, their right to object to the Settlement or opt-out, and the amount of attorneys' fees that could be sought as an award for Class Counsel. Stinehart Decl., Exs. A, B, C.  The notices also invited Settlement Class Members to visit the Settlement Website, where they were able to submit a claim or review more detailed information.  *Id.*

Email delivery attempts were tracked, and Rust Consulting mailed the summary notice via First Class U.S. Mail in the form of a postcard ("Postcard Notice"), to any class members

without email addresses or whose email notices bounce back.  *Id.* at ¶¶ 7-9, Ex. B.  Rust Consulting was prepared to mail class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requested it.  Ex. C.  The Long Form Notice included detailed information about the Settlement, including answers to frequently asked questions.  *Id.*

The Settlement Website, which is presently still live, can be reached at the following URL: https://www.MissouriTaxSettlementSephora.com.  The Settlement Website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., objection deadline, final approval hearing date and time, etc.), all relevant documents (e.g., the Preliminary Approval Order, Settlement Agreement, and this Motion), contact information for Class Counsel, and other important court filings.  In addition, the Settlement Website gave detailed instructions for opting out or filing objections.  As of April 12, 2023, there have been over 27,000 unique visitors to the website.

There is no claims process.  Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  Stinehart Decl., Exs. A, B, C.  Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.*

The costs of effectuating notice, communicating with Settlement Class Members, establishing the Settlement Website, and disbursing individual payments will be paid out of the Settlement Fund.  Ex. 1 at ¶ 5.7.

### E.    Exclusion and Objection Procedure

As part of the Notice Plain, all Settlement Class Members were notified of their opportunity to exclude themselves from the Settlement or object to its approval.  The procedures

and deadlines for filing opt-out requests and objections were explained on the Settlement Website and in the Detailed Notice which advised Settlement Class Members of their rights: (a) to exclude themselves from this Settlement Agreement and forego its benefits but preserve any rights they may have to pursue claims against Sephora; and (b) to object to this Settlement Agreement personally or through counsel. *Id.* ¶¶ 6.1, 7.1; Stinehart Decl., Exs. A, B, CC.  The settlement website included a fillable online "Opt-Out Form" that Settlement Class Members could use to exclude themselves from the Settlement Agreement.  Ex. 1 at ¶ 7.1-7.2.  Further, any Settlement Class Member other than Plaintiff were given the opportunity to object to the Settlement Agreement by mailing a letter via first class mail to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline.  *Id.* at ¶ 7.3.

The Settlement Website also informed Settlement Class Members that there will be a final approval hearing, which will be their opportunity to appear and have their objections heard. *Id.* at ¶ 6.1.  Finally, the Settlement Website and Detailed Notice also explained that all Settlement Class Members are bound by the release contained in the Settlement Agreement unless they properly exercise their right to exclude themselves.  *Id.* at ¶ 7.1.

In Plaintiff's Motion in Support of Approval of Attorneys' Fees and Incentive Award, Plaintiff reported that there had been no objections received by the Settlement Administrator or Class Counsel, and there was only one opt-out.  Dkt. 71, the "Fee Award Motion."  Orlowsky Decl. ¶¶ 19-20; Stinehart Decl. ¶ 12.  More importantly, there had not been any objections to the Settlement filed with the Court or received by the Settlement Administrator.  *Id.*  That remains true as of the date of this filing.  The absence of any opposition to the Settlement, coupled with the near-universal preference to remain in the Settlement Class, demonstrates the Settlement Class Members' strong support for the Settlement.

### F.      Release of Liability

In exchange for the relief described above, Settlement Class Members who do not exclude themselves will provide Defendant and its affiliated entities and other Releasees a full release of all claims arising out of, related to, or connected with the alleged facts, circumstances, and occurrences underlying the claims in this matter, as detailed in Section 10 of the Settlement Agreement. *Id.* at ¶¶ 10.1-10.3.

### G.      Attorneys' Fees and Incentive Award

Subject to Court approval, any award of attorneys' fees and any incentive award are to be paid out of the Settlement Fund.  Ex. 1 ¶¶ 5, 8.  Class Counsel's requested award of Attorneys' Fees and proposed Incentive Award are detailed in Plaintiff's separately filed Fee Award Motion submitted on February 15, 2022.  Dkt. 72.  Pursuant to the Settlement Agreement, Class Counsel agreed to limit their request for attorneys' fees to no more than 40% of the total Settlement Fund. Ex. 1 ¶ 5.4.1.  Class Counsel requested attorneys' fees of $749,752.57 in their Fee Award Motion, which is equal to 36% of the total settlement fund.  Dkt. 72 at 2.  The Fee Award Motion also included a request that the Court approve an Incentive Award for Plaintiff as Class Representative in the amount of $5,000.  Dkt. 72 at 28-29.  Defendant does not oppose the requested awards, nor have there been any objections or complaints from the Settlement Class Members as to Plaintiff's requested awards.  Orlowsky Decl. ¶¶ 19-20; Stinehart Decl. ¶ 12.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

Upon final approval, the Settlement reached in this matter will provide Settlement Class Members with meaningful benefits that they otherwise would not, or could not, have achieved on their own or through an individual action.  In addition, by virtue of the Settlement's robust Notice Plan, the Settlement Class Members were informed of their rights under the Settlement. Because the Settlement reached by the Parties is fair, reasonable, and provides meaningful

compensation to the Settlement Class Members, and because the Notice Plan effectively notified Settlement Class Members of their rights under the Settlement Agreement, the Settlement warrants final approval by the Court.

A.     **Legal Standard at the Final Approval Stage**

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38–39 (4th ed. 2002); *Manual for Complex Litigation*, § 21.632 (4th ed. 2004); *see, e.g., Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05-CV-01108, 2009 WL 4782082, at *2 (E.D. Mo. Dec. 8, 2009). The first step of this process is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg* § 11.25, at 38–39; *Schoenbaum*, 2009 WL 4782082, at *3. If the Court finds that the settlement proposal is "within the range of possible approval," notice will issue, and the case will ultimately proceed to the second step in the review process: the final approval hearing. *Newberg* § 11.25, at 38–39.

Here, preliminary approval has been granted and the claims period has concluded, so the Parties and the Court are now at the second and final step. Under Federal Rule 23(e)(2) a court may finally approve a class settlement "after a hearing and only on finding that it is fair, reasonable, and adequate" and after considering the factors listed in Fed. R. Civ. P. 23(e)(2). These factors are:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i)   the costs, risks, and delay of trial and appeal;

(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3);

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  At the preliminary approval stage, the Court found, pursuant to Federal Rule 23(e)(1)(B), that the Settlement preliminarily satisfied all of the above factors.  Dkt. 70. The final approval process now provides an opportunity for the Court to revisit these factors with the benefit of claims data and feedback from the Settlement Class Members. Fed. R. Civ. P. 23(e)(2).[3]

In addition to the factors codified in Rule 23(e)(2), courts in the Eighth Circuit also consider several factors articulated in case precedent, stemming from the Eighth Circuit's seminal decision in *Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988), to determine whether a settlement is fair, reasonable, and adequate.[4]  The four *Van Horn* factors include: "the merits of the plaintiff's case, weighed against the terms of the settlement; the defendant's financial condition; the complexity and expense of further litigation; and the amount of opposition to the settlement." *Id.* at 607.  The *Van Horn* factors substantially overlap with those

---

[3] The first two factors in subsections (A) and (B) do not require reanalysis because these factors "identify matters that might be described as 'procedural' concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e) advisory committee notes.

[4] The specific considerations in Rule 23(e)(2)(A)-(D) added as part of the 2018 amendments "were not intended to displace the various factors that courts have developed in assessing the fairness of a settlement."  Fed. R. Civ. P. 23 advisory committee notes.  Rather, the factors are meant "to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*  It is thus appropriate for the Court to consider the Rule 23(e)(2) factors along with the *Van Horn* Factors. *Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 860 (S.D. Iowa 2020), 454 F. Supp. 3d at 860.

listed in Rule 23.  As such, courts in this Circuit have held that the first and third *Van Horn* factors can be properly assessed alongside Federal Rule 23(e)(2)(C)(i) due to their similarities. *Swinton*, 454 F. Supp. 3d at 861 (noting that analysis of Federal Rule 23(e)(2)(C)(i) "will necessarily include analysis of two related *Van Horn* Factors: 'the merits of the plaintiff's case, weighed against the terms of the settlement' and 'the complexity and expense of further litigation.'").  Accordingly, these factors are addressed together with Federal Rule 23(e)(2)(C)(i) below.  The remaining two *Van Horn* factors will be discussed separately.  Here, all relevant factors—both codified and from common law—weigh in favor of finally approving the Parties' Settlement.

Finally, where a Court certifies a class for the purposes of settlement under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances . . . ." Fed. R. Civ. P. 23(c)(2)(B); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).  Here, this has been accomplished through implementation of the Settlement's Notice Plan, which satisfies Due Process and included a variety of forms of notice that reached at least 70% of the class.  Orlowsky Decl. ¶¶ 15-17; Stinehart Decl. ¶¶ 3-9.

**B.   The Settlement's Terms Are Fair, Reasonable, And Adequate, Taking Into Account The Factors Listed In Federal Rule 23(e)(2)**

**1.   Plaintiff and Class Counsel have capably represented the Settlement Class Members and will continue to do so**

The adequacy requirement—that the representative parties will fairly and adequately protect the interests of the class—is met if: (1) "the plaintiff's attorney is qualified, experienced, and will competently and vigorously prosecute the suit"; and (2) "the interest of the class representative is not antagonistic to or in conflict with other members of the class." *Schoenbaum,* 2009 WL 4782082, at *7; *see also Owner–Operator Indep. Drivers Ass'n, Inc. v.*

17

*New Prime, Inc.*, 213 F.R.D. 537, 544 (W.D. Mo. 2002), aff'd, 339 F.3d 1001 (8th Cir. 2003).  In the absence of proof to the contrary, courts presume that class counsel is competent.  *See Morgan v. United Parcel Serv. of N. Am., Inc.*, 169 F.R.D. 349, 357 (E.D. Mo. 1996).

Here, Class Counsel's adequacy is evident from: Class Counsel's extensive experience in the field of class action litigation in general and consumer class action litigation in particular, (Orlowsky Decl. ¶¶ 3-6); Class Counsel's vigorous prosecution of this matter throughout the lengthy history of this case, (*id.* ¶¶ 7-9); the extensive and often contentious motions practice in this litigation (*id.* ¶ 9); the multiple months of arm's-length settlement negotiations, (*id.*); and the outstanding relief obtained on behalf of the Settlement Class Members, along with many other indicators of Class Counsel's capable representation of the Settlement Class in this matter.

Additionally, following preliminary approval, Class Counsel have continued to zealously represent the Settlement Class Members and protect their interests. This has included: reviewing the Settlement Website and notices to ensure readability; regularly corresponding with the Settlement Administrator in order to assure smooth implementation of the Notice Plan; and responding to inquiries from Settlement Class Members.  *Id.* ¶¶ 12, 18.  Upon final approval, Class Counsel will continue to monitor Rust Consulting's distribution of payments and answer questions from Settlement Class Members.  *Id.* ¶ 23.  Thus, the first factor under Rule 23(e)(2) is satisfied because Class Counsel is "qualified, experienced, and will competently and vigorously prosecute the suit."  *See Schoenbaum*, 2009 WL 4782082, at *7 (citing *Morgan*, 169 F.R.D. at 357).

## 2. The Settlement was negotiated at arm's-length

Because the second factor concerns negotiations that occurred prior to preliminary approval, the facts relevant to this factor have already been presented to the Court. *See* Rule 23(e) advisory committee notes.

As stated in Plaintiff's Motion for Preliminary Approval, the Settlement in this matter is the product of arms-length negotiations between counsel for both Parties.  As such, there is an initial presumption that a proposed settlement is fair, reasonable, and adequate when it was the result of arms-length negotiations.  *Newberg* § 11.41-11.42 (observing that courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval."); *In re Charter Commc'ns, Inc., Sec. Litig.*, No. 4:02-CV-1186, 2005 WL 4045741, at *1, 5 (E.D. Mo. June 30, 2005) (finding that negotiations were at "arm's-length" where they were conducted between informed and experienced counsel and supervised by a retired federal judge acting as a mediator).

Additionally, the Parties were only able to reach agreement as to the Settlement after multiple months of protracted litigation and lengthy negotiations which took over eight (8) months in order to establish the contours of the Settlement Agreement, including how they would work together during the Refund Claim process, the scope of the release, the form of class notice, the claims submission process, and the various provisions governing implementation of the Settlement Agreement.  Even after the Parties finalized the Settlement Agreement, the Parties worked together for another six (6) months in order to secure the Refund Claim from the MDOR that established the Settlement Fund.  The contentiousness of these negotiations, as well as the Parties' efforts to keep this Court informed of every step of the Refund Claim process, including the negotiations themselves, demonstrate that the Settlement was negotiated at arm's-length, free of collusion.

Given the tenacity with which this case has been litigated, the efforts to secure the Refund Claim on behalf of the Settlement Class, coupled with the excellent result obtained on behalf of the Settlement Class Members in terms of both the monetary and nonmonetary relief being made available, it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties. Thus, this factor also weighs in favor of final approval.

### 3. The Settlement provides adequate relief to the Settlement Class Members taking into account the factors set out in Rule 23(e)(2)(C)(i-iv)

#### i. The Settlement will deliver valuable relief while avoiding the considerable costs, risks, and delays of trial and appeal

In assessing whether the relief provided under a settlement is adequate, courts must weigh the immediate benefits of a settlement against the additional time and expense that would be required to achieve a litigated judgment. *See, e.g.*, *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005) ("barring settlement, this case would 'likely drag on for years, require the expenditure of millions of dollars, all while the class members would receive nothing'"). Additionally, because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory. *Rawa v. Monsanto Company*, 934 F.3d 862, 869 (8th Cir. 2019) ("a settlement is a product of compromise and the fact that a settlement provides only a portion of the potential recovery does not make such settlement unfair, unreasonable or inadequate.") (quoting *Keil v. Lopez*, 862 F.3d 685, 699 (8th Cir. 2017)). As stated above, analysis of Rule 23(e)(2)(C)(i) can properly fold in *Van Horn* factors one and three due to the substantial degree of overlap. *Swinton*, 454 F. Supp. 3d at 861.

Under the Settlement Agreement here, every Settlement Class Member shall be entitled to receive a *pro rata* share of the Settlement's $2,082,646.03 Settlement Fund after deductions for Court-approved fees, costs, and expenses as set forth in the Settlement Agreement. Given the relatively low amount of damages at issue on a per-person basis here, this is an excellent result.

Further, the Settlement provides additional value to the Settlement Class Members beyond just the Settlement's monetary relief.   Specifically, the Settlement also provides meaningful prospective relief to every Settlement Class Member and Missouri consumers in general.   Sephora represents that it has amended its tax compliance methodology to conform to Plaintiff's theory that Missouri use tax applies to retail transactions for the purchase of tangible personal property for which all of the following are true: (a) the transaction is made either via Sephora's website, www.sephora.com, or via another remote sales channel for which Sephora is responsible for calculating tax due on the purchase; (b) the purchased property was shipped by or on behalf of Sephora from a location outside the state of Missouri; and (c) the purchaser's delivery address is within the state of Missouri.  *Id.* at ¶ 12.27.  This benefits all Settlement Class Members, a significant percentage of whom are repeat Sephora customers.   Even individuals who are not Settlement Class Members that did not make a Qualifying Purchase stand to benefit from this prospective relief.  As a result, the total benefits being made available to the Settlement Class actually go beyond the monetary relief, and the value of the Settlement's prospective relief can properly be included by the Court in assessing the overall value of the Settlement.  *Keil*, 862 F.3d at 697 (citing *Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 84 (1st Cir. 2015) (finding that "[t]he district court did not abuse its discretion in concluding that injunctive relief against continuation of the allegedly false advertising was 'a valuable contribution to this settlement agreement.'")).

The substantial benefits being made available to Settlement Class Members are even more notable in light of the significant legal challenges that Plaintiff would have needed to overcome had this case not settled. Orlowsky Decl. ¶¶ 8-9.  While Plaintiff believes that she would ultimately prevail on the merits at trial, she understands that Defendant has expressly

denied many of her material allegations and has vigorously defended this case from the outset of the litigation. *Id.* Were this case to continue, the Parties would have to complete class and expert discovery along with any related motion practice, brief class certification, and conduct depositions of individuals and experts across the country in preparation for the summary judgment stage and trial. *Id.* In addition, the losing party would likely appeal both any decision on the merits as well as any decision on class certification.

As such, final approval of the Settlement will put to rest what has been and would surely continue to be time consuming and costly litigation. *Id.* Further, final approval will allow Plaintiff and the Settlement Class Members to receive compensation immediately and without the expense and risks inherent in pressing the litigation further. As such, Rule 23(e)(2)(C)(i) and *Van Horn* factors one and three weigh heavily in favor of final approval.

### ii. The Settlement provides an efficient and effective method of notifying and distributing relief to the Settlement Class Members

Pursuant to the Parties' agreement, notice and administration has been carried out by nationally recognized notice and claims administrator, Rust Consulting, subject to the Parties' supervision. (Ex. 1 at ¶¶ 6-7 ¶ 8; Orlowsky Decl. ¶¶ 10-21; Stinehart Decl. ¶¶ 2-11. To reach as many Settlement Class Members as possible, Rust Consulting carried out a Notice Plan that that attempted to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase. Stinehart Decl. at ¶¶ 2-9, Exs. A, B, C. This was carefully designed to be the best practicable way of informing the Settlement Class Members of the Settlement.

The Notice Plan has proven to be extremely successful at notifying potential Settlement Class Members and informing them of the Settlement. Defendant's Counsel provided Rust Consulting with the Class List containing names, mailing addresses, email addresses, and refund amounts for 289,799 Settlement Class Members. Stinehart Decl. at at ¶¶ 3-5. Prior to sending

notice, Rust submitted the Class List through the USPS NCOA database. *Id.* The NCOA database contains requested changes of address which have been filed with the USPS and are currently in effect within the past 48 months. *Id.*

Beginning on December 29, 2022 and ending on December 31, 2022, the Short-Form Notice was sent by email to 286,186 class members. *Id.*; *Id.*, Ex. A. Of the emailed Notices, 19,031 failed delivery. Stinehart Decl. at ¶ 7. Of those failed notices, 13,532 had sufficient information to send Summary Notice via U.S. Mail. *Id.* at ¶¶ 7-9. On December 29, 2022, Rust established an automated toll-free number with pre-recorded information concerning the Settlement. *Id.* at ¶¶ 10-11. The toll-free number includes functionality allowing callers to request a copy of the Detailed Class Notice. *Id.* As of April 9, 2023, there have been 45 calls to the toll-free number. *Id.* Also on December 29, 2022, Rust established a website where Settlement Class Members can submit their request to have their payment sent to them as a physical check. *Id.* Complete copies of the Settlement Agreement, the Preliminary Approval Order, and the Detailed Class Notice can also be viewed and downloaded on the Settlement website. *Id.* As of April 9, 2023, there have been 27,400 unique visitors to the website. *Id.*

In sum, the Notice Plan was fairly and efficiently designed to distribute relief to the Settlement Class Members. Should the Court finally approve the Settlement, Rust consulting will transmit payments promptly to Settlement Class Members who submitted Approved Claims. Ex. 1 at ¶¶ 5.8.4-5.8.6. And until the distribution of the benefits under the Settlement is completely seen through, Class Counsel will continue to supervise Rust Consulting's efforts and ensure that the Settlement Class Members receive their payments. Orlowsky Decl. ¶ 21. This factor therefore also supports granting final approval.

### iii.   Plaintiff's requested fee award is reasonable and well-earned

On February 15, 2023, Plaintiff filed her Fee Award Motion.  Dkt. 72.  In that Motion, Class Counsel explained and provided ample support for their request for an award of attorneys' fees of $749,752.57.  Dkt. 72 at 2.  The requested fee award—representing 36% of the $2,082,646.03 Settlement Fund—falls well within the range of attorneys' fees awarded in similar settlements.  *See e.g., Tussey v. ABB, Inc.*, 2019 WL 3859763, at *4 (W.D. Mo. Aug. 16, 2019) ("a one-third fee is a common benchmark in private contingency fee cases," and courts in this Circuit and this District have "frequently awarded attorney fees of 33 1/3%–36% of a common fund."); *In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (affirming fee award representing 36% of the settlement fund as reasonable)); *Carlson v. C.H. Robinson Worldwide, Inc.*, 2006 WL 2671105, at *8 (D. Minn. Sept. 18, 2006) (awarding 35.5% of the settlement fund); *Huyer v. Buckley*, 849 F.3d 395, 399 (8th Cir. 2017) (noting that courts in the Eighth Circuit and in Missouri "have frequently awarded attorneys' fees ranging up to 36% in class actions.").  In the almost two (2) months since filing the Fee Award Motion, Class Counsel have not received any objections or complaints regarding the requested award.  Orlowsky Decl. ¶ 20; Stinehart Decl. ¶ 12.

### iv.   Apart from the Settlement Agreement, there have been no other agreements made in connection with the Settlement

As stated in Plaintiff's Motion for Preliminary Approval, with respect to the final subfactor of Rule 23(e)(2)(C), there are no side agreements to be identified under Rule 23(e)(3).

### 4.   The Settlement treats the Settlement Class Members equitably relative to each other

In its Preliminary Approval Order, the Court certified one Settlement Class.  Dkt. 70. The terms of the Settlement apply uniformly across that Settlement Class, and each Settlement Class Member has had the same opportunity to receive the same benefits under the Settlement.

*See* Ex. 1 ¶ 5.8.4.  Indeed, there was no claims process.  Further, each Settlement Class Member was subject to the same deadlines for objections and exclusions.  As a result, no group of Settlement Class Members was unfairly advantaged or disadvantaged. Accordingly, this factor also weighs in favor of granting final approval.

### C.    The Remaining *Van Horn* Factors Also Weigh in Favor of Settlement

#### 1.  Defendant has the ability to pay for the Settlement

Absent settlement, Sephora would likely incur significant litigation costs that could otherwise be preserved for distribution to the Settlement Class Members.  If the case were to proceed, the Parties could expect to collectively spend hundreds of thousands of dollars in additional discovery costs and attorney time on merits issues alone, not including the additional cost of briefing class certification and further motion practice through trial.   Resolving this matter now preserves these financial resources for the purpose of providing immediate relief to the Settlement Class Members and for covering the costs of notice and distribution to the Settlement Class Members, including payment of claims, and the Settlement Administrator's fees and expenses in implementing the Notice Plan.

The Parties have negotiated a Settlement that provides substantial relief to the Settlement Class Members that Sephora has the ability to pay by agreeing to contribute all of the monies obtained from the Refund Claim to the Settlement Class after deductions for Court-awarded Attorneys' Fees, an Incentive Award to the Settlement Class Representative, and the expenses associated with administering the Settlement.  *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999) ("In addition to assessing the relative merits of the plaintiffs' claims, a court, in examining the compensation provided by a settlement, should consider the defendant's ability to pay," along with "the anticipated length and complexity of further litigation[.]"); *Marshall v.*

*Nat'l Football League*, 787 F.3d 502, 512 (8th Cir. 2015) (noting that a defendant's financial condition is a neutral factor when the defendant is "in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation."). And, as explained above, resolving this matter preserves these financial resources for distribution to the class members, rather than Sepohora's costs of defense. Accordingly, this factor also supports granting final approval.

### 2. The Settlement has received no opposition or objections

The final *Van Horn* factor to consider is "the amount of opposition to the settlement." 840 F.2d at 607. Here, of the hundreds of thousands of individuals who received notice, only one individual opted out of the Settlement and zero objections were received. Orlowsky Decl. ¶¶ 19-20; Stinehart Decl. ¶ 12. This lack of opposition to the Settlement is indicative of its quality and attractiveness to Settlement Class Members. Accordingly, this factor weighs in favor of final approval.

### D. Rust Consulting's Implementation of the Notice Plan, Which Was Overseen by Class Counsel, Satisfies Due Process

In certifying a settlement class under rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Due Process requires that the notice contain relevant information in plain, easily understood language, including the nature of the action, the class definition(s), the claims, and the rights of class members. Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii)*; see Petrovic*, 200 F.3d at 1153. As explained by the United States Supreme Court, Due Process does not require actual notice to every individual; rather notice need only be the "best practicable, reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an

26

opportunity to present their objections" as well as "describe the action and the plaintiffs' rights in it." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (internal quotations omitted).

The Notice Plan implemented here has satisfied Due Process. As set forth in detail in the attached Stinehart Declaration, Rust Consulting carried out a robust notice plan.

As explained in Plaintiff's preliminary approval motion, and outlined in the exhibits attached thereto, the Parties and Rust Consulting carried out a robust Notice Plan that attempted to provide Direct Notice to each and every Settlement Class Member that made a Qualifying Purchase.   Stinehart Decl. at ¶¶ 2-9, Exs. A, B, C.  The Court-approved Notice Plan, outlined in Exhibit 1 and the Stinehart Decl. along with Exhibits A, B, and C attached thereto, included: direct notice via email, with postcard notice being mailed to class members without email addresses.   Exhibit 1 at ¶ 6.7; Stinehart Decl. at ¶¶ 2-9.   Sephora prepared a Class List identifying Settlement Class Members and provided it to the administrator that will provide the basis for the Notice Plan.  Ex. 1 at ¶ 6.2; Stinehart Decl. at ¶ 3.  The Class List provided Rust Consulting with a mail and email address for all class members.  *Id.*  Rust Consulting sent a short form notice describing the Settlement via email ("Email Class Notice") to each of the 289,799 Settlement Class Members.  *Id.* at ¶¶ 3-4, Ex. A.  The Email Class Notice included a link to the Settlement Website where Class Members can find the Settlement details, including the Settlement Agreement and Long Form Notice.  *Id.*

The format and language of the notices were carefully drafted in straightforward, easy-to-read language in order to apprise Settlement Class Members of all material aspects of the Settlement, such as the relief they are entitled to, their right to object to the Settlement or opt-out, and the amount of attorneys' fees that could be sought as an award for Class Counsel. Stinehart Decl., Exs. A, B, C.  The notices also invited Settlement Class Members to visit the Settlement Website, where they were able to submit a claim or review more detailed information.  *Id.*  Email

delivery attempts were tracked, and Rust Consulting mailed the summary notice via First Class U.S. Mail in the form of a postcard ("Postcard Notice"), to any class members without email addresses or whose email notices bounce back.  *Id.* at ¶¶ 7-9, Ex. B.  Rust Consulting was also prepared to mail class notice via First Class U.S. Mail in the form of a Long Form Notice to any potential class member who requests it.  Ex. C.  The Long Form Notice included detailed information about the Settlement, including answers to frequently asked questions.  *Id.*  The final versions of the claim form, short form notice, and long form notice are included as attachments to the Stinehart Declaration filed herewith. Together, those notices apprised the Settlement Class Members of the pendency of the action and afforded them an opportunity to submit questions about the Settlement or any objections.

The Settlement Website, launched on December 29, 2022 and is presently still live, can be reached at the following URL: https://www.MissouriTaxSettlementSephora.com.  The Settlement Website contains all of the important information related to the Settlement, including key dates and deadlines (e.g., objection deadline, final approval hearing date and time, etc.), all relevant documents (e.g., the Preliminary Approval Order, Settlement Agreement, and this Motion), contact information for Class Counsel, and other important court filings.  In addition, the Settlement Website gave detailed instructions for opting out or filing objections.

There is no claims process.  Class members will automatically receive payment via PayPal to the email account that was used to make the Qualifying Purchase.  Stinehart Decl., Exs. A, B, C.  Class members may opt to receive a check in the form of a postcard by completing and submitting a Payment Method Selection Form online at www.MissouriTaxSettlementSephora.com.  *Id.*

Finally, pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715, Sephora's counsel, on behalf of Sephora, sent the required notice to the appropriate government entities. *Id.* § 1715(b).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff Tiffany Femmer respectfully requests that the Court enter an order: (1) finding that the Settlement is fair, reasonable, and adequate; (2) granting final approval to the Settlement; (3) approving Plaintiff's request for an award of attorneys' fees and an incentive award; (4) confirming appointment of Daniel J. Orlowsky of Orlowsky Law, LLC and Adam M. Goffstein of Goffstein Law, LLC as Class Counsel; (5) approving the form and methods of the Notice Plan and finding that it satisfied Due Process; and (6) granting such further relief as the Court deems reasonable and just.

Respectfully submitted,

Orlowsky Law, LLC


/s/ Daniel J. Orlowsky
Daniel J. Orlowsky, #57387MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7375
dan@orlowskylaw.com

Attorney for Plaintiffs

Goffstein Law, LLC

/s/ Adam M. Goffstein
Adam M. Goffstein, #45611MO
7777 Bonhomme Ave., Suite 1910
St. Louis, Missouri 63105
Phone:  (314) 725-5151
Fax:  (314) 455-7278
adam@goffsteinlaw.com

Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2023, *Plaintiff's Unopposed Motion and Memorandum in Support of Final Approval of Class Action Settlement* was filed electronically with the Clerk of Court and served via the Court's CM/ECF system to all attorneys of record.

/s/Daniel J. Orlowsky